**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *LEON D. BOROCHOFF*, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>*GLAXOSMITHKLINE PLC, DR. JEAN-PIERRE GARNIER, and JULIAN HESLOP*,<br><br>Defendants. | No. 07 Civ. 5574 (LLS)<br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF THE INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF COUNSEL**

GRANT & EISENHOFER P.A.
Jay W. Eisenhofer (JE-5503)
Sidney S. Liebesman (SL-8444)
485 Lexington Avenue
29th Floor
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501

MOTLEY RICE LLC
Joseph F. Rice
Ann K. Ritter
P. O. Box 1792 (29465)
28 Bridgeside Blvd.
Mount Pleasant, SC 29465
Tel: (843) 216-9000
Fax: (843) 216-9450

*Counsel for The Institutional Investor Group and Proposed Lead Counsel for the Class*

Dated: August 10, 2007

# TABLE OF CONTENTS


PAGE

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 3

ARGUMENT .......... 5

I. The PSLRA Favors Institutional Investors Who Have A Large Financial Interest In The Lawsuit .......... 6

A. The Institutional Investor Group Has The Largest Financial Interest Of The Plaintiffs Who Have Come Forward In This Class .......... 8

B. The Institutional Investor Group Satisfies The Requirements Of Rule 23 .......... 9

i. The Institutional Investor Group's Claims Are Typical Of The Class's Claims .......... 10

ii. The Institutional Investor Group Will Adequately Represent The Interests Of The Class .......... 11

II. The Court Should Approve the Institutional Investor Group's Choice Of Counsel .......... 12

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*In re Able Labs. Sec. Litig.*,
No. 05-2681 (JAG) (D.N.J. Mar. 17, 2006)....................8

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
MDL No. 02-1500, 2003 WL 102806 (S.D.N.Y. Jan. 10, 2003)....................8

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002)....................12

*In re Conagra Foods, Inc. Sec. Litig.*,
No. 8:05CV292-LES-TDT (D. Neb. Dec. 2, 2005)....................8

*Conway Inv. Club v. Corinthian Colleges, Inc.*,
No. 2-04-cv-05025 (C.D. Cal. Nov. 1, 2004)....................8

*Cox v. Delphi Corp.*,
No. 1:05-CV-2637(NRB) (S.D.N.Y. June 27, 2005)....................8

*Cromer Fin. Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001)....................10-11

*Curtis v. BEA Sys., Inc.*,
No. C 04-2275 SI (N.D. Cal. Sept. 24, 2004)....................8

*In re Dell, Inc., Sec. Litig.*,
No. 06-CA-726-SS (W.D. Tex. April 9, 2007)....................8

*In re Dreamworks Animation SKG, Inc., Sec. Litig.*,
No. CV 05-03966 (C.D. Cal. Nov. 7, 2005)....................8

*In re General Motors Corp. Sec. Litig.*,
No. 05-CV-8088 (RMB) (S.D.N.Y. Feb. 6, 2006)....................8

*Gesenhues v. Checchi*,
No. 05-CIV-10653 (RJH), 2006 WL 1169673 (S.D.N.Y. May 3, 2006)....................5

*Glauser v. EVCI Career Colleges Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006)....................6, 9

*In re: The Goodyear Tire & Rubber Co. Sec. Litig.*,
No. 05:03 CV 2166, 2004 WL 3314943 (N.D. Ohio, May 12, 2004)....................8

*Hicks v. Morgan Stanley & Co.*,
No. 01-CIV-10071 (HB), 2003 WL 21672085 (S.D.N.Y. July 16, 2003) .......................... 10

*In re JDN Realty Sec. Litig.*,
No. 1:00-CV-0396-RWS (N.D. Ga.) ........................................................................ 13

*Kadagian v. Harley-Davidson, Inc.*,
No. 05-C-0547 (E.D. Wis. Feb. 14, 2006) ..................................................................... 8

*Marsden v. Select Medical Corp.*,
No. 04-4020 (E.D. Pa. Order entered October 5, 2006) ................................................ 14

*Mass. Laborers' Annuity Fund v. Encysive Pharm. Inc.*,
No. H-06-3022 (S.D. Tex. Mar. 20, 2007) ..................................................................... 8

*Mirco Investors, LLC v. Inspire Pharms., Inc.*,
No. 1:05CV00118 (M.D.N.C. Mar. 1, 2006) ................................................................... 8

