# EXHIBIT P





MILBERG WEISS BERSHAD & SCHULMAN LLP
JEFF S. WESTERMAN (94559)
355 S. Grand Ave., Suite 4170
Los Angeles, CA 90071-3172
Telephone: (213) 617-1200
(213) 617-1975 (fax)

MILBERG WEISS BERSHAD & SCHULMAN LLP
STEVEN G. SCHULMAN
PETER E. SEIDMAN
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
(212) 868-1229 (fax)

Proposed Lead Counsel

[Additional Counsel on Signature Page]

Psend

ORIGINAL

SCANNED

FILED
CLERK, U.S. DISTRICT COURT
NOV - 1 2004
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

LODGED
2004 SEP -7 PM 4:27
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CONWAY INVESTMENT CLUB, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

CORINTHIAN COLLEGES, INC., DAVID MOORE, ANTHONY DIGIOVANNI and DENNIS BEAL,

Defendant.

Case No. 2:04-cv-05025 R

~~[PROPOSED]~~ ORDER CONSOLIDATING THE ACTIONS, APPOINTINGLEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL

Date: October 4, 2004
Time: 10:00 a.m.
Courtroom: Honorable Manuel L. Real

Date Action Filed: July 8, 2004

(Additional Captions Set Forth Below)

DOCKETED ON CM
NOV - 9 2004
BY 013

81

BARBARA KAUFMAN, On Behalf of Herself and All Others Similarly Situated,

Plaintiff,

vs.

CORINTHIAN COLLEGES, INC., DAVID G. MOORE, DENNIS N. BEAL, AND ANTHONY F. DIGIOVANNI,

Defendant.

Case No. 2:04-cv-05091

Judge: Honorable Manuel L. Real
Courtroom: 8
Date Action Filed: July 8, 2004

SCANNED

MICHAEL ORLANDO, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

CORINTHIAN COLLEGES, INC., DAVID MOORE, ANTHONY DIGIOVANNI and DENNIS BEAL,

Defendant.

Case No. 2:04-cv-05754

Judge: Honorable Manuel L. Real
Date Action Filed: July 16, 2004

PAULENA PARTNERS, LLC, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

CORINTHIAN COLLEGES, INC., DAVID MOORE, ANTHONY DIGIOVANNI and DENNIS BEAL,

Defendant.

Case No. 2:04-cv-06057 R

Judge: Honorable Dale S. Fischer
Date Action Filed: July 23, 2004

| | |
|---|---|
| JAMES DOLAN, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CORINTHIAN COLLEGES, INC., DAVID MOORE, PAUL ST. PIERRE, DENNIS BEAL, and ANTHONY DIGIOVANNI,<br><br>Defendant. | Case No. 2:04-cv-06076<br><br>Judge: Honorable Manuel L. Real<br>Date Action Filed: July 23, 2004 |
| KWOK YAU TONG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CORINTHIAN COLLEGES, INC., DAVID MOORE, ANTHONY DIGIOVANNI and DENNIS BEAL,<br><br>Defendant. | Case No. 2:04-cv-06993<br><br>Judge: Honorable Manuel L. Real<br>Date Action Filed: August 20, 2004 |
| DOUGLAS ROSE, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CORINTHIAN COLLEGES, INC., DAVID MOORE, PAUL ST. PIERRE, DENNIS BEAL and ANTHONY DIGIOVANNI,<br><br>Defendant. | Case No. 2:04-cv-06994<br><br>Judge: Honorable Manuel L. Real<br>Date Action Filed: August 20, 2004 |

SCANNED

SCANNED

| | |
|---|---|
| IVAN MENESES, Individually and on Behalf of All Others Similarly Situated,<br>Plaintiff,<br>vs.<br>CORINTHIAN COLLEGES, INC., ANTHONY DIGIOVANNI, DAVID MOORE and DENNIS BEAL,<br>Defendant. | Case ~~No. 8:04-cv-923~~ 2104-8773 T<br>Judge: Honorable David O. Carter<br>Date Action Filed: August 4, 2004<br>04-6994 |
| DOUGLAS ROSE, On Behalf of Himself and All Others Similarly Situated,<br>Plaintiff,<br>vs.<br>CORINTHIAN COLLEGES, INC., DAVID MOORE, PAUL ST. PIERRE, DENNIS BEAL and ANTHONY DIGIOVANNI,<br>Defendant. | Case No. ~~8:04-cv-926~~<br>Judge: Honorable David O. Carter<br>Date Action Filed: August 5, 2004 |
| KOK YEOH, On Behalf of Himself and All Others Similarly Situated,<br>Plaintiff,<br>vs.<br>CORINTHIAN COLLEGES, INC., DAVID MOORE, PAUL ST. PIERRE, DENNIS BEAL and ANTHONY DIGIOVANNI,<br>Defendant. | Case No. ~~8:04-cv-959~~ 04-8393<br>Judge: Honorable Gary L. Taylor<br>Date Action Filed: August 9, 2004 |





JAMES STELLATO, On Behalf of Himself and All Others Similarly Situated,

Plaintiff,

vs.

CORINTHIAN COLLEGES, INC., DAVID MOORE, PAUL ST. PIERRE, DENNIS BEAL and ANTHONY DIGIOVANNI,

Defendant.

Case No. ~~8:04-cv-997-~~ 04-8401 R

Judge: Honorable David O. Carter
Date Action Filed: August 16, 2004

SCANNED

SCANNED

Having considered the motion of Metzler Investment GmbH ("Metzler Investment"), and good cause appearing therefore, the Court orders as follows:

1. The Motion is GRANTED;

2. The above-captioned actions are consolidated pursuant to Fed. R. Civ. P. 42(a);

3. Metzler Investment is the "most adequate plaintiff" and accordingly, is appointed Lead Plaintiff pursuant to 15 U.S.C. 78u-4(a)(3)(B)(iii);

4. Milberg Weiss Bershad & Schulman LLP is appointed Lead Counsel, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

IT IS SO ORDERED.

DATED: Nov. 1, 2004

Honorable Manuel L. Real
United States District Court Judge

Submitted by:
Dated: September 7, 2004

MILBERG WEISS BERSHAD
& SCHULMAN LLP
Jeff S. Westerman

JEFF S. WESTERMAN

355 S. Grand Ave., Suite 4170
Los Angeles, CA 90071-3172
Telephone: (213) 617-1200
Facsimile: (213) 617-1975

MILBERG WEISS BERSHAD
& SCHULMAN LLP
Steven G. Schulman
Peter E. Seidman
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

Proposed Lead Counsel





THE BRUALDI LAW FIRM
Richard B. Brualdi
29 Broadway
Suite 2400
New York, New York 10006
Telephone: (212) 952-0602
Facsimile: (212) 952-0608

Plaintiff's Counsel

SCANNED

SCANNED

DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a resident of the County of Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 355 South Grand Avenue, Suite 4170, Los Angeles, California 90071.

2. That on September 7, 2004, declarant served the [PROPOSED] ORDER CONSOLIDATING THE ACTIONS, APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF LEAD COUNSEL by depositing a true copy thereof in a United States mailbox at Los Angeles, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3. That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7TH day of September, 2004, at Los Angeles, California.

CYNTHIA DORSEY

SCANNED

CORINTHIAN COLLEGES

**Service List**

| *Counsel for Plaintiffs* | |
|---|---|
| Christopher Kim<br>Lisa J. Yang<br>**LIM RUGER & KIM**<br>1055 West 7th Street, Suite 2800<br>Los Angeles, CA 90017<br>Tel.: (213) 955-9500<br><br>Eric J. Belfi<br>**RABIN MURRAY AND FRANK**<br>275 Madison Avenue, Suite 801<br>New York, NY 10016<br>Tel.: (212) 682-1818<br><br>Marc A. Topaz<br>Richard A. Maniskas<br>**SCHIFFRIN & BARROWAY**<br>3 Bala Plaza East, Suite 400<br>Bala Cynwyd, PA 19004<br>Tel.: (610) 667-7706<br><br>*Attorneys for Conway Investment Club* | Kevin J. Yourman<br>Jennifer R. Williams<br>Vahn Alexander<br>**WEISS & YOURMAN**<br>10940 Wilshire Blvd, 24th Fl.<br>Los Angeles, CA 90024<br>Tel.: (310) 208-2800<br>Email: service@wyca.com<br><br>Timothy J. Burke<br>**STULL STULL & BRODY**<br>10940 Wilshire Boulevard, Suite 2300<br>Los Angeles, CA 90024<br>Tel.: (310) 209-2468<br>Email: service@ssbla.com<br><br>*Attorneys for Barbara Kaufman* |
| Robert I. Harwood<br>Joshua D. Glatter<br>**WECHSLER HARWOOD**<br>488 Madison Avenue, 8th Floor<br>New York, NY 10022<br>Tel.: (212) 935-7400<br><br>Lionel Z. Glancy<br>**GLANCY BINKOW & GOLDBERG**<br>1801 Avenue of the Stars, Suite 311<br>Los Angeles, CA 90067<br>Tel.: (310) 201-9150<br><br>*Attorneys for Kwok Yau Tong* | Peter Arthur Binkow<br>**GLANCY BINKOW & GOLDBERG**<br>1801 Avenue of the Stars, Ste 311<br>Los Angeles, CA 90067<br>Tel.: (310) 201-9150<br>Email: info@glancylaw.com<br><br>*Attorneys for Michael Orlando* |
| Jonathan M. Stein<br>**JONATHAN M. STEIN LAW OFFICES**<br>197 S Federal Highway, Suite 200<br>Boca Raton, FL 33432 | Betsy C. Manifold<br>Francis A. Bottini, Jr.<br>Francis M. Gregorek<br>Rachele R. Rickert |

DOCS\223239v1

| | |
|---|---|
| 561-750-3000<br><br>*Attorneys for James Dolan* | **WOLF HALDENSTEIN ADLER FREEMAN & HERZ**<br>Symphony Twr<br>750 B St, Ste 2770<br>San Diego, CA 92101<br>Tel.: (619) 239-4599<br>Fax: (619) 234-4599<br><br>*Attorneys for Ivan Meneses* |
| William S. Lerach<br>Darren J. Robbins<br>**LERACH COUGHLIN STOIA GELLER RUDMAN AND ROBBINS**<br>401 B Street, Suite 1700<br>San Diego, CA 92101-4297<br>Tel.: (619) 231-1058<br>Email: denisey@lcsr.com<br><br>*Attorneys for Douglas Rose* | Evan J. Smith<br>Marc L. Ackerman<br>**BRODSKY AND SMITH**<br>333 East City Avenue, Suite 602<br>Bala Cynwyd, PA 19004<br>Tel.: (610) 667-6200<br><br>*Attorneys for Kok Yeoh* |
| Deborah R. Gross<br>**BERNARD M. GROSS LAW OFFICES**<br>1515 Locust St, 2nd Fl.<br>Philadelphia, PA 19102<br>Tel.: (215) 561-3600<br><br>*Attorneys for James Stellato* | Robert I, Harwood<br>Joshua D, Glatter<br>**WECHSLER HARWOOD**<br>488 Madison Avenue<br>8th Floor<br>New York, NY 10022<br>Tel.: (212) 935-7400<br><br>*Attorneys for Kwok Yau Tong* |
| | |
| ***Defendants*** | |
| Robert Dell Angelo<br>**Munger Tolles & Olson Llp**<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, CA 90071<br>Tel: (213) 683-9100<br>(213) 687-3702 (fax) | |
| | |

SCANNED

# EXHIBIT Q

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD CURTIS, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

BEA SYSTEMS, INC., ALFRED S. CHUANG, CHARLES L. ILL, III, and THOMAS M. ASHBURN,

Defendants.

