UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEON D. BOROCHOFF, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>GLAXOSMITHKLINE PLC, DR. JEAN-PIERRE GARNIER, and JULIAN HESLOP,<br><br>                Defendants. | **FILED ELECTRONICALLY**<br><br>07 Civ. 5574 (LLS) |

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS
OF THE GERMAN INVESTORS GROUP AND THE UK GROUP FOR
(1) APPOINTMENT AS LEAD PLAINTIFFS; AND
(2) APPROVAL OF LEAD PLAINTIFFS' CHOICE OF LEAD COUNSEL**

Plaintiff The City of Tallahassee Pension Plan ("Tallahassee") submits this memorandum in opposition to motions filed by foreign investors in GlaxoSmithKline PLC securities ("GSK" or the "Company") for appointment as lead plaintiffs.

## I.   INTRODUCTION

Where multiple proposed class members seek to become lead plaintiff, the Court must determine which movant is most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). The lead plaintiff motion of Tallahassee is the only motion made in this action by a U.S. institutional investor that purchased securities of GSK on a United States exchange. The other movants are unrelated groups of foreign investors that purchased GSK securities on foreign exchanges. For this reason alone, Tallahassee should be appointed lead plaintiff and the motions by the unrelated groups of foreign investors should be denied.[1]

Presently pending before this Court are three motions for appointment as lead plaintiff and for approval of lead plaintiff's choice of lead counsel in this action. The movants are 1) Tallahassee, which is responsible for the management of pension assets of approximately $1 billion for approximately 3,600 of the City of Tallahassee's current and retired employees; 2) a group of four unrelated German institutional investors (the "German Investors Group"); and 3) two unrelated pension funds based in the United Kingdom (the "UK Group").[2]

---

[1] As discussed herein, courts in very similar situations have denied lead plaintiff motions of so-called "F cubed" plaintiffs. An F-cubed plaintiff is a foreign investor that purchased securities of a foreign company on a foreign securities exchange.

[2] The Members of the German Investors Group are Deka Investment GmbH ("Deka"), Metzler Investment GmbH ("Metzler"), Internationale Kapitalanlagegesellschaft mbH ("Inka"), and INDEXCHANGE Investment AG ("Indexchange"), and the members of the UK Group are the Avon Pension Fund, administered by the Bath & North East Somerset Counsel and North Yorkshire County Council, Administering Authority for the North Yorkshire Pension Fund.

Tallahassee is the only U.S. investor that traded in GSK securities on a United States exchange that has moved for appointment as lead plaintiff. As such, Tallahassee is positioned to represent the interests of investors in GSK and is not subject to unique defenses that will be directed at both the German Investors Group and UK Group.

Moreover, although both the German Investors Group and the UK Group claim to have suffered millions in losses in GSK securities during the class period alleged in the complaint, neither group has provided the necessary trading information to assess their losses. Indeed, Tallahassee has requested this information but, to date, has not received additional trading data.[3]

In addition, the German Investors Group and the UK Group appear to be groups of investors that are unrelated and have no prior relationship. The certifications submitted by each member of these groups do not even indicate that the members of each group are aware of the joint motion. This type of structure has been disfavored by courts in this district.

Further, the members of the German Investors Group are inadequate because certain members appear to be investment advisors that have failed to set forth the basis for their authority to seek appointment as lead plaintiff, and at least one member of this group, Metzler, should not be appointed because to do so would violate the restrictions on professional plaintiffs set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Accordingly, the motions of the German Investors Group and the UK Group for appointment of lead plaintiff and lead counsel should be denied, and this Court should appoint

---

[3] Counsel for Tallahassee requested that counsel for the German Investors Group explain how the group's losses were calculated and whether any other funds controlled or managed by the members of the group purchased GSK securities during the Class Period. *See* Letter from Frederic S. Fox to Counsel for the German Investors Group, dated August 15, 2007, ¶¶ 3, 5, Exhibit A to the Declaration of Jeffrey P. Campisi, dated August 27, 2007 (hereinafter the "Campisi Decl."). In addition, counsel for Tallahassee asked counsel for both the German Investors Group and the UK Group whether their clients purchased any options in GSK securities during the Class Period. *Id.* ¶9; Letter from Frederic S. Fox to Counsel for the UK Group, dated August 15, 2007, ¶5, Exhibit B to the Declaration of Jeffrey P. Campisi, dated August 27, 2007. However, as of the date of this filing, counsel for Tallahassee has not received a response to these questions.

Tallahasee as a lead plaintiff and should approve its selection of counsel, Kaplan Fox & Kilsheimer LLP, as lead counsel.

