UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEON D. BOROCHOFF, on behalf of himself and
all others similarly situated,

                Plaintiff,

     v.

GLAXOSMITHKLINE PLC, DR. JEAN-PIERRE
GARNIER, and JULIAN HESLOP,

                Defendants.

---

**FILED ELECTRONICALLY**

07 Civ. 5574 (LLS)

---

**REPLY MEMORANDUM OF LAW TO THE GERMAN INVESTORS' GROUP AND
THE UK GROUP'S OPPOSITION TO THE MOTION OF THE CITY OF
TALLAHASSEE PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL**

The City of Tallahassee Pension Plan ("Tallahassee") submits this reply memorandum of law to the opposition briefs filed by the foreign investor movants.

## I.    INTRODUCTION

Tallahassee is the only movant with no demonstrable questions regarding its adequacy for appointment as lead plaintiff in this litigation.   Unlike the competing lead plaintiff movants, Tallahassee is not subject to the unique defense of lack of subject matter jurisdiction.  The other movants – a group of four unrelated German institutional investors (the "German Investors Group") and two unrelated pension funds based in the United Kingdom (the "UK Group") – are foreign investors that purchased GlaxoSmithKline PLC ("GSK" or the "Company") securities on a foreign exchange.  Courts have found such lead plaintiff movants to be inadequate. *See* Tallahassee's Opp. Memo. of Law, dated August 27, 2007, at 3-4.[1]

Recognizing the fact that Tallahassee is the only movant not subject to attack on grounds of lack of subject matter jurisdiction, the German Investors Group attempts to cast doubt on Tallahassee's adequacy by questioning its losses and transactions.  In particular, the German Investors Group asserts that Tallahassee is inadequate because it is a net-seller.  However, as set forth herein, regardless of the method used to calculate losses for lead plaintiff purposes, Tallahassee has suffered losses in its transactions in GSK securities during the Class Period. Nothing about Tallahassee's transactions or losses taints Tallahassee's adequacy as a lead plaintiff.

---

[1] As discussed more fully in Tallahassee's opposition brief, other factors raise doubt on the foreign investors' adequacy to serve as a lead plaintiff:  (1) neither the German Investors Group or the UK Group has provided this Court with the necessary trading information to assess their losses (Tallahassee Opp. Memo. of Law, at 5); 2) the members of both groups appear to be unrelated and have no prior relationship (*Id.* 5-6); 3) the members of the German Investors Group, as investment advisors, have failed to set forth the basis for their authority to seek appointment as lead plaintiff (*Id.* 6-7); and (4) the appointment of at least one member of the German Investors Group, Metzler Investment GmbH, would violate the restrictions on professional plaintiffs set forth in the PSLRA. *Id.* 7-8.

Accordingly, the motions of the German Investors Group and the UK Group for appointment of lead plaintiff and lead counsel should be denied, and this Court should appoint Tallahassee as lead plaintiff and should approve its selection of lead counsel.

## II.    ARGUMENT

### A.    Tallahassee Has Losses in GSK Securities Under FIFO, LIFO and on a Net-Net Basis.

Courts customarily employ the First-In First-Out method ("FIFO") when evaluating the losses of lead plaintiff movants. *See, e.g. In re Veeco Instruments Inc. Sec. Litig.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (finding that FIFO is the "appropriate methodology to apply in matching purchases and sales for the purpose of considering the financial stake of a movant for lead plaintiff status, just as it is the well-settled methodology for computing losses on securities for tax purposes.") (citations omitted); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, No. C01-20418 JW, 2004 U.S. Dist. LEXIS 27008, at *11 (N.D. Cal. May 27, 2004) (applying FIFO to calculate movants' financial interest). Other methodologies utilized include Last-In-First-Out ("LIFO") and Net-Net, a method through which a movant's class period purchases are matched with class period sales. As noted above, under all of these methodologies, Tallahassee has a loss from its transactions in GSK securities during the Class Period. Using the FIFO method, Tallahassee suffered losses of $104,990.18.[2] On a "Net-Net" calculation, Tallahassee suffered a net loss of $18,409.68 and, on a LIFO basis, Tallahassee suffered losses of $78,908.01.[3]

---

[2] *See* Declaration of Jeffrey P. Campisi in Support of the Motion of Tallahassee for Appointment as Lead Plaintiff, dated August 10, 2007, Exhibit. B.

[3] *See* Third Declaration of Jeffrey P. Campisi in Support of the Reply Memorandum of Law to the German Investors' Group and the UK Group's Opposition to the Motion of the City of Tallahassee Pension Plan for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Choice of Lead Counsel, dated September 7, 2007, Exhibits A and B.

The German Investors Group, relying principally on this Court's opinion in *Capone v. MBIA, Inc.*, 05CIV.3514 (LLS), asserts that Tallahassee is inadequate because it is a net seller of GSK securities. *See* The German Investors Group Memo. at 5. Although it is true that in *MBIA*, this court disqualified a lead plaintiff movant that happened to be a net seller, there is a significant difference between Tallahassee and the disqualified lead plaintiff in *MBIA*. The lead plaintiff movant in *MBIA* could not show that it had suffered any losses under a Net-Net calculation. In *MBIA*, under the Net-Net approach, the lead plaintiff movant had a gain of $624,006. Here, Tallahassee has suffered a loss under the Net-Net approach.

