UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
LEON D. BOROCHOFF, Individually and On
Behalf of All Others Similarly
Situated,

          Plaintiff,          07 Civ. 5574 (LLS)

     vs.               OPINION and
                        ORDER OF APPOINTMENT

GLAXOSMITHKLINE PLC, DR. JEAN-PIERRE
GARNIER, and JULIAN HESLOP,

          Defendants.
------------------------------------x

     This motion involves competing claims for appointment as lead plaintiff and lead counsel in a securities fraud class action against Glaxosmithkline PLC ("GSK", a corporation headquartered in the United Kingdom), its Chief Executive Officer, and its Chief Financial Officer. The complaint alleges that GSK made "numerous positive statements regarding Avandia, GSK's popular diabetes drug," but never disclosed that it could increase the risk of a user's heart attack. Cmplt. ¶ 3. By separate motions, (1) Deka Investment GmbH, Metzler Investment GmbH, Internationale Kapitalanlagegesellschaft mbH, and INDEXCHANGE Investment AG (a German subsidiary of Barclay's Bank) (collectively the "German Institutional Investor Group"), (2) Avon Pension Fund administered by Bath & North East Somerset Council ("Avon") and North Yorkshire County Council

administering authority for the North Yorkshire Pension Fund ("North Yorkshire") (collectively the "U.K. Pension Funds"), and (3) the City of Tallahassee Pension Plan ("Tallahassee") seek appointment of themselves as lead plaintiff, and their respective counsel as lead counsel.

<u>Appointment of Lead Plaintiff</u>

The Private Securities Litigation Reform Act ("PLSRA") provides that the court shall appoint the "most adequate plaintiff" as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The most adequate plaintiff is the person or group of persons that—

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). Each of the three motions was made in response to a notice, satisfying the first requirement.

The German Institutional Investor Group, which suffered a loss of over $28 million, has the largest financial interest in the relief sought by the class. It otherwise satisfies the requirements of Fed. R. Civ. P. 23. Accordingly, it is entitled to the presumption that it is the most adequate plaintiff.

That presumption can be rebutted by proof that the Group "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

The most serious argument against the German Institutional Investor Group in this respect[1] is that all those who purchased in Germany may have to be excluded from the class, because any judgment in this action (whether favoring plaintiffs or defendants) may be refused enforcement by a German court. If this Court's judgment on the merits neither protects a prevailing defendant against relitigation in Germany, nor grants a prevailing German plaintiff an enforceable damage judgment, then for those litigants a class action is not "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Rather, it is a waste, and their presence in the class (with its associated problems of notice-giving in Germany) may inflict burdens on the administration of the action.

In In re Vivendi Universal, S.A., 242 F.R.D. 76 (S.D.N.Y. 2007), the court analyzed German procedural law to appraise

---

[1] Tallahassee argues that the anti-fraud provisions of the securities laws do not apply to purchases by foreigners of a foreign corporation's securities on a foreign exchange. Those laws do apply when the activities within the United States were not "merely preparatory" but "directly caused" the claimed losses. Itoba Ltd. v. LEP Group PLC, 54 F.3d 118, 122 (2d Cir. 1995). That seems to be the case here.

whether a foreign judgment would be recognized in Germany. In
that case, experts agreed "that there is no decision by a German
court as to whether a judgment in a U.S. class action would be
recognized" under the German procedures, which provide (Vivendi,
242 F.R.D. at 104):

> for the recognition of foreign judgments if five
> conditions are met:
>     (1) if the foreign court was competent for
> deciding on the claims based on the German provisions
> on jurisdiction, (2) if the defendant was properly
> served (in the legal relationships of the United
> States and Germany according to the Hague Service
> Convention) in a timely manner enabling defendant to
> defend itself properly, (3) if the judgment is not
> inconsistent with an earlier German or foreign
> judgment which would be itself recognised in Germany,
> (4) if the contents of the judgment do not infringe
> the German ordre public, i.e. the indispensable
> provisions of German law and (5) if reciprocity is
> guaranteed, i.e. if the foreign court would recognise
> a corresponding German judgment.

The Vivendi court found that although German notice
requirements could be satisfied by measures reasonably
calculated to give actual notice to class members of their
rights, it seemed that "a U.S. judgment would not be enforced
against a class member who did not in fact receive actual notice
despite plaintiffs' efforts to broadly disseminate notice."
Ibid. The court continued (ibid.):

> Leaving aside the question of whether the Hague
> Service Convention is the exclusive means for
> notifying the absent class members, can it be said
> that the use of a collective action is so contrary to
> German public policy that a U.S. class action judgment
> will not be recognized under any circumstance? In

this regard the Court notes that, in contrast to France and England, collective actions remain unknown in Germany.

On this point, the Vivendi court concluded (id. at 105):

> Taking the parties' expert affidavits as a whole, the Court is left with the distinct impression that the formalities of German law may well preclude the recognition of a judgment in the instant case. Indeed, plaintiffs' expert concludes only that "one cannot rule out a U.S. class action settlement or judgment ... will be recognized or enforced in German [sic]." This candid opinion is insufficient on its face and leads the Court to conclude that plaintiffs have not shown a probability that German courts will give res judicata effect to a judgment in this case.