*In re Molson Coors Brewing Co. Sec. Litig.*,
33 F.R.D. 147 (D. Del. 2005) ........................................................................................ 7

*In re Nice Systems Sec. Litig.*,
188 F.R.D. 206 (D.N.J. 1999) ....................................................................................... 11

*In re Nortel Networks Corp. Sec. Litig.*,
No. 01 Civ. 1855, 2003 WL 22077464 (S.D.N.Y. Sept. 5, 2003) ........................................ 8

*Olsen v. New York Cmty. Bancorp, Inc.*,
No. 04-CV-4165 (E.D.N.Y. Aug. 9, 2005) ..................................................................... 8

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ............................................................................. 11

*In re Olsten Corp. Sec. Litig.*,
181 F.R.D. 218 (E.D.N.Y. 1998) .................................................................................... 7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................ 9, 10

*In re Party City Sec. Litig.*,
189 F.R.D. 91 (D.N.J. 1999) .................................................................................... 7, 11

*In re Providian Fin. Corp. Sec. Litig.*,
No. C-01-3952-CRB (N.D. Cal.) ................................................................................... 13

*In re Sipex Corp. Sec. Litig.*,
No. C 05-00392 WHA (N.D. Cal. May 24, 2005) ........ 8

*Skwortz v. Crayfish Co., Ltd.*,
No. 00-6766 (DAB), 2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) ........ 7, 11

*South Ferry LP #2 v. Killinger*,
No. CV04-1599 JCC (W.D. Wash. Nov. 30, 2004) ........ 8

*In re Universal Access Inc. Sec. Litig.*,
209 F.R.D. 379 (E.D. Tex. 2002) ........ 10

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) ........ 9

*Welmon v. Chicago Bridge & Iron Co., N.V.*,
No. 06-CV-01283 (JES) (S.D.N.Y. May 11, 2006) ........ 8

*In re Williams Sec. Litig.*,
No. 02-CV-0072-H(M) (N.D. Okla. July 8, 2002) ........ 8

*The Zemel Family Trust v. Philips Int'l Realty Corp.*,
205 F.R.D. 434 (S.D.N.Y. 2002) ........ 7

**FEDERAL STATUTES AND RULES**

15 U.S.C. § 78u-4(a)(3) ........ *passim*

FED. R. CIV. P. 23 ........ 9, 10

PSLRA § 21D(a)(3)(B) ........ 7, 9, 12

**OTHER AUTHORITIES**

1 H. Newberg, *Newberg on Class Actions* § 3.13 (4th ed. 2007) ........ 10

Conference Report on Securities Litigation Reform, H.R. REP. NO. 104-369 (1995),
1995 WL 709276; S. REP. NO. 104-98 (1995), 1995 WL 372783 ........ 1

**PRELIMINARY STATEMENT**

Deka Investment GmbH, Metzler Investment GmbH, Internationale Kapitalanlagegesellschaft mbH, and INDEXCHANGE Investment AG (collectively referred to as the "Institutional Investor Group"), in connection with the securities fraud class action lawsuit filed against GlaxoSmithKline plc ("Glaxo" or the "Company"), Dr. Jean-Pierre Garnier and Julian Heslop, Glaxo's chief executive officer and chief financial officer, respectively, hereby move to be appointed as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The Institutional Investor Group further moves for approval of its selection of the law firms of Grant & Eisenhofer P.A. and Motley Rice LLC as Lead Counsel.

The relief sought by the Institutional Investor Group is precisely what the framers of the PSLRA hoped to accomplish by enacting the PSLRA's lead plaintiff provision – to have complex class actions arising under the federal securities laws controlled by large institutional investors. As Congress noted in the Statement of Managers, the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." Conference Report on Securities Litigation Reform, H.R. REP. NO. 104-369, at 34 (1995), 1995 WL 709276; S. REP. NO. 104-98 (1995), 1995 WL 372783. The Institutional Investor Group, with assets exceeding $342 billion, is comprised of exactly the type of large institutional investors envisioned by Congress as the most adequate lead plaintiffs in securities class action suits.