No. C 04-2275 SI

CLASS ACTION

**ORDER CONSOLIDATING ACTIONS AND APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**

On September 24, 2004, the Court heard argument on motions to consolidate various related securities class actions and competing motions to appoint lead plaintiff and lead counsel. Having considered the papers filed and the argument of counsel, the Court GRANTS the motion to consolidate these actions, appoints ARCA S.p.A. lead plaintiff and appoints its counsel, Green & Jigarjian and Schiffrin & Barroway, lead counsel.

**BACKGROUND**

Plaintiffs Tareq Zuaiter, John E. Kalil, and Roland Pardun ("the Zuaiter Group") and ARCA S.G.R. S.p.A. ("ARCA") are members of a class bringing a securities class action against defendant BEA Systems, Inc. ("BEA Systems" or the "Company") under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "'34 Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.

BEA Systems is a provider of application infrastructure software and related services. Compl. ¶ 2. Specifically, a product called the "BEA WebLogic Enterprise Platform" provides application infrastructure "for building and deploying distributed, integrated information technology environments, allowing customers to

integrate private client/server networks, the Internet, intranets, extranets, virtual private networds, and mainframe and legacy systems as system components." Id. The Company's executive offices are in San Jose, where its day-to-day operations occur. Id. at ¶ 7(b). Plaintiffs allege that the Company and certain of its officers and directors artificially inflated the Company's stock price during the class period, November 13, 2003 through May 13, 2004, by issuing materially false and misleading statements regarding BEA's business and prospects. Id. at ¶ 3.

On May 13, 2004, BEA reported disappointing first quarter results and attributed these results to "the difficult selling environment" and "sales execution issues." Id. at ¶ 3. Company shares fell 30% to $8 per share. Id. at ¶ 3. Plaintiffs allege that defendants knew and concealed the real reasons for the first quarter results: (1) the Company was experiencing sales execution problems in its licensing division, which would result in license reserve being down; (2) a reorganization of the Company's sales' personnel disrupted sales during the preceding quarter; (3) the Company's WebLogic 8.1 Platform product was not selling as well as defendants claimed, and was not "revolutionary"; (4) the Company's North American reserves were disrupted by a transfer of medium and small businesses to the General Accounts Team; and (5) the Company was experiencing weakness in its telecom vertical business. Id. at ¶¶ 4(a)-(d); 23(a)-(e).

Because of defendants' false statements, the Company's stock price traded at inflated prices, as high as $14 per share. Id. at ¶ 5. The Company's officers and directors sold more than $13 million worth when the stock traded at its allegedly artificially inflated price. Id. Plaintiff and other class members allegedly suffered injury when they purchased the Company's stock at artificially inflated prices. Id. at ¶ 27-28.

The first of seven related securities class actions was filed against BEA Systems on June 9, 2004. ARCA Mot. for Appointment as Lead Plaintiff ("ARCA Mot.") at 3:12. Between June 9, 2004 and July 17, 2004, six more suits were filed in this District. Id. at 1:15-16. As required by § 21 D(a)(3)(A)(I) of the Exchange Act, a notice was published over Business Wire on June 9, 2004, advising class members of the existence and nature of the litigation. Decl. of Patrice L. Bishop ("Bishop Decl."), Ex. A; Decl. of Darren J. Check ("Check Decl."), Ex. B. The notice set a 60 day window for class members to appear and move for appointment as lead plaintiff, by August 9, 2004. Id. Three motions were filed within the time limit, two of

United States District Court
For the Northern District of California

which are now before the Court, one by the Zuaiter Group, and one by ARCA.[1] In addition, both movants have moved to have all the actions consolidated.

The Zuaiter Group is comprised of three individuals who collectively purchased 48,380 shares of BEA systems stock during the Class Period. Zuaiter Group's Mot. for Appointment as Lead Plaintiff ("Zuaiter Group Mot.") at 5:9-10. ARCA is a mutual fund manager based in Milan, Italy. ARCA Mot. at 2:4; Decl. of John W. Pillette ("Pillette Decl."), Ex. A (Decl. of Dr. Attilio Ferrari) ¶ 2.

Now before the Court are the two competing motions for appointment of lead plaintiff and approval of counsel, one by the Zuaiter Group, represented by Stull, Stull & Brody, LLP; and one by ARCA, represented by Schiffrin & Barroway, LLP and Green and Jigarjian, LLP.

**LEGAL STANDARD**

**A. Motion to consolidate**

Under Rule 42(a) of the Federal Rules of Civil Procedure:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Courts have recognized that securities class actions are particularly suited to consolidation to help expedite pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple proceedings, and minimize the expenditure of time and money by everyone involved. See In re Equity Funding of Amer. Sec. Litig., 416 F. Supp. 161, 176 (C.D. Cal. 1976) (citation omitted). A court must rule on a motion to consolidate before it can rule on a motion to appoint a lead plaintiff. Securities Exchange Act, § 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii).

**B. Motion to appoint lead plaintiff**

It has been long recognized that private securities litigation provides "'a most effective weapon in the

---

[1] Cement Masons and Plasterers Retirement Trust, Brian A. Metz and Mustapha Bahij also filed a motion for appointment of lead plaintiff and counsel, but withdrew that motion on August 27, 2004.

enforcement' of the securities laws and [is] 'a necessary supplement to [administrative] action.'" Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310, 105 S. Ct. 2622 (1985). Although Congress affirmed that such litigation "is an indispensable tool with which defrauded investors can recover losses," it enacted the Private Securities Litigation Reform Act of 1995 (PSLRA) in response to a widespread perception of abuse in securities class actions. Joint Explanatory Statement of the Committee of Conf., Conference Report on Sec. Litig. Reform, H.R. Conf. Rep. No. 104-39 at 31 (1995). Section 21D of the PSLRA provides well-defined standards and procedures for selecting lead plaintiffs in a securities class action and is "intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class." H.R. 104-39 at 32. See generally In re Microstrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 432-436 (E.D. Va. 2000).

Under the procedures set out in the PSLRA, all proposed lead plaintiffs must have submitted a sworn certification setting forth certain facts designed to assure the court that the plaintiff (i) has suffered more than a nominal loss, (ii) is not a professional litigant, and (iii) is otherwise interested and able to serve as a class representative. 15 U.S.C. § 78u-4(a)(2)(A). The plaintiff in the first lawsuit to be filed must additionally publish notice of the complaint in a widely circulated business publication within twenty days of filing the complaint. Id. at § 78u-4(a)(3)(A)(I). The notice must include a description of the claim and notify prospective class members that they may move within 60 days of the notice to be named lead plaintiff.

Once applications for lead plaintiff status are closed, the district court must determine who among the movants for lead plaintiff status is the "most adequate plaintiff." Id. at § 78u-4(a)(3)(B)(I). The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." Id. Toward this end, the court must consider three factors: "the court shall adopt a presumption that the most adequate plaintiff . . . is the person or group of persons that - (aa) has either filed the complaint or made a motion in response to a notice . . .; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." Id. at § 78u-4(a)(3)(B)(iii)(I). The presumption of most adequate plaintiff may be rebutted by evidence that the designated plaintiff "will not fairly and adequately protect the interests of the class" or "is

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. at § 78u-4(a)(3)(B)(iii)(II).

In the Ninth Circuit, In re Cavanaugh, 306 F.3d 726, 729-30 (9th Cir. 2002), governs lead plaintiff selection and establishes a three-step process. First, as discussed above, timely and complete notice of the action must be published. Id. at 729. Second, the district court considers the losses suffered by potential lead plaintiffs and selects "the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" Id. at 730, citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Thus the court must determine which plaintiff "has the most to gain from the lawsuit." Cavanaugh, 306 F.3d at 730. Finally, the court focuses on that plaintiff to ensure that the proposed lead plaintiff "satisfies the requirements of [Fed. R. Civ. Pro.] 23 (a), in particular those of 'typicality' and 'adequacy.'" Id.

A plaintiff who satisfies the first two steps becomes the "presumptively most adequate plaintiff." Id. In step three, other plaintiffs have the opportunity to rebut the presumptive lead plaintiff's showing of typicality and adequacy. Id. at 730, citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Once the court has designated a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). A court generally should accept the lead plaintiff's choice of counsel unless it appears necessary to appoint different counsel to "protect the interests of the class." Id. at § 78u-4(a)(3)(B)(iii)(II)(aa). In the Ninth Circuit, Cavanaugh establishes the standard for approval of lead counsel. "[T]he district court does not select class counsel at all," id. at 732; instead, the district court generally approves the lead plaintiff's selection of counsel.

///

## DISCUSSION

### A. Motion to consolidate

Both proposed lead plaintiffs have filed motions to consolidate the seven related cases pending in the Northern District of California against BEA Systems, Inc., and both motions are unopposed. The Court GRANTS the motions to consolidate.

### B. Competing motions to appoint lead plaintiff and approve lead counsel

The notice of this action was posted on Business Wire, a widely circulated national business-oriented publication. See Bishop Decl., Ex. A; Check Decl., Ex. B. The Zuaiter Group and ARCA have both filed timely motions for appointment as lead plaintiff and submitted acceptable sworn certifications. See Bishop Decl., Ex. B; Check Decl., Ex. A. The only task that remains is to determine which movant is the most adequate plaintiff.