## II. ARGUMENT

### A. The German Investors Group and the UK Group Are Subject To a Unique Defense Regarding Subject Matter Jurisdiction

Several courts have denied motions for lead plaintiff where, if appointed, the movant would be subject to a unique defense that the Court lacks subject matter jurisdiction. Both the German Investors Group and the UK Group are subject to this defense. It is a near certainty that counsel for GSK and the other defendants will move to dismiss the claims of the German Investors Group and the UK Group on grounds that this Court does not have subject matter jurisdiction over the claims of foreign purchases of a foreign issuers securities on a foreign exchange. Based on this argument, Courts have refused to appoint foreign investors as lead plaintiff regardless of the losses suffered by such investor. *See, e.g., In re: Royal Dutch/Shell Transport Sec. Litig.*, Slip Opinion, (04cv374) (D. N.J. June 30, 2004) (denying motion for appointment of lead plaintiff because movant, among other things, would be "required to devote a large portion of its time and efforts to prove it is not subject to the unique defense of lack of subject matter jurisdiction.") (Slip Op. attached to Campisi Decl, Ex. C); *In re Ahold N.V. Sec. and ERISA Litig.*, 219 F.R.D. 343, 353 (D. Md. 2003) (finding presumption of most adequate lead plaintiff was rebutted and denying lead plaintiff motion where Court found possible absence of subject matter jurisdiction over movant's claims).

In *Royal Dutch*, securities class actions were filed after Royal Dutch, a Netherlands corporation, and Shell Transport, a British corporation, disclosed that previously reported proven oil and gas reserves had been overstated. KBC Asset Management NV ("KBC"), a Belgian investor that purchased Royal Dutch/Shell stock on a foreign exchange, was found by the court

to have the largest financial interest and was the presumptive lead plaintiff. Slip Op. at 29, 32. However, the Court found that the presumption was rebutted, stating the following:

> The pending inquiry, however, is whether potential subject matter jurisdiction defenses will be asserted and, if asserted, whether those defenses will present a material distraction to KBC-AM. .... [KBC-AM] would be required to devote a large portion of its time and efforts to prove it is not subject to the unique defense of lack of subject matter jurisdiction.

Slip Op. at 35-66 (footnote omitted).[4]

The Court thus denied the lead plaintiff motion of KBC and appointed a U.S. investor whose financial interest was lower than KBC's because the U.S. investor was not subject to the unique defense.

Similarly, in *Ahold*, the Court rejected the lead plaintiff motions of foreign investors on grounds that these investors were subject to a unique defense. *See In re Ahold*, 219 F.R.D. at 353. Like here, the Court in *Ahold* was presented with three competing motions for lead plaintiff. All three motions sought appointment of a group of investors as lead plaintiffs. Two of the three groups were comprised of one foreign investor and one U.S. investor. The third group was only comprised of U.S. investors. Although the Court presumed that the proposed lead plaintiff groups that included foreign investors had a greater financial interest, it appointed the U.S. investor group on grounds that the foreign investors were subject to a subject matter jurisdiction defense.

Because of this unique defense, the German Investors Group and the UK Group are atypical and inadequate to serve as lead plaintiffs and their respective motions should be denied.[5]

---

[4] The German Investors Group, citing a string of cases, asserts that foreign investors have often been appointed to serve as lead plaintiff in PSLRA actions. *See* German Investors Group Brief at 7-8, fn. 3. However, each of these cases is factually distinguishable because, unlike here, none of these cases involved F-cubed plaintiffs.

[5] Moreover, the German Investors Group may be subject to additional unique defenses. *See In re Vivendi*
Footnote is continued on the next page

### B. Both The German Investors Group and the UK Group Have Failed to Provide Adequate Information to Support Their Claimed Financial Interests

As noted above, the applications of both the German Investors Group and the UK Group fail to include adequate information that would allow this Court to determine their respective financial interests. For example, the German Investors Group has failed to explain how its members calculated losses, including (i) whether and when any GSK securities were sold after the Class Period and the price at which such sales occurred; (ii) the average share price used to calculate the value of any retained shares; and (iii) the exchange rate used. *See* Campisi Dec., Ex. A., ¶3. In addition, both the German Investors Group and the UK Group fail to disclose whether any of their respective members purchased or sold any GSK securities, including options, during the Class Period, other than GSK ordinary shares. *See* Campisi Decl., Ex. A, ¶9; Ex. B, ¶5.

These deficiencies raise serious doubts about the claimed financial interests of both the German Investors Group and the UK Group and, on this basis alone, their motions should be denied.[6]

### C. Neither the German Investors Group nor the UK Group Have Adequately Demonstrated Standing or Authority to Move for Appointment as Lead Plaintiff.

As noted above, certain members of the German Investors Group fail to state whether each has the authority and standing to bring this motion on behalf of the funds that each appear to control or manage. With respect to Inka, Deka and Metzler, the certifications submitted by these members do not indicate the authority of the respective signatories to move for lead plaintiff on behalf of the respective movants. Also, it is unclear whether these movants were

---

*Universal, S.A.*, 242 F.R.D. 76, 105 (S.D.N.Y. 2007).