Similarly, in the other cases cited by the German Investors Group, the courts were concerned about net sellers that had a *net gain* on transactions during the class period. *See Capone v. R&G Fin. Corp.*, 05 Civ. 4186 (JES), Transcript attached as Exhibit B to the German Investors Group Memo., at 6:21-25 (noting that purported net seller, the West Virginia Investment Management Board, received $366,000 more from sales of R&G stock than it expended on its purchases of the stock); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945-46 (N.D. Ill. 2001) ("PACERS' Class Period sales at inflated prices caused it to derive unwitting benefits rather than true losses from the alleged securities fraud – so much so . . . PACERS derived a *net gain* of almost $300,000 (rather than any net loss at all) from its purchases and sales during the Class Period.") (Emphasis in original); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp 2d. 993, 996-97 (N.D. Cal. 1999) (where net seller "had net receipts of $681,298 for the Class Period.").[4]

---

[4] The German Investors Group also cites *In re Mills Corp. Sec. Litig.*, No. Civ.A 1:06-77 (GEL), 2006 WL 2035391 (E.D. Va. May, 30 2006), which relies on *Comdisco* and *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D 372, 378 (E.D. Va. 2003), both of which denied lead plaintiff motions of net sellers who had a net gain. However, the court in *Mills* did not deny the net seller's motion because it was a net seller. Rather, the court rejected the net seller's claimed losses under FIFO, which was $5.5 million, and instead considered the net seller's Net-Net losses, which were $3.6 million. After doing so, the court declined to appoint the net seller because it did not have the largest financial interest. *See In re Mills*, 2006 WL 2035391, at *3.

Tallahassee, although it sold more shares than it purchased during the Class Period, suffered a loss on a Net-Net basis. Moreover, Tallahassee can demonstrate a loss under both FIFO and LIFO. Tallahassee clearly qualifies as a lead plaintiff, and its financial interest in this litigation is evident.

**B.      Tallahassee is the Only Movant without Disqualifying Infirmities and Should Be Appointed Lead Plaintiff.**

As set forth above and in its prior submissions to the Court, Tallahassee is the only movant not subject to a defense of lack of subject matter jurisdiction.[5] Tallahassee is a United States based institutional investor that is responsible for the management of pension assets of approximately $1 billion for approximately 3,600 of current and retired employees of the City of Tallahassee and is fully capable of overseeing and directing this litigation in the best interest of the proposed class.[6] Moreover, Tallahassee has selected Kaplan Fox & Kilsheimer LLP, which has extensive experience in securities class actions, as its counsel.[7]

---

[5] Contrary to the UK Group's characterization of this argument (UK Group Memo. at 4), Tallahassee does not assert that the Court lacks subject matter jurisdiction over foreign investors of GSK securities on the foreign exchange. It only points out what courts have already recognized. Where a court is faced with competing lead plaintiff motions and one movant is subject to a unique defense for lack of subject matter jurisdiction, while the other is not, it is prudent and in the best interest of the proposed class to appoint the movant that is not subject to a unique defense. *See In re: Royal Dutch/Shell Transport Sec. Litig.*, Slip Opinion at 35-36, (04cv374) (D. N.J. June 30, 2004) (Slip Op. attached to the Declaration of Jeffrey P. Campisi in Support of Tallahassee's Opposition Brief, dated August 27, 2007, Ex. C); *In re Ahold N.V. Sec. and ERISA Litig.*, 219 F.R.D. 343, 353 (D. Md. 2003).

[6] The German Investors Group argue that transactions over-the-counter ("OTC") could lead to arguments that GSK did not trade on an efficient market. This is a red herring. None of the movants dispute that GSK securities traded on efficient markets and that is the relevant question at class certification. Moreover, Tallahassee, as the only U.S. resident, is best positioned to represent the interests of purchasers of GSK securities, whether such transactions occurred on the NYSE, the London Exchange or on the OTC.

[7] Assuming the Court was to consider granting either the German Investors Group or the UK Group's motion, the Court should consider appointing Tallahassee as a co-lead plaintiff in order to ensure that at least one lead plaintiff is immune from attack on grounds that the court does not have subject matter jurisdiction over the claims. *See* Stuart M. Grant and Diane Zilka, THE ROLE OF FOREIGN INVESTORS IN FEDERAL SECURITIES CLASS ACTIONS, 1442 PLI/Corp 91, 132-33 (September - October, 2004) ("[E]ven when it appears that the securities at issue were largely sold in foreign securities markets, a foreign investor might consider joining as a plaintiff a United States citizen who purchased the subject securities overseas, as the court would likely have little doubt that it can hear claims of fraud impacting United States citizens.").

4

## III.    CONCLUSION

For the above reasons and for the reasons set forth in Tallahassee's previously filed memoranda of law, Tallahassee respectfully requests that the Court: (1) appoint Tallahassee as the Lead Plaintiff in this action; (2) approve its choice of Lead Counsel; and (3) deny all other motions.

DATED: September 7, 2007

Respectfully submitted,

KAPLAN FOX & KILSHEIMER LLP

By:    s/ Frederic S. Fox
    Frederic S. Fox
    Joel B. Strauss
    Donald R. Hall
    Hae Sung Ham
    Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Attorneys for Lead Plaintiff Movant the City of Tallahassee Pension Plan*

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 7, 2007, I caused to be electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will electronically send notification of such filing to the registered participants and paper copies will be sent via first-class mail postage pre-paid to those indicated as non-registered participants on September 7, 2007.

/s/     Jeffrey P. Campisi
Jeffrey P. Campisi

September 7, 2007

6