Under the circumstances, the Vivendi Court elected (id. at 107) ". . . to proceed with caution and limit the class to foreign shareholders whose courts, in the unlikely event of successive litigations, are likely to give res judicata effect to any judgment herein", and excluded the German purchasers from the class.

In Bersch v. Drexel Firestone Inc., 519 F.2d 974, 996-97 (2d Cir. 1975), the Court of Appeals for the Second Circuit stated

> The management of a class action with many thousands of class members imposes tremendous burdens on overtaxed district courts, even when the class members are mostly in the United States and still more so when they are abroad. Also, while an American court need not abstain from entering judgment simply because of a possibility that a foreign court may not recognize or enforce it, the case stands differently when this is a near certainty. This point must be considered not simply in the halcyon context of a large recovery which plaintiff visualizes but in those of a judgment

for the defendants or a plaintiffs' judgment or a settlement deemed to be inadequate. As Judge Frankel stated in his order permitting the case to proceed as a class action:

> if defendants prevail against a class they are entitled to a victory no less broad than a defeat would have been.

Here the record contains uncontradicted affidavits that England, the Federal Republic of Germany, Switzerland, Italy, and France would not recognize a United States judgment in favor of the defendant as a bar to an action by their own citizens, even assuming that the citizens had in fact received notice that they would be bound unless they affirmatively opted out of the plaintiff class . . .

> . . . .

> We therefore direct that the district court eliminate from the class action all purchasers other than persons who were residents or citizens of the United States. (footnote omitted)

Those concerns led the court in In re Royal Ahold N.V. Securities and ERISA Litig., 219 F.R.D. 343, 352-53 (D. Md. 2003) to deny a foreign corporation appointment as lead plaintiff, stating that:

> Foreign courts might not recognize or enforce such a decision from an American court, which would allow foreign plaintiffs in the class to file suit against the defendant again in those foreign courts. This factor must be considered in determining whether a class action is the superior method of litigating a particular case, although it is not determinative. Cromer Finance Ltd. v. Berger, 205 F.R.D. 113, 134-135 (S.D.N.Y. 2001). A strong possibility or near certainty that a foreign court will not recognize a judgment in favor of the defendant as a bar to the action of its own citizens may be the basis for eliminating foreign purchasers from the class. Bersch, 519 F.2d at 996.

. . . .

In light of the above considerations —
particularly the possible absence of subject matter
jurisdiction over Union's claims[2] and the possibility
that foreign courts will not enforce a decision in
favor of Royal Ahold against foreign plaintiffs in the
class — the court finds that Union/Detroit General's
status as presumptive lead plaintiff is rebutted.

This is not the proper occasion to determine whether the
German Institutional Investor Group will be in the class. That
will come later, but prudence cautions that the arguments for
its exclusion are substantial[3], and in light of that risk it
would be improvident to appoint the German Institutional
Investor Group as lead plaintiff at this point.

That leaves as the presumptive most adequate plaintiff the
movant with the next largest financial interest, which is the
U.K. Pension Funds. However, North Yorkshire purchased 854,938
shares of GSK on the London Stock Exchange and sold 1,190,984
shares during the class period. See August 10, 2007 Affidavit
of David Rosenfeld, Ex. A. Thus, North Yorkshire is a net
seller and although it nevertheless may have sustained a small
loss (or, depending on the accounting method chosen, a gain) it
does not adequately represent the proposed class of purchasers.

---

[2] In Royal Ahold considerable fraudulent activity occurred
outside the United States.
[3] The Declaration of Professor Hess, who concedes that the
binding effect of a U.S. class action judgment is disputed in
German legal literature and undecided by a German court, does
not persuade me that the probabilities favor its acceptance.

-7-

Avon, however, is a net purchaser with a loss of $2.69 million. It meets the requirements of Rule 23. It is not subject to the same res judicata defense which disqualifies the German Institutional Investor Group. See Vivendi, 242 F.R.D. at 103: "English courts, when ultimately presented with the issue, are more likely than not to find that U.S. courts are competent to adjudicate with finality the claims of absent class members and, therefore, would recognize a judgment or settlement in this action."

Therefore, Avon is the most adequate plaintiff and shall serve as lead plaintiff.

## Appointment of Lead Counsel

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." Avon selected Coughlin Stoia Geller Rudman & Robbins LLP, a firm which is well qualified and has successfully served as lead counsel or co-lead counsel in numerous complex securities class actions. Accordingly, Coughlin Stoia Geller Rudman & Robbins LLP is appointed lead counsel.

## Conclusion

The U.K. Pension Funds' motion is granted to the extent that Avon shall serve as lead plaintiff and Coughlin Stoia Geller Rudman & Robbins LLP as lead counsel. The German Institutional Investor Group's and Tallahassee's motions are denied.

So ordered.

Dated: October 5, 2007
     New York, New York

                              _Louis L. Stanton_
                                Louis L. Stanton
                                  U.S.D.J.