As detailed in the certifications submitted herewith, between October 27, 2005 and May 21, 2007 (the "Class Period") the Institutional Investor Group, combined, purchased over 10.5 million shares of Glaxo stock, suffering potential losses of over $29 million in connection with its transactions.[1] *See* Certifications filed on behalf of each member of the Institutional Investor Group ("Institutional Investor Group Certifications"), attached to the Declaration of Sidney S. Liebesman In Support Of The Institutional Investor Group's Motion For Appointment As Lead Plaintiff And For Approval Of Its Selection Of Counsel ("Liebesman Decl.") at Ex. A, and submitted herewith. In addition to evidencing the Institutional Investor Group's significant stake in the outcome of this litigation, the Institutional Investor Group Certifications demonstrate each group member's desire to serve as lead plaintiff in this action, as well as its understanding of the attendant duties and obligations of serving in that role. *See id.*

The Institutional Investor Group believes that its financial interest in this action is the largest of any class member seeking appointment as lead plaintiff in this action. The Institutional Investor Group is not aware of any other class member that has filed an action or filed an application for appointment as lead plaintiff that suffered greater losses due to defendants' fraud. In addition, the Institutional Investor Group satisfies each of the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and therefore, is qualified for appointment as lead plaintiff in this action. Thus, pursuant to the PSLRA's lead plaintiff provision, the Institutional Investor Group is presumptively the most adequate plaintiff and should be appointed Lead Plaintiff for the class. Additionally, the Court should approve the Institutional Investor Group's selection of Grant & Eisenhofer and Motley Rice as Lead Counsel.

---

[1] The breakdown of the Institutional Investors Group's losses is as follows: Deka Investment - $6.1 million; Metzler Investment - $7.2 million; Internationale Kapitalanlagegesellschaft - $4.7 million; and INDEXCHANGE Investment - $10.8 million.

## STATEMENT OF FACTS

**The Institutional Investor Group**

Each member of the Institutional Investor Group is a large, well-established institutional investor. Deka Investment is a subsidiary of DekaBank, one of the largest German financial institutions and financial services providers with assets under management of more than $207 billion. Metzler Investment is a subsidiary of Metzler bank, Germany's oldest private bank. Metzler Investment has been privately owned since 1674 and has approximately $41.5 billion of assets under management. Internationale Kapitalanlagegesellschaft is one of Germany's well-established capital investment companies with more the $69 billion of assets under management. INDEXCHANGE Investment is a German subsidiary of Barclays Bank and a market leader in exchange traded funds with approximately $25 billion of assets under management. *See* Institutional Investor Group Certifications, Liebesman Decl., at Ex. A. Combined, the Institutional Investor Group lost tens of millions of dollars as a result of purchasing Glaxo's securities at artificially inflated prices during the Class Period. *See id.*

The Institutional Investor Group includes members who have experience serving as lead plaintiffs in securities class actions. Indeed, Deka Investment was appointed as a lead plaintiff in the *In re General Motors Sec. Litig.* and in the securities class action against Coca Cola pending in the federal district court for the Northern District of Georgia. *See* Deka Certification attached to the Liebesman Decl. at Ex. A. Similarly, Metzler Investment was appointed lead plaintiff in the securities class actions filed against Molson Coors Brewing Co. and New York Community Bancorp. Most recently, Metzler Investment was appointed lead plaintiff in the securities class action pending in this District involving Chicago Bridge & Iron Co. *See* Metzler Certification attached to the Liebesman Decl. at Ex. A.

**Background Regarding Glaxo's Wrongdoing**

Glaxo is a public limited company organized under English law which conducts significant operations in the United States. Glaxo engages in the development, manufacture, and marketing of pharmaceutical and consumer health-related products. The Company's common shares trade on the London Stock Exchange and American Depository Shares trade on the New York Stock Exchange. Glaxo manufactures and markets many pharmaceutical drugs including Avandia – a drug manufactured to treat individuals with Type 2 diabetes.

In the Company's 2006 annual report filed with the SEC on March 2, 2007, Glaxo identified Avandia as one of the Company's top ten selling pharmaceutical products. In 2006, Avandia earned Glaxo approximately $2.8 billion, up 25% from the prior year. Throughout the Class Period, the Company repeatedly touted the commercial viability of Avandia as a driving force in increasing the Company's profitability. For example, on October 27, 2005 (the first day of the Class Period), the Company issued a press release announcing its financial results for the third-quarter ended September 30, 2005.

Recently, it was revealed that Glaxo has been deceiving the investing public from at least 2005 by concealing known serious adverse effects of Avandia. These side effects, if disclosed, would have significantly jeopardized the commercial viability of the drug. Indeed, on May 21, 2007, a study published by the *New England Journal of Medicine* disclosed that persons taking Avandia had a 43% higher risk of suffering a heart attack compared to persons not taking Avandia (the "NJM Study").