#### 1. Financial interest in the litigation

The Court must first determine which movant has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Zuaiter Group asserts that its financial interest in the litigation is $242,625, distributed as follows: Zuaiter – $138,221; Kalil – $55,804; and Pardun – $48,600. Zuaiter Group's Mot. at 2:20; Bishop Decl., Exs. B,C. ARCA asserts that it has the largest financial interest in the case, with losses of $255,042. ARCA's Mot. at 2:1-2; Check Decl., Ex. C.

ARCA claims that the Zuaiter Group's loss figures are inflated because group member John Kalil's sales figures for May 13, 2004, do not match the Bloomberg trading data for that date. Specifically, Kalil states that he sold 3,800 shares at $9.22 per share and 10,200 shares at $9.10 per share for a loss of $55,804, but ARCA states that BEA Systems stock traded at a low of $10.49 per share that day. See ARCA Opp'n, Ex. A. Applying these figures, ARCA calculates the Zuaiter Group's total loss at $223,621. ARCA's Opp'n at 3:13. The Zuaiter Group counters that, while BEA stock did close on May 13, 2004 at $10.78, the stock price dropped on after-hours trading and opened at $9.04 on May 14, 2004. Zuaiter Group's Surreply at 1:8-11; Exs. 1-2.

United States District Court
For the Northern District of California

Regardless of which figures are used to calculate the Zuaiter Group's losses, the Court finds that ARCA has the largest financial interest in the litigation, and is thus entitled to the presumption of most adequate plaintiff, if it meets the requirements of typicality and adequacy.

**2. Typicality and adequacy**

While the Zuaiter Group does not dispute ARCA's higher loss figures, it argues that ARCA should not serve as lead plaintiff because ARCA is an atypical member of the class. Specifically, the Zuaiter Group alleges that ARCA "engaged in a suspicious pattern of trading which included short selling BEA stock" during the Class Period. Zuaiter Group's Opp'n at 2:21-24. As an alleged short-seller and possible "hedge fund," the Zuaiter Group contends, ARCA intended to drive down the price of stock so that it could buy more at a lower price, and therefore its interests are not aligned with those of other class members.[2] In addition, the Zuaiter Group questions whether ARCA's clients have authorized ARCA to litigate on their behalf, and points out that there is a pending case before the Ninth Circuit regarding whether an "investment advisor" may be appointed as lead plaintiff. Id. at 3:22-25; see id., Ex. 1 (In re Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors, No. 04-73146). It contends that ARCA has not provided specific information about its structure, clients, whether it has notified its clients of its motion for appointment as lead plaintiff, or what "sophistication and resources" it has to "effectively manage this litigation." Zuaiter Group Opp'n at 1:7-14.

ARCA responds that Zuaiter Group has not shown that ARCA engaged in short selling or established why ARCA "appears" to be a hedge fund or asset manager. ARCA states that it is a mutual fund manager that invested in BEA Systems on behalf of its own mutual funds, not on behalf of individual clients who control those funds or receive investment advice from ARCA, and attaches a declaration from its Managing Director in support of these claims. ARCA Reply at 4:10-14; see Pillette Decl., Ex. A (Decl. of Dr. Attilio Ferrari) ¶ 2,

---

[2] The Zuaiter Group bases its claim that ARCA engaged in short-selling by pointing to the fact that ARCA purchased 254,388 shares of BEA Systems stock for $12.2776 on November 19, 2003; it sold them for a profit of $0.2206 per share, a total of $56,118 one week later; just over three weeks later, it purchased 353,715 more shares for $12.3378 and sold these over the next two months for profits ranging from $1.7957 per share to $0.6074 per share, totaling $371.269. It then had 88,430 shares left, and it bought 88,430 more, of which it sold 36,397 two weeks before the May 13, 2004 announcement. See Zuaiter Group Opp'n at 3:7-16. Without more, the Court is unpersuaded that this reflects short-selling.

4. Therefore, ARCA has full authority to bring suit, and Dr. Ferrari will actively monitor the litigation. Id. at ¶4-5. ARCA also argues that, as a large investor, it is precisely the kind of prototypical "institutional investor" that Congress intended to serve as lead plaintiff under the PSLRA. ARCA Mot. at 8:12-25.

By contrast, ARCA argues, the Zuaiter group does not survive the "rule of reason," under which the proposed group of plaintiffs must "actively represent the class." This Court applies this rule of reason on a case-by-case basis to determine whether an asserted group "has demonstrated the ability to represent the class and direct the litigation without undue influence from counsel." In re Versata, Inc. Sec. Litig., 2001 U.S. Dist. LEXIS 24270, at *21 (N.D. Cal. Aug. 20, 2001). Because the Court lacks any specific information about the three individuals in the Zuaiter Group, ARCA argues that it cannot ensure that this group of plaintiffs has the sophistication and business knowledge to adequately represent the class and direct the litigation without undue influence from counsel. In re Versata, at *18-*22.[3]

The Court finds that ARCA meets the typicality and adequacy requirements. To meet the typicality requirement, the claims of a lead plaintiff and class members need not be identical. In re Enron Corp.Sec. Litig., 206 F.R.D. 427, 445 (S.D. Tex. 2002), citing In re Lucent Techs., Inc. Sec. Litig., 194 F.R.D. 137, 150 (D.N.J. 2000) ("the typicality requirement is satisfied when the plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other members and is based on the same legal theory."). In fact, "the test for typicality is not demanding . . . . [T]he critical inquiry is whether the class representative's claims have the same essential characteristics of the putative class." In re Enron, at 445, n.10, citing Stirman v. Exxon Corp., 280 F.3d 554, 562-63 (5th Cir. 2002). As the court explained in Deutschman v. Beneficial Corp., 132 F.R.D. 359, 373 (D. Del., 1990), "the focus of the typicality inquiry is not on plaintiff's behavior, but defendants'." If defendants' course of conduct gave rise to all class members' claims and if "defendants have not taken any action unique to the named plaintiff, then the representative's claim is typical." Id. (citations omitted). Here, the claims of all plaintiffs, including ARCA, are based on whether BEA Systems' alleged misrepresentations injured its stockholders by artificially inflating its stock price. Moreover, the Court is

[3] The Court does not agree with ARCA that specific information from proposed lead plaintiffs is always required. In Versata, the Court relied on declarations submitted by the putative plaintiffs to establish their business sophistication, but did not expressly require them, like the district court in In re Network Associates, Inc. Sec. Litig., 76 F.Supp.2d 1017 (N.D. Cal. 1999).

satisfied that ARCA is neither a hedge fund engaged in short selling nor an investment advisor acting without the authorization of its clients.

The representative must have sufficient interest in the case's outcome to ensure vigorous advocacy. The Court finds no evidence of any antagonism between the interests of ARCA and the class. ARCA has certified its willingness to serve as representative plaintiff and has retained counsel experienced in litigation securities class actions. No challenge has been made to ARCA's selection of counsel.

The Court finds that ARCA, as the plaintiff with the largest financialstake in the litigation, also satisfies the typicality and adequacy tests necessary to serve as lead plaintiff in this litigation.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motions to consolidate all related actions. The Court GRANTS ARCA's motion for appointment as lead plaintiffs along with Schiffrin & Barroway LLP as lead counsel and Green & Jigarjian LLP as liaison counsel. The motion by the Zuaiter Group is DENIED.

Counsel for ARCA is ordered to prepare, circulate for approval as to form and submit to the Court an order of consolidation and an Amended Consolidated Complaint, **all to be filed on or before October 15, 2004.**

**IT IS SO ORDERED.**

Dated: September 24, 2004

S/Susan Illston

SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California

# EXHIBIT R

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.

United States District Court,N.D. Ohio, Eastern Division.
In re: THE GOODYEAR TIRE & RUBBER COMPANY SECURITIES LITIGATION
No. 5:03 CV 2166.

May 12, 2004.

Jack Landskroner, Cleveland, OH, for Plaintiff.
Jack Morrison, Jr., Thomas R. Houlihan, Akron, OH, Jacob B. Radcliff, Jerome S. Hirsch, Jonathan Lerner, Lauren Aguiar, New York, NY, John T. Billick, Cleveland, OH, for Defendants.

MEMORANDUM OPINION & ORDER

[Resolving Docs. 13, 16, 17 in case # 5:03CV2166 and Doc. 12 in case # 5:03CV2210]

I. Introduction

ADAMS, J.

*1 The above-captioned case is an action for securities fraud brought on behalf of shareholders of The Goodyear Tire & Rubber Company (the "Shareholders") against Defendants The Goodyear Tire & Rubber Company (Goodyear), Robert J. Keegan, Robert W. Tieken, Samir G. Gibara, Stephanie W. Bergeron, John W. Richardson, and Richard J. Kramer, (collectively referred to as "Defendants"). The Shareholders base their claims on violations of Section 10(b) of the Securities and Exchange Act of 1934, Section 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5, which was promulgated thereunder. The action was filed as a class action, excluding from the class Defendants, directors and officers of Goodyear, their families and affiliates.

On December 31, 2003, this Court entered an order consolidating all individual actions related to this matter. Shortly thereafter certain individual movants filed motions requesting appointment as lead plaintiff in the consolidated action. The first group of movants consists of the Alaska Electrical Pension Fund and the Central States, Southeast and Southwest Areas Pension Fund (the "Institutional Funds").[FN1] The second group of movants consist of funds A57, C16 and NK1, which are part of the fund family managed by Capital Invest, die Kapitalanlagegesellschaft der Bank Austria Creditanstalt Gruppe GmbH, a fund management company located in Vienna, Austria (Capital Invest).[FN2] The last movant is Flamina Holdings, AG (Flamina Holdings.).[FN3] Flamina Holdings is a holding entity for two individual investors, Mr. Michael May and Ms. Christina May.

FN1. ECF Doc. 16.

FN2. ECF Doc. 17.

FN3. Flamina's motion was filed as ECF Doc. 12 in case 5:03CV2210.

On February 10, 2004, the Court held a hearing at which time counsel for each of the proposed lead plaintiffs had an opportunity to present their arguments. Counsel for the Institutional Funds, Capital Invest and Flamina were present at the hearing.[FN4] The Court has reviewed the parties' motions, responses, and replies thereto. It has also fully considered the arguments presented at the hearing.