[6] *See e.g. In re Williams Sec. Litig.*, 02-CV-72-H(M), Slip Op. (N.D. Ok. July 8, 2002) (denying lead plaintiff motion where movant "failed to provide sufficient information for the Court to analyze the basis for its claimed financial interest")(Slip Op. attached to Campisi Decl, Ex. D); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d
Footnote is continued on the next page

5

acting as investment advisors in connection with their respective purchases of GSK securities. Without evidence of authority, courts have rejected lead plaintiff motions brought by investment managers. *See e.g. In re eSpeed, Inc. Sec. Litig.*, No. 05 Civ. 2091 (SAS), 2005 WL 1653933, at *1 (S.D.N.Y. July 13, 2005) ("In order for an investment advisor to attain standing on behalf of investors[,] the transactions in question must have been executed as if by a single person. Moreover, the advisor must be the attorney-in-fact for his clients, and he must be granted both unrestricted decision-making authority and the specific right to recover on behalf of his clients.") (Citations omitted)). Similarly, the certifications submitted by members of the UK Group do not indicate whether the respective signatories had authority to move for lead plaintiff. Counsel for Tallahassee has requested the information noted above, but as of the date of this filing, it has not been provided. *See* Campisi Decl. Ex. A, ¶4,7; Ex. B, ¶3.

Because the submissions to this court fail to submit evidence demonstrating the authority of both certain members of the German Investors Group and the UK Group, each is inadequate to serve as lead plaintiff in this case.

### D. The Court Should Not Appoint a Group of Unrelated Investors as Lead Plaintiffs

When groups of unrelated investors like the German Investors Group and the UK Group serve as lead plaintiffs, there is a significant risk that they will be poorly positioned to supervise the work of counsel, one of the express purposes of the PSLRA. *See e.g., In re Doral Financial Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 401-02 (S.D.N.Y. 2006) ("[B]y allowing attorneys to designate otherwise unrelated plaintiffs as a purported 'group,' and by allowing unrelated groups to aggregate investments in an effort to generate the 'largest financial interest,' a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and

---

286, 295 (E.D.N.Y. 1998) (denying motion of lead plaintiff movant who claimed the largest financial interest where
Footnote is continued on the next page

thereby gain control of the litigation"). Indeed, courts in this district have repeatedly denied lead plaintiff status to manufactured groups. *See, e.g., In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005).

The members of the respective groups appear to lack any preexisting investment or other relationship and there is no evidence that they will act or make decisions collectively or monitor the work of counsel as envisioned by the PSLRA. Courts have routinely refused to appoint amalgamations of unrelated individuals as lead plaintiffs for these reasons. *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (rejecting a group as lead plaintiff because it had "no independent existence and its composite members [had] no prior relationship"); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (holding that allowing "lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation," the opposite of Congress's intent in enacting the PSLRA).

Nothing in the record here suggests that the German Investors Group and the UK Group are anything but aggregations of disparate and unrelated plaintiffs, cobbled together by counsel solely for the purpose of being appointed lead plaintiff. Neither group has demonstrated that it can act collectively to make decisions and protect the interests of the Class. Thus, the Court should refuse to appoint either group as lead plaintiff for this reason.

### E. Metzler's Appointment Would Violate The PSLRA's Rule Against Professional Plaintiffs

The PSLRA states, in part:

(vi) Restrictions on professional plaintiffs.-Except as the court may otherwise permit consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in

---

he did not present facts to support his assertion).

no more than 5 securities class actions brought as plaintiff class action pursuant to the Federal Rules of Civil Procedure during any 3-year period.

15 U.S.C.§74u-4(a)(3)(B)(vi).

The plain language of the statute imposes a presumptive bar against a person or entity being appointed as a lead plaintiff more than five times in any three year period (the "5/3 Rule"). *Id.* As noted in its certification, Metzler (a member of the German Investors Group) has been appointed to serve as a representative party in six securities class actions during the past three years prior to the date of its certification in this case. If appointed here, Metzler would be serving as lead plaintiff in a seventh securities class action.

It is anticipated that Metzler will argue that the PSLRA expresses a preference for institutional investors to be appointed lead plaintiff and the statute's 5/3 Rule does not apply to institutional investors. The statute however, contains no flat exemption for institutional investors. Metzler has presented this Court with no reason why the presumptive bar against it serving in a seventh lead plaintiff position should not apply here.

### III.   CONCLUSION

For the above reasons and for the reasons set forth in Tallahassee's memorandum of law in support of its motion for appointment as lead plaintiff and for approval of its choice of lead counsel dated July 10, 2007, Tallahassee respectfully requests that the Court: (1) appoint Tallahassee as the Lead Plaintiff in the above-captioned action; (2) approve its choice of Lead Counsel; and (3) deny all other motions.

DATED: August 27, 2007

                                            Respectfully submitted,

                                            KAPLAN FOX & KILSHEIMER LLP

                                            By: ____s/ Frederic S. Fox_____
                                                   Frederic S. Fox

Joel B. Strauss
Donald R. Hall
Hae Sung Ham
Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Attorneys for Lead Plaintiff Movant the City of Tallahassee Pension Plan*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on August 27, 2007, I caused to be electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will electronically send notification of such filing to the registered participants and paper copies will be sent via first-class mail postage pre-paid to those indicated as non-registered participants on August 27, 2007.

               /s/  Jeffrey P. Campisi
                 Jeffrey P. Campisi

August 27, 2007