Since the publication of the NJM Study, additional information has been disclosed revealing that Glaxo had conducted its own internal meta-analysis, which resulted in findings similar to those of the NJM Study as early as 2005. Despite these early warnings, Glaxo failed to

disclose to the public any information (based on its internal meta-analysis or other studies) suggesting that Avandia posed increased risks of heart attack, was unsafe, or that the drug's commercial viability could be affected by adverse effects of the drug until the NJM Study was published. Rather than consider the NJM Study, GSK's response to the troubling findings was to embark on a campaign to discredit the study's findings.

In the wake of these recent revelations, the price of Glaxo's stock fell nearly 8% from its close of $57.71 on May 18, 2007, to close at $53.18 on May 21, 2007, on heavy trading. The sharp decline resulted in investors losing approximately $12.6 billion.

## ARGUMENT

In determining which movants to appoint as lead plaintiff, the Court must consider two factors: (1) which movant(s) have the largest financial interest in the litigation; and (2) do those movants meet the typicality and adequacy requirements of Rule 23. *See Gesenhues v. Checchi*, No. 05-CIV-10653 (RJH), 2006 WL 1169673, at *2 (S.D.N.Y. May 3, 2006)("The PSLRA . . . provides that the most adequate plaintiff has (1) 'the largest financial interest' in the relief sought by the class and (2) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure"). Here, the Institutional Investor Group is comprised of exactly the type of large institutional investors envisioned by Congress as the most adequate lead plaintiff in a securities class action lawsuit. Further, the Institutional Investor Group has timely filed this motion in accordance with the statutory requirements and has the resources, expertise and the willingness to be fully involved in this litigation and to obtain the maximum possible compensation for class members. Accordingly, the Institutional Investor Group should be appointed as Lead Plaintiff and its selection of Lead Counsel should be approved.

## I. The PSLRA Favors Institutional Investors Who Have A Large Financial Interest In The Lawsuit

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of the notice announcing the filing of the action. 15 U.S.C. §78u-4(a)(3)(A)(i)(II); Liebesman Decl. at Ex. B (Notice of first filed complaint).[2] Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. §78u-4(a)(3)(B)(i). Consistent with its legislative history, the PSLRA provides that the court shall make a significant presumption when determining the "most capable" plaintiff:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption may be overcome only by proof that the presumed lead plaintiff(s) will not fairly and adequately represent the class or is subject to unique defenses. *Id.* Courts construing this provision have held that institutional investors are presumptively the most adequate lead plaintiffs. *See, e.g., Glauser v.EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184 (S.D.N.Y. 2006) (institutional investor's presumption of being

[2] The Institutional Investor Group is mindful of this Court's individual practice that, except in certain enumerated situations, a pre-motion conference with the Court is required before making any motion. In this instance, however, it is not possible to identify who the lead plaintiff movants may be and thus interested parties and/or their counsel could not be identified with any certainty.

the most adequate was not rebutted by other movants); *The Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 437 (S.D.N.Y. 2002) (discussing Congressional intent while denying lead plaintiff status to non-institutional investor plaintiff); *In re Olsten Corp. Sec. Litig.*, 181 F.R.D. 218, 220-21 (E.D.N.Y. 1998) ("By establishing the presumptive criterion that the most adequate plaintiff is the one who 'has the largest financial interest in the relief sought by the class,' PSLRA §21D(a)(3)(B)(iii)(bb), Congress intended 'to increase the likelihood that institutional investors will serve as lead plaintiffs. . . .'").

The PSLRA's lead plaintiff provision also serves to "ensure[ ] that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 104 (D.N.J. 1999); *Skwortz v. Crayfish Co., Ltd.*, No. 00-6766 (DAB), 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) ("Congress believed that [the purpose behind the PSLRA] could best be achieved by encouraging institutional investors to serve as lead plaintiffs."). As set forth herein, the Institutional Investor Group is exactly the type of large institutional investor envisioned by the Congress in enacting the PSLRA, as it satisfies all of the criteria contemplated by the PSLRA for determining the most adequate lead plaintiff. Each member of the Institutional Investor Group is a large, well-respected financial institution that manages billions of dollars and each suffered substantial losses due to the fraud alleged in this action. As such, the Institutional Investor Group should be appointed as Lead Plaintiff in this action.