FN4. The Court notes that a motion filed by movant Richard Berman is still pending on its docket. Mr. Berman was not represented by counsel at the hearing. Therefore, the Court deems his motion withdrawn. Even if the Court seriously considered Mr. Berman's motion, however, it would not appoint him as lead plaintiff in this action. By Mr. Berman's own admission, he has lost only $54,730, which is much less than the losses the other movants allegedly suffered. (Berman, Mot. for Lead Plf. at 9).

II. The Alleged Losses

The Institutional Funds request appointment as lead plaintiff based on their alleged loss of more than $3.7 million in connection with the purchase of over 188,000 shares of Goodyear securities between the time of October 13, 1998 and October 22, 2003 (the "Class Period"). The Institutional Funds also request

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

approval of their selection of lead counsel, William S. Lerach and Tor Gronborg of Milberg, Weiss, Bershad, Hynes & Lerach LLP and Landskroner-Grieco, Ltd. as liaison counsel.

Likewise, Capital Invest requests appointment as lead plaintiff based on its loss of approximately $1.2 million in connection with its acquisition of 83,100 shares of Goodyear common stock during the class period. Capital Invest also requests approval of its selection of lead counsel the law firm of Bernstein, Litowitz, Berger & Grossman, LLP (Bernstein Litowitz) and the law firm Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA (Climaco Lefkowitz) as liaison counsel.

*2 Flamina Holdings requests appointment as lead plaintiff based on its alleged loss of $2 million in connection with its acquisition of common stock and options. Flamina Holdings also requests approval of its selection of lead counsel the law firm of Scott & Scott and the law firm Tzangas, Plakas, Mannos, & Recupero as liaison counsel. However, Flamina Holdings' stated losses are based on its losses plus the losses of Goodyear Tireworkers Independent Unity of the USWA Local 307 Topeka (GTWIU), who no longer seeks appointment as lead plaintiff. GTWIU was originally a co-movant with Flamina Holdings. However, it subsequently withdrew from the motion.[FN5] At the hearing on this matter, Flamina Holdings represented that its loss alone was only $885,000.

FN5. ECF Doc. 32, filed in case 5:03CV2166.

III. Capital Invest is Appointed as Lead Plaintiff

The Private Securities Litigation Reform Act (PSLRA) sets forth the procedure that governs appointment of the lead plaintiff in actions arising under the Securities and Exchange Act of 1934 when such an action is brought as a class action under the Federal Rules of Civil Procedure. *See generally* 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i). This procedure first requires that the plaintiff who files the initial action, within 20 days of filing, publish a notice to the class informing the class members of their right to file a motion for appointment as lead plaintiff. *Id.* at § 78u-4(a)(3)(A)(I).[FN6]

FN6. Here, the first notice of pendency was published over *The Business Wire* on October 23, 2003. Consistent with the PSLRA, the notice advised potential class members of the pendency of the action, the claims asserted therein, the purported class period, and that any member may, within 60 days from the date of the notice, move the Court to serve as lead plaintiff in the action. *Id.* at § 78u-4(a)(3)(A)(I).

The PSLRA also provides that within 90 days after publication of notice, the district court shall consider the class members' motions and shall appoint as lead plaintiff the member or members of the class that the Court determines most capable of adequately representing the interests of the class members.[FN7] *Id.* at § 78u-4(3)(B)(I). When making the determination of "most adequate plaintiff," the PSLRA states that:

FN7. The Court acknowledges that this Order designating lead Plaintiff was not issued within 90 days after publication of notice. However, the Court was not able to comply with the 90-day provision in this case. Based on the Court's trial schedule it was not able to hold the hearing before expiration of the 90-day period. Accordingly, the Court did not have the requisite information on which to base its decision. *In re PRI Automation, Inc. Securities Litigation,* 145 F.Supp.2d 138, 144-45 (D.Mass.2001) (noting that compliance with the 90-day provision in some cases would require a district judge to make an uninformed decision and finding the 90-day provision to be an unconstitutional intrusion on judicial functions). Moreover, the Court needed time after the hearing to appropriately consider the parties' motions and focus on selecting the lead plaintiff and lead counsel best suited to adequately and fairly represent the interests of the plaintiff class in this case. *See id.*

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under [the PSLRA] is the person or group of persons that -
(aa) has either filed the complaint or made a motion in response to a notice ...;
(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Id. § 78u-4 (3)(B)(iii)(I)(aa)-(cc). The above presumption may only be rebutted by proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class, or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing to the class. Id. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). The lead plaintiff selected by the Court has the discretion to retain counsel of its choice to represent the class, subject to court approval. Id. § 78u-4(a)(3)(B)(v).

Here, all movants have timely filed their motions to be appointed lead plaintiff in this action. Accordingly, the Court now turns to its determination of the movants' relative financial interests in the relief sought by the class.

IV. Largest Financial Interest

*3 The PSLRA does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest." *See id.* 78(u)(a)(3)(B)(iii)(I)(bb). This Court will calculate financial interest employing a four-factor inquiry recognized by a host of other district courts. *See, e.g., In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 295 (E.D.N.Y.1998); *In re Nice Sec. Litig.,* 188 F.R.D. 206, 217 (D.N.J.1999); *In re Cable & Wireless, PLC. Sec. Litig.,* 217 F.R.D. 372, 375 n. 4 (E.D.Va.2003); *In re Comedisco Sec. Litig.,* 150 F.Supp.2d 943, 945 (N.D.Ill.2001). The four factors relevant to the calculation are: (1) the number of stock shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered during the class period. The Court separately addresses each movant's financial interest in light of these factors, subject to the caveat that this discussion is limited to resolving the lead plaintiff motions, and is not an ultimate determination of liability and damages.

A. *Flamina Holdings*

Under the foregoing analysis, Flamina Holdings has not demonstrated the most significant financial interest in this litigation. Flamina Holdings purchased and sold 65,000 shares of Goodyear stock during the Class Period, for a net purchase of zero shares. The company expended $1,550,000 and received $665,400, incurring a total loss of $884,600. The record thus indicates that, of the three movants for lead plaintiff, Flamina Holdings expended the least amount of funds and purchased the fewest (total) shares of Goodyear stock during the Class Period. As the Court discusses below, Flamina Holdings' $884,600 loss is not the greatest loss incurred by the movants. Accordingly, Flamina Holdings is not the best candidate for lead plaintiff.

Flamina Holdings' motion is denied on the additional ground that the movant is a holding company for two individual investors and thus is not an "institutional investor." The legislative history of the PSLRA reflects a preference for institutional investors in the lead plaintiff role. *See In re Telxon Corp. Sec. Litig.,* 67 F.Supp.2d 803, 821 (N.D.Ohio 1999).

Flamina Holdings' alternative request for appointment as a co-lead plaintiff also is denied. A co-lead plaintiff appointment is not warranted under the circumstances present in this case and likely would result in increased costs and duplication of efforts.

B. *The Institutional Funds*

The Institutional Funds' motion also is denied on the ground that the Institutional Funds do not have the most significant financial interest in this litigation based on damages incurred from purchases and sales of Goodyear securities during the Class Period. Although the movants' respective representations of loss seem to indicate that the Institutional Funds suffered the greatest damages by a considerable margin, the Institutional Funds' claimed $3.7 million loss is illusory.

*4 The Institutional Funds have calculated their purported $3.7 million loss based solely on a first-in-first-out (FIFO) methodology, ignoring the four-pronged inquiry set forth above. In this situation, FIFO grossly inflates the Institutional Funds' damages because the Institutional Funds are a "net seller" of Goodyear stock. The Institutional Funds sold 202,714 more Goodyear shares during the Class Period than they purchased, and received more profits from the sale of Goodyear stock during the Class Period than losses on the purchase of Goodyear securities.

Application of the four-factor test reveals FIFO's inaccuracy under the circumstances present here. The Institutional Funds purchased 188,675 shares of Goodyear stock during the Class Period and sold

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

391,389 shares for a net *sale* of 202,714 shares. A determination of net expenditures, or total monies received from sales ($12,910,959.72) of Goodyear stock less total funds expended on purchases ($5,299,423.81), verifies that the Institutional Funds received a total of $7,611,535.91 in net *proceeds* as a result of their high-volume Goodyear stock sales during the Class Period. The Institutional Funds may have benefitted from the alleged fraud in view of the fact that they earned millions of dollars on net sales of Goodyear stock during the Class Period. Accordingly, the Institutional Funds cannot establish the largest financial interest in the relief sought by the class.

Similarly, Central States and Alaska both are net sellers. Central States profited in the amount of $8,460,217.87 from its sales of Goodyear Stock during the Class Period. Although Alaska expended $848,681.96 more than it received, its loss is not even half as great as that claimed by Capital Invest. As such, the Court rejects the Institutional Funds' contention that they have incurred a greater financial interest in this litigation than any other lead plaintiff applicant. *See Weisz v. Calpine Corp.*, No. C 02-1200 SBA, Slip. Op. At 12 (N.D.Cal. Aug. 19, 2002) (rejecting motion of lead plaintiff movant who was a net seller and, as a result, "may have actually profited, not suffered losses as a result of the allegedly artificially inflated stock price"); *Comdisco*, 150 F.Supp. at 945-46 (same). *See also In re McKesson HBOC Sec. Litig.*, 97 F.Supp.2d 993, 996-97 (N.D.Cal.1999) ("[a] net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed.")

Even if the Court ignores the flaws inherent in the Institutional Funds' FIFO methodology, the Institutional Funds are not an acceptable lead plaintiff as they may be subject to unique defenses. Alaska sold all of its shares of Goodyear stock prior to the disclosure of the alleged fraud. Likewise, it appears that Central States sold the significant majority of its shares prior to the disclosure. Thus, both Alaska and Central States undoubtedly will face motions to dismiss and/or for judgment as a matter of law on the ground that certain losses suffered by them were not caused by the alleged fraud. *See In re Cable & Wireless*, 217 F.R.D. at 379 (stating that the lead plaintiff movant who sold its shares "before the fraud ... was revealed to the public ... could not have suffered any loss as result of the Defendants' alleged fraud"); *In re MicroStrategy Inc. Sec. Litig.*, 110 F.Supp.2d 427, 437 n. 23 (E.D.Va.2000) (holding that a lead plaintiff movant who sold shares in the subject company prior to the disclosure of the fraud also may be subject to "unique defenses based on the timing of its loss"); *Arduini/Mesina P'ship v. Nat'l Med. Fin. Servs. Corp.*, 74 F.Supp.2d 352, 361-62 (S.D.N.Y.1999) (granting the defendants' motion to dismiss the plaintiff's claims where plaintiff sold all of his shares in the subject company prior to disclosure of the fraud and could not demonstrate that his damages were caused by the defendants' fraudulent statements).