Foreign investors such as the Institutional Investor Group often have been appointed to serve as lead plaintiffs in PSLRA actions. *See, e.g.*, *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005) (appointing Metzler Investment and a Taft Hartley fund as co-lead plaintiffs and observing that a foreign lead plaintiff movant was "correct in its assertion

that many courts, including this one, have approved foreign investors as lead plaintiffs in cases such as this" and holding that a group of investors lead by a German investment firm was entitled to appointment as lead plaintiff because it had the largest financial interest of any movant, was otherwise adequate and typical, and would not be subject to unique defenses because of its foreign status) (citing cases).[3]

### A. The Institutional Investor Group Has The Largest Financial Interest Of The Plaintiffs Who Have Come Forward In This Case

The Institutional Investor Group believes that it has a greater financial interest in this action than any other class member who has come forward by virtue of its approximate damages of over $29 million. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 02-1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003) (appointing as lead plaintiff the institutional investor with the "largest financial stake in the litigation.").

Although the PSLRA does not mandate a particular method for calculating financial interest, "courts in this Circuit have traditionally examined the following four factors in calculating that interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (defined as the number of shares retained at the end of the class period); (3) the total net funds expended during the class period; and

[3] Other cases in which courts have appointed foreign investors as lead plaintiff in securities class actions include *In re Dell, Inc., Sec. Litig.*, No. 06-CA-726-SS (W.D. Tex. Apr. 9, 2007); *Mass. Laborers' Annuity Fund v. Encysive Pharm. Inc.*, No. H-06-3022 (S.D. Tex. Mar. 20, 2007); *Welmon v. Chicago Bridge & Iron Co., N.V.*, No. 06-CV-01283 (JES) (S.D.N.Y. May 11, 2006); *In re Able Labs. Sec. Litig.*, No. 05-2681 (JAG) (D.N.J. Mar. 17, 2006); *Mirco Investors, LLC v. Inspire Pharms., Inc.*, No. 1:05CV00118 (M.D.N.C. Mar. 1, 2006); *Kadagian v. Harley-Davidson, Inc.*, No. 05-C-0547 (E.D. Wis. Feb. 14, 2006); *In re General Motors Corp. Sec. Litig.*, No. 05-CV-8088 (RMB) (S.D.N.Y. Feb. 6, 2006); *In re Conagra Foods, Inc. Sec. Litig.*, No. 8:05CV292-LES-TDT (D. Neb. Dec. 2, 2005); *In re Dreamworks Animation SKG, Inc., Sec. Litig.*, No. CV 05-03966 (C.D. Cal. Nov. 7, 2005); *Olsen v. New York Cmty. Bancorp, Inc.*, No. 04-CV-4165 (E.D.N.Y. Aug. 9, 2005); *Cox v. Delphi Corp.*, No. 1:05-CV-2637(NRB) (S.D.N.Y. June 27, 2005); *In re Sipex Corp. Sec. Litig.*, No. C 05-003932 WHA (N.D. Cal. May 24, 2005); *South Ferry LP #2 v. Killinger*, No. CV04-1599 JCC (W.D. Wash. Nov. 30, 2004); *Conway Inv. Club v. Corinthian Colleges, Inc.*, No. 2-04-cv-05025 (C.D. Cal. Nov. 1, 2004); *Curtis v. BEA Sys., Inc.*, No. C 04-2275 SI (N.D. Cal. Sept. 24, 2004); *In re: The Goodyear Tire & Rubber Co. Sec. Litig.*, No. 05:03 CV 2166, 2004 WL 3314943, at *5-6 (N.D. Ohio, May 12, 2004); *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855, 2003 WL 22077464 (S.D.N.Y. Sept. 5, 2003); *In re Williams Sec. Litig.*, No. 02-CV-0072-H(M) (N.D. Okla. July 8, 2002). Copies of these decisions are attached as Exhibits C - T to the Liebesman Decl.

(4) the approximate loss suffered during the class period." *Glauser*, 2006 WL 1302265, at *2 (citing *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)). Here, the Institutional Investor Group purchased 10,573,433 shares of Glaxo common stock for $303,536,888 during the Class Period. *See* Liebesman Decl. at Ex. A. The total loss suffered by the Institutional Investor Group is $29,123.811. *See infra* at 2, n. 1.[4] The Institutional Investor Group does not believe any other movant has a larger financial interest in this litigation.