*5 Moreover, the Institutional Funds' motion is denied in light of this Court's previous ruling that lead plaintiff movants must have a pre-existing relationship and basis for acting as a collective unit to qualify under the PSLRA as a viable lead plaintiff group. *In re Telxon*, 67 F.Supp.2d at 823 (O'Malley, J.). At the February 10, 2004 hearing, counsel for the Institutional Funds admitted that Central States and Alaska have no relationship pre-dating this litigation and were joined solely for the purpose of prosecuting this case. As such, the Institutional Funds have improperly aggregated their losses for the purpose of their lead plaintiff motion.

C. *Capital Invest*

Having denied the competing lead plaintiff applications, the Court now turns to Capital Invest's motion. Capital Invest has the most significant financial interest in this litigation. It purchased the most shares of Goodyear Stock during the Class Period and sold no shares, for a net purchase of 83,100 shares, a net expenditure of $1,779,900.36, and a claimed loss of approximately $1,200,000. Thus, Capital Invest is the presumptive lead plaintiff subject to the requirements of Rule 23 (discussed *infra*.)

Capital Invest's qualifications for lead plaintiff status are not susceptible to the Institutional Funds' challenges. The Court briefly examines said challenges below.

Contrary to the Institutional Funds' contention, Capital Invest possesses standing to assert securities fraud claims on behalf of the clients for whom it purchases and sells securities. A number of district courts have held that an investment manager has standing to bring securities claims on its clients' behalf if it is the clients' attorney-in-fact and has specific authority to recover its clients' investment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

losses. *See, e.g.,* *Weingberg v. Atlas Air Worldwide Holdings, Inc.,* 216 F.R.D. 248, 255 (S.D.N.Y.2003) (stating that "when the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name"); *In re DaimlerChrysler AG Sec. Litig.,* 216 F.R.D. 291, 299 (D.Del.2003) (same); *In re Rent-Way Sec. Litig.,* 218 F.R.D. 101, 106-09 (W.D.Pa.2003) (same); *EZRA Charitable Trust v. Rent-Way, Inc.,* 136 F.Supp.2d 435 (W.D.Pa.2001) (same). Capital Invest's Declaration provides, "Capital Invest controls and manages the Funds and acts as attorney-in-fact for them. Capital Invest has full and complete authority to purchase and sell securities for each of the funds, and to institute legal action on their behalf." Based on the Declaration, the other evidence of record, and the caselaw cited above, Capital Invest has standing to bring suit and serve as lead plaintiff in this litigation.

The Institutional Funds' attempt to discredit Capital Invest on the ground that it is a non-domestic (Austrian) investment firm, and therefore an uncommitted and uncontrollable candidate for lead plaintiff, is insupportable. Capital Invest has testified in its Declaration and through its attorneys at the February 10, 2004 hearing that it has vast resources, that it is committed to working to obtain the best possible recovery for the plaintiff class, and that its representatives will be available in person to the Court. Further, the Institutional Funds' comment that Capital Invest is located almost 4500 miles from the Court lacks a measure of ingenuousness given that Alaska itself is located over 4000 miles away and has not provided the Court with any proof that it is willing to make its representatives available to the Court as necessary. Further, Austrians are, by treaty, expressly entitled to the same rights and privileges before United States courts as United States citizens. *See* Treaty between the United States of America and Austria of Friendship, Commerce and Consular Rights, June 19, 1928, U.S.-Aus., art. IX, 47 Stat. 1876, 1931 WL 29977 (U.S. Treaty). Even in the absence of a treaty, to exclude a foreign investor from lead plaintiff status on nationality grounds would defy the realities and complexities of today's increasingly global economy.

*6 For all of the foregoing reasons, Capital Invest has the greatest financial interest in this case and is the presumptive lead plaintiff subject to the strictures and requirements of Rule 23. The Court now turns to its Rule 23 analysis.

V. Adequacy & Typicality Under Rule 23(a)

Having determined that Capital Invest is the largest stakeholder does not end this Court's analysis. The PSLRA requires that the lead plaintiff also satisfy the requirements of Federal Rule 23.[FN8] Here, the Court must find that Capital Invest would satisfy Rule 23's typicality and adequacy requirements before it can appoint Capital Invest as lead plaintiff.[FN9] *See In re Century Business Services Sec. Litig.,* 202 F.R.D. 532, 539 (N.D.Ohio 2001) (analyzing the typicality and adequacy requirements of Rule 23 in a securities class action governed by the PSLRA); *See also In re Telxon,* 67 F.Supp.2d at 807 n. 10 (noting that class action analysis under Rule 23 in securities actions hinges on the typicality and adequacy requirements of the rule). Based on the evidence before it, this Court finds that Capital Invest would satisfy the typicality and adequacy requirements of Rule 23.

FN8. Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a).

FN9. Upon motion to certify this action as a class action, the Court will undertake the "rigorous analysis" necessary for a determination of whether the complete prerequisites of Rule 23 are met. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996) (citing *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). As the Sixth Circuit has noted, "[a] class is not maintainable as a class action by virtue of its designation as such in the pleadings." *Id.* Because, in this case, a consolidated complaint has not been filed, the Court will reserve the issue of whether a class will be certified for a later date.

Typicality is governed by Rule 23(a)(3), which requires that the claims or defenses of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

representative party be typical to the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). In other words, a sufficient relationship must exist between the injury to the named representative and the conduct affecting the class. *In re American Medical Sys. Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996) (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 3-13, at 3-76 (3d ed.1992)). "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory ." *Id.*

Capital Invest satisfies the typicality requirement. It seeks to represent a class of purchasers of Goodyear securities who have non-competing and non-conflicting interests. All class members purchased or acquired Goodyear stock during the Class Period and allegedly suffered a loss as the result of Defendants' conduct in connection therewith. As Capital Invest aptly notes, its claims deal with the same issues that pertain to the claims of the other class members. Namely, these issues are (1) whether Goodyear issued false and misleading statements during the Class period, (2) whether Defendants acted knowingly and/or with deliberate recklessness in issuing these allegedly false and misleading statements, (3) whether the market price of Goodyear stock was artificially inflated during the Class Period because of Defendants' allegedly wrongful conduct, and (4) whether the members of the class have sustained damages, and the amount of such damages. Because Capital Invest's claims deal with the same issues that pertain to the other class members, its interests are clearly aligned with those of the class. *Id.*

*7 Adequacy is governed by Rule 23(a)(4), which allows certification of a class only if the class representative will fairly and adequately protect the interest of the class. Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has set forth two criteria for determining adequacy. First, the class representative must have common interests with those unnamed class members. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996) (citation omitted). Second, it must appear that the class representative will vigorously prosecute the action with the assistance of qualified counsel. *Id.* According to the circuit, "[t]he adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." *Id.*

Here, Capital Invest has common interests with the unnamed members of the class. Both Capital Invest and the other class members seek to recover their losses in connection with Defendants' alleged conduct. There is nothing to indicate that Capital Invest, as the class representative, would not vigorously prosecute the interests of the class. Clearly, Capital Invest has the need seek to recovery for its own losses. As such, there is no reason for this Court to find that Capital Invest would not just as vigorously prosecute and protect the interests of the class. As Capital Invest notes, there is no evidence before the Court of any antagonism between the interests of Capital Invest and the interests of the class members. Therefore, the Court sees no reason why Capital Invest cannot or would not vigorously prosecute the class members' claims.

There is also no evidence that the proposed lead counsel, Bernstein Litowitz, is not qualified counsel. In making this determination, the Court must consider whether the proposed counsel are qualified, experienced, and generally able to conduct the litigation. *See Stout v. J.D. Byrider,* 228 F.3d 709, 717 (6th Cir.2000). Having reviewed the resume of Bernstein Litowitz, proposed lead counsel in this action, the Court notes that the firm's litigation practice concentrates in the area of securities class actions. The firm also markets itself as "the nation's leading firm in representing institutional investors in securities fraud class action litigation." FN10

FN10. See Capital Invest, Mot. to Consolidate at Exh. D.

A review of the firm's resume reveals that it is qualified in securities class action lawsuits. Other courts have found this as well. *See, e.g. Piven v. Sykes Enterprises, Inc.,* 137 F.Supp.2d 1295, 1306 (M.D.Fla.2000) (finding Bernstein Litowitz experienced in litigating class action lawsuits); *Osher v. Guess?, Inc.,* No. CV01-00871LGB, 2001 WL 861694 at *4 (C.D.Cal.2001) (unreported) (finding Bernstein Litowitz experienced in litigating complex securities actions after reviewing the firm's resume); *Armour v. Network Assoc., Inc.,* 171 F.Supp.2d 1044, 1052 (noting that "[t]he firm resume of Bernstein Litowitz reveals its competence to provide class representation in a securities class action."). In fact, the firm's literature boasts numerous statements from various district court judges across the country who have commented on the outstanding performance of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Bernstein Litowitz in various actions where excellent results have been achieved for plaintiff class members. On the whole, there is nothing that would indicate to this Court that Bernstein Litowitz is anything but qualified, experienced, and generally able to conduct the litigation in this case.

VI. Conclusion

*8 For the reasons stated above, Capital Invest's motion for appointment as lead plaintiff is granted. In keeping, its request appoint the law firm of Bernstein Litowitz as lead counsel and the law firm of Climaco Lefkowitz as liaison counsel is granted. All other pending motions are hereby denied.

IT IS SO ORDERED.