**B. <u>The Institutional Investor Group Satisfies The Requirements Of Rule 23</u>**

Section 21D(a)(3)(B)(iii)(cc) of the PSLRA further provides that the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc). Rule 23(a) provides that a party may serve as a class representative so long as the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites of class certification under Rule 23(a), only two – typicality and adequacy of representation – directly address the characteristics of the lead plaintiff under the PSLRA which must be satisfied. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (citing *In re Party City*, 189 F.R.D. at 106) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.") (citations

[4] The Institutional Investor Group's losses were calculated using the first-in first-out method. There are other methods of calculating loss as well. For example, using a last-in first out method, the Institutional Investor Group's losses are still very large at approximately $20 million.

omitted). The remaining requirements of Rule 23 relate to the adequacy of the claims themselves and should not enter into the Court's analysis in its determination of who should serve as lead plaintiffs. Rather, the Court should defer examination of the remaining requirements until the lead plaintiffs move for class certification. *See In re Universal Access Inc. Sec. Litig.*, 209 F.R.D. 379, 385 (E.D. Tex. 2002) (stating that the Court should defer examination of the remaining requirements until the lead plaintiff moves for class certification). The Institutional Investor Group meet both applicable requirements.

**i. The Institutional Investor Group's Claims Are Typical Of The Class's Claims**

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims . . . of the representative parties" be "typical of the claims . . . of the class." A proposed lead plaintiff's claims are typical of the claims of the class when the proposed lead plaintiff's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health Plans*, 182 F.R.D. at 50 (citations omitted); *Hicks v. Morgan Stanley & Co.*, No. 01-CIV-10071 (HB), 2003 WL 21672085, at *2 (S.D.N.Y. July 16, 2003) ("The typicality requirement is met when the class representative's claim 'arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.'") (citations omitted). *See also* 1 H. Newberg, *Newberg on Class Actions* §3.13 (4th ed. 2007) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met regardless of minor variations in fact patterns underlying individual claims"). The Rule 23(a)(3) typicality requirement "is to ensure that maintenance of a class action is economical and that the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Cromer Fin. Ltd. v.*

*Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (quoting *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

Here, the Institutional Investor Group's claims arise from the same course of conduct from which the claims of all other class members arise. As stockholders of Glaxo, the members of the Institutional Investor Group, like other members of the class, are innocent victims of defendants' fraudulent conduct. The Institutional Investor Group's losses, like the losses suffered by other members of the class, arise from the artificial inflation of Glaxo's securities caused by the misrepresentations regarding the efficacy and safety of a top selling drug which were knowingly and deliberately made by the defendants. Thus, the Institutional Investor Group's claims are in all respects "typical" of the claims of the class.

**ii. The Institutional Investor Group Will Adequately Represent The Interests Of The Class**

Rule 23(a)(4)'s requirement of adequate representation is satisfied: "if (1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the class are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy." *Skwortz*, 2001 WL 1160745, at *6. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) (citations omitted). Rule 23(a)(4)'s requirement of "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Nice Systems Sec. Litig.*, 188 F.R.D. 206, 219 (D.N.J. 1999). The adequacy of representation inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Party City Sec. Litig.*, 189 F.R.D. 91, 108 (D.N.J. 1999) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). The Institutional Investor Group easily

meets the adequacy requirements.

Here, the Institutional Investor Group's interests are the same as those of other class members. Like other class members, the Institutional Investor Group seeks to hold the defendants liable for the consequences of their violations of the federal securities laws. There are no facts which indicate any conflicts of interest between the Institutional Investor Group and other class members.

Further, the Institutional Investor Group has the resources and sophistication to fulfill the statutory role of lead plaintiff. The Institutional Investor Group has a large and dedicated staff with the legal, financial and organizational expertise to effectively oversee this proceeding and direct the actions of lead counsel. The resources and sophistication at the Institutional Investor Group's disposable will serve the Class well, as it will permit the Institutional Investor Group to closely monitor the litigation and prosecute the case in the Class's best interest. *See* Institutional Investor Group Certifications, Liebesman Decl., at Ex. A.

Finally, as explained below, the Institutional Investor Group has chosen Grant & Eisenhofer P.A. and Motley Rice LLC as proposed Lead Counsel for the Class.