N.D.Ohio,2004.
In re Goodyear Tire & Rubber Co. Securities Litigation
Not Reported in F.Supp.2d, 2004 WL 3314943 (N.D.Ohio)

Briefs and Other Related Documents (Back to top)

• 2004 WL 3147605 (Trial Motion, Memorandum and Affidavit) Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dec. 30, 2004) Original Image of this Document (PDF)
• 2004 WL 3145073 (Trial Motion, Memorandum and Affidavit) Motion to Fix Defendants' Reply Deadline at January 21, 2005. (Dec. 6, 2004) Original Image of this Document (PDF)
• 2004 WL 3145065 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of their Motion to Dismiss the Consolidated Amended Class Action Complaint (Nov. 15, 2004) Original Image of this Document (PDF)
• 2004 WL 3144420 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of the Motion of Capital Invest to be Appointed Lead Plaintiff Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, for Approval of its Choice of Lead Counsel for the Class and in Opposit ion to the Motions of the Central States Group and Flamina (Feb. 9, 2004) Original Image of this Document (PDF)
• 2004 WL 3152998 (Trial Motion, Memorandum and Affidavit) The Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Consolidated Reply in Further Support of their Motion for Appointment as Lead Plaintiff and for Approval of their Selection of Lead Counsel (Feb. 9, 2004) Original Image of this Document (PDF)
• 2004 WL 3152997 (Trial Motion, Memorandum and Affidavit) Movant Flamina's Reply in Support of its Motion for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel (Feb. 6, 2004) Original Image of this Document (PDF)
• 2004 WL 3146524 (Trial Motion, Memorandum and Affidavit) The Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Consolidated Opposition to the Competing Motions for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counse (Jan. 29, 2004) Original Image of this Document (PDF)
• 2004 WL 3152996 (Trial Motion, Memorandum and Affidavit) Movant Flamina's Response to the Motions for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel Filed by the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund and by Capital Inves t GmbH (Jan. 29, 2004) Original Image of this Document (PDF)
• 2004 WL 3146787 (Trial Motion, Memorandum and Affidavit) Plaintiff Richard Berman's Response to Motions for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Co-Lead Counsel (Jan. 12, 2004) Original Image of this Document (PDF)
• 2003 WL 23998043 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 23998246 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 23999273 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 23999846 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 24001167 (Trial Motion, Memorandum and Affidavit) Class Action (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 24002678 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 23998228 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Motion of Capital Invest for Consolidation; to be Appointed Lead Plaintiff Pursuant to Section 21d(a)(3)(B) of the Securities Exchange Act of 1934; and to Approve Proposed Lead Plaintiff's Choice of Counsel for the Class (Dec. 23, 2003) Original Image of this Document (PDF)
• 2003 WL 23998026 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southeast Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998035 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998040 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998092 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998253 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998353 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Richard Berman for Consoidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998849 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999134 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999263 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999268 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999333 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999343 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

• 2003 WL 23999748 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999957 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 24000014 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Motion of Capital Invest for Consolidation; to be Appointed Lead Plaintiff Pursuant to Section 21d(a)(3)(B) of the Securities Exchange Act of 1934; and to Approve Proposed Lead Plaintiff's Choice of Counsel for the Class (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 24001165 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 24001174 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999790 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Oct. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 23998348 (Trial Pleading) Complant for Violation of the Federal Securities Laws (Oct. 23, 2003) Original Image of this Document (PDF)
• 5:03cv02166 (Docket) (Oct. 23, 2003)
• 2003 WL 24002679 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of the Motion of Capital Invest to be Appointed Lead Plaintiff Pursuant to Section 21d(a)(3)(B) of the Securities Exchange Act of 1934, for Approval of its Choice of Lead Counsel for the Class and in Opposition to all other Competing Motions (Jan. 29, 2003) Original Image of this Document (PDF)
• 2003 WL 23998875 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (2003) Original Image of this Document (PDF)
• 2003 WL 24001166 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (2003) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT S

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re NORTEL NETWORKS CORP. SECURITIES LITIGATION
No. 01 Civ. 1855(RMB).

Sept. 8, 2003.

Investor, on behalf of putative class, brought securities fraud action against corporation and its officers. Investor moved for class certification. The District Court, Berman, J., held that: (1) investor satisfied prerequisites to class certification; (2) common questions of law or fact predominated; (3) class action was superior method of adjudicating controversy; and (4) court had subject matter jurisdiction over foreign investors for purposes of class certification.

Motion granted.

West Headnotes

[1] Federal Civil Procedure 187
170Ak187 Most Cited Cases
Investor seeking class certification in securities fraud action satisfied numerosity prerequisite, inasmuch as class likely numbered in the hundreds or thousands. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § § 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.

[2] Federal Civil Procedure 187
170Ak187 Most Cited Cases
Securities fraud case satisfied commonality prerequisite to class certification, given existence of such common legal and factual issues as whether defendants violated federal securities laws through acts and conduct alleged and whether corporation issued false and misleading statements during class period. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § § 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

[3] Federal Civil Procedure 187
170Ak187 Most Cited Cases
Investor seeking class certification in securities fraud action satisfied typicality prerequisite to certification, despite contention that investor's use of indexed trading strategy did not involve reliance on integrity of market and would give rise to atypical defenses, given that reliance was clearly alleged and jury could conclude that pursuing index strategy entailed reliance. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § § 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

[4] Federal Civil Procedure 187
170Ak187 Most Cited Cases
Investor satisfied prerequisite to class certification addressing adequacy of representation in securities fraud action, in that investor's claims appeared to be in harmony with those of other members of proposed class, investor took several significant "hands on" steps to prosecute case, and its counsel was qualified to pursue securities fraud litigation. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § § 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

[5] Federal Civil Procedure 187
170Ak187 Most Cited Cases
Common questions of law or fact predominated in securities fraud action, supporting investor's motion for class certification, notwithstanding defendants' contention that investor was not entitled to rely on fraud-on-the-market theory of reliance because market was not efficiently driven by fundamental value. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § § 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

[6] Federal Civil Procedure 187
170Ak187 Most Cited Cases
Class action was superior method of resolving securities fraud litigation, supporting class certification, given that claims likely would be numerous but would, in many instances, be too small to pursue individually, and that multiple lawsuits would be inefficient. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[7] Federal Civil Procedure 187**
170Ak187 Most Cited Cases
For purposes of class certification in securities fraud action, district court had subject matter jurisdiction over claims of foreign buyers who acquired corporation's stock on foreign exchange, given allegations that, during class period, corporation and its officers extended vendor financing to United States customers which they knew to be uncreditworthy so as to artificially inflate corporation's revenues, and thus engaged in substantial fraudulent activity in United States directly causing losses to foreign investors, and given court's ability to shape class more precisely to fit issues of case as they emerged during litigation. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § § 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

DECISION AND ORDER ON CLASS CERTIFICATION

BERMAN, J.

*1 THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS

I. Background

In this action filed on March 2, 2001, the Trustees of the Ontario Public Employees' Union Pension Trust Fund ("OPTrust"), on behalf of a putative class, allege that Nortel Networks Corporation ("Nortel"), John Andrew Roth, Nortel's Chief Executive Officer and President during the Class Period, Clarence Chandran, Nortel's Chief Operating Officer during the Class Period, and Frank Dunn, Nortel's Chief Financial Officer during the Class Period (collectively, "Defendants") violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) by, among other things, "knowingly or recklessly issu[ing] a stream of materially false and misleading representations to the investing public." (Second Consolidated and Amended Class Action Complaint ("Complaint") ¶ 3, at 2.) [FN1]

FN1. For a more detailed recitation of the facts, see this Court's Order resolving Defendants' motion to dismiss the Complaint against Nortel, reported at 238 F.Supp.2d 613 (S.D.N.Y.2003).

OPTrust moves to certify a class "consisting of all persons and entities who, during the period October 24, 2000 and continuing through and including February 15, 2001, purchased Nortel common stock or call options or sold Nortel put options, and who suffered damages thereby, including, but not limited to, those persons who traded in Nortel Securities on the New York Stock Exchange and/or the Toronto Stock Exchange." (Mem. of Law in Supp. of Lead Pl.'s Motion for Class Certification ("Pl.Br.") at 7.) OPTrust argues that "this action meets all of the requirements of Rule 23 of the Federal Rules of Civil Procedure for the maintenance of a class action" (Pl. Br. at 2) and, among other things, that all members of the class relied upon Defendants' allegedly "deceptive and materially false and misleading statements to the investing public." (Compl. ¶ 198, at 84; *see id.* ¶ 203, at 86 ("Lead Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, traded in Nortel Securities at prices artificially inflated or distorted by defendants' wrongful conduct.") Defendants oppose class certification, arguing that (1) OPTrust is atypical because it is subject to unique defenses; (2) OPTrust is an inadequate representative because it has ceded control of the litigation to its lawyers; (3) common questions of law or fact do not predominate "because plaintiffs cannot rely upon the fraud-on-the-market theory of reliance." (Def. Mem. of Law in Opp'n to Lead Pl.'s Motion for Class Certification ("Def.Br.") at 1-12); and (4) the Court does not have subject matter jurisdiction over foreign purchasers of Nortel Securities. For the reasons set forth below, the Court grants Plaintiff's motion for class certification and appoints OPTrust as Class representative.

II. Standard of Review

*2 To succeed on a motion to certify a class, plaintiffs first must satisfy the prerequisites listed in Rule 23(a) of the Federal Rules of Civil Procedure: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *In re AMF Bowling Sec. Litig.*, 99 Civ. 3023, 2002

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

WL 461513, at *3 (S.D.N.Y. Mar.26, 2002). "Second, plaintiffs must show that the putative class falls within one of the three categories set forth in Rule 23(b)." *Id.* [FN2]

FN2. Plaintiffs seek certification under Rule 23(b)(3), which requires that the Court find "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

"[T]he Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation and has explicitly noted its preference for class certification in securities cases." *Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 54 (S.D.N.Y.1993); *see In re Blech Sec. Litig.,* 187 F.R.D. 97, 102 (S.D.N.Y.1999) ("Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws....").

"Although a court must conduct a rigorous inquiry in determining whether the requirements of Rule 23 have been satisfied, it must accept plaintiffs' allegations as true and refrain from conducting an examination of the merits when determining the propriety of class certification." *In re AMF,* 2002 WL 461513, at *3 (citations omitted); *see Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir.1999); *Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978).

III. Analysis

The Court has reviewed, among other things, Pl. Br., dated March 21, 2003; Def. Br., dated May 30, 2003, which attaches the (expert) reports of Professor Paul A. Gompers and Professor Christopher M. James; "Lead Plaintiff's Reply Memorandum of Law in Further Support of its Motion for Class Certification," dated August 1, 2003 ("Pl.Reply"), which attaches the (expert) reports of Professor Anthony Saunders, Blaine F. Nye, Ph.D., and Professor Sanjai Bhagat; and the Complaint, dated January 18, 2002. The Court heard oral argument on September 3, 2003.