## II. The Court Should Approve The Institutional Investor Group's Choice Of Counsel

Pursuant to §21D(a)(3)(B)(v), 15 U.S.C. §78u-4(a)(3)(B)(v), of the PSLRA, the Institutional Investor Group selected and retained counsel to represent the Class, subject to the Court's approval. This Court should not disturb Lead Plaintiffs' choice of counsel unless it is necessary to protect the interests of the class. *See In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002)("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs. And, indeed, it did not. While the appointment of counsel is made subject to the

approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff"). In that regard, the Institutional Investor Group has selected and retained the law firms of Grant & Eisenhofer and Motley Rice as Lead Counsel for the class.

Grant & Eisenhofer P.A. is among the preeminent securities class action law firms in the country and is currently serving as lead or co-lead counsel in several complex securities fraud cases involving, *inter alia*, Tyco International, Marsh & McLennan, Parmalat, Global Crossing, Pfizer, Alstom, and Refco. Grant & Eisenhofer achieved national recognition in representing institutional investors, particularly public pension funds, in federal securities fraud and related litigation. As lead counsel, the firm has recovered and collected over six billion dollars for shareholders. Grant & Eisenhofer has been lead counsel in some of the largest securities class actions in history, and in the case with the largest recovery in the long history of the Delaware Court of Chancery. *See* Grant & Eisenhofer biography attached to the Liebesman Decl. at Ex. U.

Motley Rice LLC is one of the nation's largest plaintiffs' law firms and also has substantial experience in the prosecution of shareholder and securities class actions. Motley Rice attorneys served as counsel to 26 States Attorney General in the landmark tobacco litigation which produced one of the largest recoveries in the history of civil litigation in the United States. Motley Rice also has been appointed lead or co-lead counsel in numerous significant securities fraud class actions, including Dell, Inc., MBNA Corp., Witness Systems, and NPS Pharmaceuticals, and its members have earned numerous accolades for their performance in securities class actions from courts in which they have appeared. *See, e.g.*, *In re JDN Realty Sec. Litig.*, No. 1:00-CV-0396-RWS (N.D. Ga.) (praising counsel now with Motley Rice during the final approval hearing, noting "the quality of what has been submitted to the Court in this case has been just excellent"); *In re Providian Fin. Corp. Sec. Litig.*, No. C-01-3952-CRB (N.D. Cal.)

(commenting to counsel now with Motley Rice at final approval hearing, "[Y]ou worked, you know, like demons . . . . And by working as hard as you worked, you got it. You got the settlement that I have to believe was a good settlement . . . . So I thought you did a fine job, and you came right up to the plate when it was necessary."). As the district court noted when appointing Motley Rice as Co-Lead Counsel in *Marsden v. Select Medical Corp.*, No. 04-4020 (E.D. Pa. Order entered October 5, 2006), "Motley Rice LLC possess[es] the requisite knowledge and skill in securities litigation to ably prosecute this matter on behalf of the class." *See* Motley Rice biography attached to the Liebesman Decl. at Ex. V.

Accordingly, the Court should approve Institutional Investor Group's selection of Grant & Eisenhofer P.A. and Motley Rice LLC as Lead Counsel for the Class.

**CONCLUSION**

In light of the foregoing, the Institutional Investor Group respectfully requests that the Court (i) appoint the Institutional Investor Group to serve as Lead Plaintiff for the Class; and (ii) approve the Institutional Investor Group's selection of Grant and Eisenhofer P.A. and Motley Rice LLC to serve as Lead Counsel for the Class.

Dated: August 10, 2007

Respectfully submitted,

s/ Sidney S. Liebesman

Jay W. Eisenhofer (JE-5503)
Sidney S. Liebesman (SL-8444)
GRANT & EISENHOFER P.A.
485 Lexington Avenue
29th Floor
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501

MOTLEY RICE LLC
Joseph F. Rice
Ann K. Ritter
P. O. Box 1792 (29465)
28 Bridgeside Blvd.
Mount Pleasant, SC 29465
Tel: (843) 216-9000
Fax: (843) 216-9450

*Counsel for The Institutional Investor Group and Proposed Lead Counsel for the Class*

OF COUNSEL:

Alexander Reus
Diaz Reus Rolff & Targ LLP
GLOBAL EXPANSION GROUP
Bank of America Tower at International Pl.
100 SE Second Street, Suite 2610
Miami, FL 33131
Tel: (786) 235-5000
Fax: (786) 235-5005

Deborah Sturman
Sturman LLC
112 Madison Avenue
7th Floor
New York, NY 10016
Tel: (212) 784 6263
Fax: (917) 546 2544