A. *Fed.R.Civ.P. 23(a)(1)--Numerosity*

[1] According to OPTrust, approximately 3,006,967,918 shares of Nortel were outstanding during the class period. (Pl. Br. at 7; *see* Compl. ¶ 39, at 15.) OPTrust estimates that "there are, at a minimum, thousands of members of the Class who purchased Nortel common stock during the Class Period." (Compl. ¶ 39, at 15.) Defendants do not dispute that the proposed class is sufficiently numerous and that joinder would be impractical. (*Accord* Def. Br.) Indeed, the class likely will number in the hundreds or thousands. *See Maywalt,* 147 F.R.D. at 55; *see also In re Frontier Ins. Group, Inc. Sec. Litig.,* 172 F.R.D. 31, 40 (E.D.N.Y.1997) (" 'In securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.' " (citation omitted)); *Dietrich v. Bauer,* 192 F.R.D. 119, 123 (S.D.N.Y.2000).

B. *Fed.R.Civ.P. 23(a)(2)--Commonality*

*3 [2] OPTrust asserts that common legal and factual issues here include, among others, "whether defendants violated the federal securities laws by the acts and conduct alleged" and "whether Nortel issued false and misleading statements during the Class Period." (Pl. Br. at 10.) Defendants do not dispute commonality. (*Accord* Def. Br.) "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Robinson v. Metro-North Commuter R.R.,* 267 F.3d 147, 155 (2d Cir.2001) (citation omitted). "The commonality requirement of Rule 23(a)(2) has been applied permissively by courts in the context of securities fraud litigation." *In re Blech,* 187 F.R.D. at 104; *see also In re Frontier,* 172 F.R.D. at 40.

C. *Fed.R.Civ.P. 23(a)(3)--Typicality*

[3] OPTrust's claims, as well as those of the other members of the proposed class, arise out of alleged misrepresentations by Defendants concerning Nortel. (*See* Pl. Br. at 10-11.) OPTrust argues, among other things, that its "use of an indexed trading strategy [does not] give[ ] rise to atypical defenses" because "indexed trading typifies its reliance on the integrity of the market." (Pl. Reply at 5.) Moreover, OPTrust alleges specifically that it relied on Defendants' alleged misrepresentations. (*See, e.g.,* Compl. ¶ 203, at 86 ("Lead Plaintiff ... relying on the materially false and misleading statements described herein, ... traded in Nortel Securities ...." (emphasis added))); *see also In re Avon Sec. Litig.,* 91 Civ. 2287, 1998

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

WL 834366, at *5 (S.D.N.Y. Nov.30, 1998) ("Decisions regarding class certification are to be based on the allegations set forth in the complaint, which are accepted as true."). [FN3]

FN3. In addition, OPTrust argues that "[c]ourts have repeatedly held that additional purchases after the price of the security drops as a result of corrective disclosure do *not* give rise to atypical defenses." (Pl. Reply at 5-6 (citing cases)); *see, e.g., In re Frontier,* 172 F.R.D. at 42 (concluding that a plaintiff's purchase of defendant's stock after the disclosure of alleged misrepresentations "has no bearing on whether or not she relied on the integrity of the market during the class period" and did not defeat typicality).

Defendants dispute OPTrust's claim that it satisfies the typicality requirement because " 'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation .'" ' (Def. Br. at 12-13 (citing, among other opinions, *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990)).) Defendants argue that, unlike the putative class described in the Complaint, OPTrust "did not rely on the 'integrity' of Nortel's stock price" when OPTrust purchased Nortel stock. (Def. Br. at 13 ("[OPTrust's] trading strategy ran directly counter to market sentiment because its investment advisors concluded that the stock was highly 'overvalued' and indeed saw the emergence of a 'bubble' far earlier than the rest of the market. Yet, OPTrust bought Nortel stock largely because it was tracking an index, not because it was lulled into believing that Nortel was trading at 'a fair market price.'").) [FN4]

FN4. Defendants also argue that OPTrust's purchase of Nortel stock "well after the alleged 'fraud' was 'exposed'" ' militates against typicality. (*Id.* at 16.)

"[T]he claims of the class representatives [must] be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" ' *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) (per curiam). Because, among other things, "reliance" is clearly alleged, (*see, e.g.,* Compl. ¶ 203, at 86), and because a jury may conclude that pursuing an index strategy entails reliance (*see* Pl. Reply at 5 ("Indexed trading is the ultimate acknowledgment that the market is efficient because it cannot be beat.")), OPTrust satisfies the typicality requirement. *See In re Blech,* 187 F.R.D. at 106 ("[T]he typicality requirement is satisfied because, as set forth in the Complaint, the Plaintiffs' claims of fraud arise from the same course of conduct.").

*4 Moreover, "[t]he rule barring certification of plaintiffs subject to unique defenses is not 'rigidly applied in this Circuit." *In re Frontier,* 172 F.R.D. at 41; *see also In re Gaming Lottery Sec. Litig.,* 58 F.Supp.2d 62, 72 (S.D.N.Y.1999) ("Because a person is ineligible to represent a class of securities purchasers only if he 'clearly did not rely upon either the misleading financials *or* on the integrity of the market price or information, [Plaintiff] remains qualified to serve as a class representative." (citation omitted)); *see also In re Indep. Energy Holdings PLC Sec. Litig.,* 210 F.R.D. 476, 481 (S.D.N.Y.2002) (While the extent of any non-reliance on [plaintiff's] part will certainly be a fact question to be decided at trial, it is unlikely to significantly shift the focus of the litigation to the detriment of the absent class members.").

D. *Fed.R.Civ.P. 23(a)(4)--Adequate Representative*

[4] Defendants argue that OPTrust is "a wholly inadequate class representative, for it is a reluctant party that has ceded control over the litigation to lawyers." (Def. Br. at 17.) OPTrust responds that its "interests are not antagonistic to those of the Class" and that the "interests of the Class will be protected and advanced by OPTrust because its claims and interests are coextensive with those of the absent Class members." (Pl. Br. at 12.) In addition, OPTrust asserts that it has been "zealously representing the interests of the proposed Class by, among other things, retaining experienced counsel and devoting substantial time and effort to the prosecution of this case." (*Id.*) "Representatives of OPTrust met with senior attorneys from Milberg Weiss on three separate occasions to discuss the substantive allegations, the procedural posture of the litigation, the responsibilities of a class representative and OPTrust's potential interest in stepping into a lead role." (Pl. Reply at 7.) "Independent from the lawyers, OPTrust's Board of Trustees formed a Nortel Class Action Subcommittee ... to 'monitor developments, develop overall strategic direction and report to the Board in respect to the class action lawsuit" and "[a]t a Special Board of Trustees meeting on December 18, 2001--with the advice and assistance of an independent consultant--the Board

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

passed a resolution confirming its desire to seek the role of Lead Plaintiff." (*Id.; see also id.* at 8 n. 14 ("[W]e have a number of responsibilities, one of them being to manage the litigation ... [and] we have set up a subcommittee to do that." (quoting the deposition testimony of OPTrust's Chief Investment Officer, Morgan Eastman)).)

Under Fed.R.Civ.P. 23(a)(4), "adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interests of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir.2000). OPTrust satisfies the adequacy requirement. Its claims appear to be in harmony with those of the other members of the proposed class; it has taken several significant "hands on" steps to prosecute this case; and its counsel, Milberg Weiss Bershad Hynes & Lerach LLP, is clearly qualified to pursue this sort of litigation. *See also id.* at 61.

E. *Fed.R.Civ.P. 23(b)(3)*

*Predominance of Common Questions of Law or Fact*

*5 [5] Defendants argue in their brief that "because plaintiffs cannot rely upon the fraud-on-the-market theory of reliance" common questions of law or fact do not predominate over individual questions. (Def. Br. at 1); *see also* *Crommer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 130 n. 21 (S.D.N.Y.2001) (citing *In re Towers Fin. Corp. Noteholders Litig.*, 93 Civ. 0810, 1995 WL 571888, at *21 (S.D.N.Y. Sept.20, 1995), which states: "The [fraud-on-the-market theory] 'presumes that the market is a 'transmission belt which efficiently translates all information concerning a security into a price. In other words, it presumes the operation of an efficient market." ')). Defendants argue that "[t]he market was not efficiently driven by fundamental value, and that is the death knell to application of the fraud-on-the-market theory." (Def. Br. at 12; *see id.* at 2 ("Without resort to the presumption, a class cannot be certified since individual claims of reliance would have to be proven and would overwhelm the common issues.").) Defendants urge the Court, preliminarily and by a separate proceeding, to "determine whether the plaintiffs are entitled to rely on the [fraud-on-the-market] presumption for purposes of class certification," (*id.* at 4 & n. 3 ("The availability of the fraud-on-the-market presumption is a legal issue that must be resolved by the Court for purposes of deciding class certification.")) citing several cases (from other Circuits) for this proposition. *Cammer v. Bloom*, 711 F.Supp. 1264, 1290 (D.N.J.1989), *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir.2001), and *O'Neil v. Appel*, 165 F.R.D. 479, 496-505 (W.D.Mich.1996). [FN5]

FN5. Defendants submitted a letter to the Court, dated August 12, 2003, seeking to postpone a decision on OPTrust's motion for class certification so that the parties may conduct more "[e]xpert discovery followed by a possible hearing" on these issues. OPTrust responded with a letter to the Court, dated August 19, 2003, arguing "[t]he Court can and should decide the motion on the basis of the admittedly 'substantial' record already before it." The Court agrees with OPTrust on this issue. That is, the parties' thoughtful and comprehensive briefs on the motion to certify the class, which included submission of expert reports from Defendants and OPTrust, and helpful oral argument, have afforded the parties a full opportunity to address all salient points and authorities. *See* *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Baffa*, 222 F.3d at 58 ("[A] motion for class certification is not 'an occasion for examination of the merits of the case.... 'Nothing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." ' (citations omitted)). And, Defendants themselves have acknowledged that the existing class certification record is substantial as recently as July 29, 2003. (July 29, 2003 Tr. at 2 ("We have submitted a detailed brief, two expert reports, and I anticipate the plaintiffs will be doing the same. It's a pretty substantial record.").)

OPTrust contends that "it enjoys the benefit of the fraud on the market evidentiary rule, pursuant to which, in a Rule 10b-5 action against a public company such as Nortel, whose shares are traded in an open, well-developed market, it is presumed that (a) the alleged misrepresentations, so long as they are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

material, will inflate the value of the Company's shares and (b) plaintiff and all members of the Class relied upon the integrity of the market for those shares" and that "reliance is a common issue in this action." (Pl. Br. at 14.) OPTrust also argues " '[w]hether or not a market for a stock is open and efficient is a question of fact' that must wait for resolution at trial." (Pl. Reply at 1 (quoting *RMED Int'l Inc. v. Sloan's Supermarkets*, 94 Civ. 5587, 2002 WL 31780188 (S.D.N.Y. Dec.11, 2002))); *see also In re Laser Arms Corp. Sec. Litig.*, 794 F.Supp. 475, 490 (S.D.N.Y.1989) ("Whether in fact Laser Arms traded in an efficient market is a question of fact. Therefore, resolution of that issue must await presentation of further proof at trial."), *aff'd*, 969 F.2d 15 (2d Cir.1992). OPTrust argues that "Defendants' attempt to transform class certification into a complicated battle of the experts is precisely what the Supreme Court sought to preclude by barring 'preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.' " (Pl. Reply at 1 (quoting *Eisen*, 417 U.S. at 177).)

*6 The parties have been afforded "substantial" opportunity to present their respective points of view. [FN6] *See In re Frontier*, 172 F.R.D. at 42 ("For the purposes of this motion [for class certification], the court assumes the market for Frontier stock is an efficient one incorporating all public information about the company."); *Crommer*, 205 F.R.D. at 133 ("While [defendant] has identified evidence and arguments it may use at trial to rebut the presumption, it remains true that it is logical and fair to presume reliance here."); *see also Baffa*, 222 F.3d at 58 ("[A] motion for class certification is not an occasion for examination of the merits of the case.... 'Nothing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.' " (citations omitted)); *In re Frontier*, 172 F.R.D. at 39 ("In evaluating a motion for class certification, the court accepts as true the substantive allegations in the complaint and does not conduct even a preliminary inquiry into the merits of the case." (citing *Eisen*, 417 U.S. at 177-78); *In re Blech*, 187 F.R.D. at 107 ("[W]hen determining whether common questions predominate courts focus on the liability issue ... and if the liability issue is common to the class, common questions are held to predominate over individual questions." (citation omitted)).

FN6. *See also supra* note 5.

*Superiority of Class Action*

[6] The Court considers the following factors in making the determination of superiority: "(A) the interest of members of the class in individually controlling the prosecution or defenses of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3).

Here, a class action is superior to other alternatives. The claims likely will be numerous but, in many instances, too small to pursue individually and, even if individual plaintiffs chose to pursue the action, multiple lawsuits would be inefficient. *See In re Blech*, 187 F.R.D. at 107 ("In general, securities suits such as this easily satisfy the superiority requirement of Rule 23. Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be 'fair' nor an adjudication of their claims.").

F. *Subject Matter Jurisdiction over Foreign Purchasers*

*7 [7] Defendants argue that, even if the Court certifies a class in this action, the Court "should exclude foreign purchasers of Nortel stock." (Def. Br. at 20.) Citing *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 985-90 (2d Cir.1975), Defendants argue that "[w]hen foreign purchasers on a foreign exchange seek to rely upon the Exchange Act, the Second Circuit has held that our securities laws should not be exported to foreign countries that are perfectly capable of policing the companies that reside within them." (Def. Br. at 21.) Defendants emphasize Nortel's connection to Canada. (*Id.* at 22 ("The essence of the fraud alleged here is that Nortel's senior management --- all based in Canada -- - made a series of representations, which materially overstated the Company's earnings."; "All of the allegedly fraudulent statements were disseminated from Nortel's headquarters in Ontario. Moreover, all challenged accounting decisions likewise were made in Canada." (footnote omitted)).) Defendants also

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

argue that "as a matter of international comity, accepting jurisdiction over Canadian purchasers would overlap and supplant at least three pending Canadian class actions brought on behalf of such purchasers in the courts of Canada. Moreover, issues of judicial administration would be a nightmare...." (*Id.* at 24-25.) FN7

> FN7. Relatedly, the Court received a letter, dated August 25, 2003 from counsel for plaintiffs in a Canada-wide class action entitled *Law, et al. v. Nortel Networks Corp., et al.*, 02-CL-4605 (Ontario Superior Court of Justice), which notes that "the other two cases are, to the best of our knowledge, limited to the Provinces of British Columbia and Quebec" and that "the Canadian courts are the proper place for determining the claims of Canadian citizens who purchased Nortel shares on the Toronto Stock Exchange." (Letter to the Court from Joel P. Rochon, dated Aug. 25, 2003 at 2-3.) The Court received a letter in response, dated September 2, 2003 from counsel for OPTrust, which argues, among other things, that "there is nothing in the applicable case law, or any proposition of international law identified by defendants, that would bar the extraterritorial application of the federal securities laws in this case ... provided that the applicable Second Circuit standards are met, which they are." (Letter to the Court from Steven G. Schulman, dated Sept. 2, 2003 at 2.)

OPTrust counters that "defendants' substantial activities in the United States are much more than merely preparatory to the fraud and thus favor a finding of subject-matter jurisdiction." (Pl. Reply at 8-9.) "The vast preponderance of customers and potential customers with whom Nortel did business during the Class Period were fiber-optic cable networks and internet service providers overwhelmingly located in the U.S." and "Nortel used its artificially inflated stock to fund an aggressive growth-by-acquisition strategy, then misled investors by failing to write down the goodwill associated with its numerous U.S. acquisitions despite substantial declines in their value.... Many of these acquisitions involved properties in the U.S." (*Id.* at 9.) In addition, OPTrust argues that the mere existence of Canadian lawsuits should not persuade the Court to deny certification. (*Id.* at 9 n. 15. ("Defendants offer no information about the nature or status of these actions, and fail to mention important differences between U.S. and Canadian securities law--most notably the unavailability of the fraud-on-the-market-theory to Canadian plaintiffs. This Court should not grant defendants' request to avoid application of the securities laws to persons executing trades in Canada, given that Second Circuit standards for extending those laws to foreign investors in this case are satisfied.").)

"Since the Securities Exchange Act is silent as to its extraterritorial application, courts have developed two tests for determining the subject matter jurisdiction over foreign transactions." *Nathan Gordon Trust v. Northgate Exploration, Ltd.*, 148 F.R.D. 105, 108 (S.D.N.Y.1993). "Under the 'conduct' test, a federal court has subject matter jurisdiction if the defendant's conduct in the United States was more than merely preparatory to the fraud, and particular acts or culpable failures to act within the United States directly caused losses to foreign investors abroad. A federal court also has jurisdiction under the 'effects' test where illegal activity abroad causes a 'substantial effect' within the United States." *Id.* (quoting *Alfadda v. Fenn*, 935 F.2d 475, 478 (2d Cir.1991)).

*8 Defendants activities in the United States satisfy the test for subject matter jurisdiction. Among other things, OPTrust alleges that "defendants were consummating risky vendor financing deals in an effort to boost reported 'revenues' throughout the Class Period." (Compl. ¶ 64, at 26.) According to OPTrust, Defendants were extending vendor financing to "numerous U.S. customers that defendants knew to be uncreditworthy, so as to artificially inflate the Company's revenues." (Pl. Reply at 9); *see In re Gaming Lottery Sec. Litig.*, 58 F.Supp.2d 62, 73-75 (S.D.N.Y.1999) ("Subject matter jurisdiction is thus supported by substantial fraudulent activity in the United States directly causing harm abroad, the manner in which the same fraudulent scheme allegedly straddled both sides of the border, and the degree of economic activity connecting [defendant] to the United States."). The Court also notes, in finding subject matter jurisdiction, that "it is well established that a court can certify a class while reserving the right to shape the class more precisely to fit the issues of the case as those emerge during the litigation." *Langner v. Brown*, 95 Civ.1981, 1996 WL 709757, at *4 (S.D.N.Y. Dec.10, 1996).

IV. Conclusion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For the reasons stated herein, the Court grants OPTrust's motion to certify the class.

Not Reported in F.Supp.2d, 2003 WL 22077464 (S.D.N.Y.)

**Motions, Pleadings and Filings** (Back to top)

- 2004 WL 2973931 (Trial Motion, Memorandum and Affidavit) Nortel's Memorandum of Law in Opposition to Class Plaintiffs' Application for an Order to Show Cause (Jan. 15, 2004)
- 2003 WL 23671561 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Opposition to Lead Plaintiff's Motion for Class Certification (May. 30, 2003)
- 2003 WL 23671559 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Lead Plaintiff's Motion for Class Certification (Mar. 21, 2003)
- 2002 WL 32595571 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Nortel Shareholder and Jds Uniphase Shareholder Complaints (Sep. 30, 2002)
- 2002 WL 32595569 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Joint Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Nortel Shareholder and JDS Uniphase Shareholder Complaints (Sep. 17, 2002)
- 2002 WL 32595570 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Dismiss the Nortel Shareholder and JDS Uniphase Shareholder Complaints (Aug. 16, 2002)
- 2002 WL 32595566 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Nortel Shareholder and JDS Uniphase Shareholder Complaints (Jul. 05, 2002)
- 2002 WL 32595557 (Trial Motion, Memorandum and Affidavit) Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Consolidated Amended Class Action Complaint (Jun. 03, 2002)
- 2002 WL 32595564 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Dismiss the Nortel Shareholder and JDS Uniphase Shareholder Complaints (Apr. 01, 2002)
- 2002 WL 32768665 (Trial Pleading) Motion and Incorporated Memorandum for Withdrawal as Attorney of Record (Mar. 18, 2002)
- 2002 WL 32595550 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Fiducie Desjardins Inc.'s Motion for Appointment of Lead Plaintiff and Lead Counsel Pursuant to Section 21D of the Securities and Exchange Act of 1934 and for Consolidation of the Actions Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure (Feb. 14, 2002)
- 2001 WL 34611498 (Trial Motion, Memorandum and Affidavit) The JDSU Investors Group's Memorandum of Law in Opposition to the Nortel Investors Group'S Motion for Appointment of Lead Plaintiffs and Lead Counsel (May. 04, 2001)
- 2001 WL 34611496 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of the Nortel Investors Group for Appointment of Lead Plaintiff and Approval of the Proposed Lead Plaintiff's Selection of Lead Counsel (Apr. 17, 2001)
- 1:01cv01855 (Docket) (Mar. 02, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.