**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *LEON D. BOROCHOFF*, on behalf of himself and all others similarly situated, | |
| Plaintiff, | No. 07 Civ. 5574 (LLS) |
| | ECF CASE |
| v. | |
| *GLAXOSMITHKLINE PLC, DR. JEAN-PIERRE GARNIER, and JULIAN HESLOP*, | |
| Defendants. | |

**INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR REARGUMENT AND RECONSIDERATION**
**OF THE COURT'S OCTOBER 5, 2007 ORDER**

GRANT & EISENHOFER P.A.    MOTLEY RICE LLC
Jay W. Eisenhofer (JE-5503)    Joseph F. Rice
Geoffrey C. Jarvis (GJ-7040)    Ann K. Ritter
485 Lexington Avenue    P. O. Box 1792 (29465)
29th Floor    28 Bridgeside Blvd.
New York, NY  10017    Mount Pleasant, SC 29465
Tel:    (646) 722-8500    Tel:    (843) 216-9000
Fax:    (646) 722-8501    Fax:    (843) 216-9450

*Counsel for The Institutional Investor Group and Proposed Lead Counsel for the Class*

Dated:  October 22, 2007

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

PROCEDURAL BACKGROUND..............................................................................3

ARGUMENT .............................................................................................................4

I.      THE INSTITUTIONAL INVESTOR GROUP'S STATUS AS PRESUMPTIVE LEAD
        PLAINTIFF IS NOT REBUTTED JUST BECAUSE A FOREIGN COURT MIGHT
        POSSIBLY REFUSE TO ENFORCE A JUDGMENT AS TO ABSENT CLASS
        MEMBERS WHO ARE NOT EVEN BEFORE THIS COURT ........................................4

        A.      LEGAL STANDARD ................................................................ 4

        B.      THE COURT'S REASONING WOULD PRECLUDE GERMAN LEAD PLAINTIFFS, EVEN IF
                PURCHASING SHARES IN AN AMERICAN COMPANY ON AN AMERICAN EXCHANGE..
                ........................................................................................ 5

        C.      SPECIFIC PROOF IS REQUIRED TO REBUT THE PRESUMPTION OF ADEQUACY, NOT
                MERE SPECULATION THAT A FOREIGN COURT MAY ACT ....................................... 6

        D.      THE INSTITUTIONAL INVESTOR GROUP'S EFFORTS AS LEAD PLAINTIFF COULD
                NEVER BE UNDONE BY A GERMAN COURT BECAUSE THEY SUBMITTED TO THE
                JURISDICTION OF THIS COURT ................................................................. 8

        E.      THE POSSIBLE REACTION OF A GERMAN COURT IS NOT A DEFENSE THAT IS
                "UNIQUE" TO THE INSTITUTIONAL INVESTOR GROUP AND, IN ANY EVENT, WOULD
                NOT MEET THE CRITERIA FOR A "UNIQUE DEFENSE" IN THIS CIRCUIT ............... 10

        F.      VIVENDI IS A CLASS CERTIFICATION DECISION THAT IS NOT APPLICABLE TO A
                LEAD PLAINTIFF MOTION ..................................................................... 11

        G.      VIVENDI SHOULD NOT BE FOLLOWED BECAUSE IT IMPROPERLY REJECTED THE
                SECOND CIRCUIT'S "NEAR CERTAINTY" TEST...................................... 13

CONCLUSION....................................................................................16

## TABLE OF AUTHORITIES

*Baffa v. Donaldson, Lufkin & Jennrette Sec. Corp.,*
  222 F.3d 52 (2d Cir. 2000) .......................................................................................... 11

*Bersch v. Drexel Firestone, Inc.,*
  519 F.2d 974 (2d Cir. 1975) ............................................................................... 8, 12, 13

*Casper v. Cunard Line, Ltd.,*
  560 F. Supp. 240 (E.D. Pa. 1983) .............................................................................. 14

*In re Cavanaugh,*
  306 F.3d 726 (9th Cir. 2002) ......................................................................................... 6

*Comm'r v. Sunnen,*
  333 U.S. 591(1948) ......................................................................................................... 9

*Conway Inv. Club v. Corinthian Colls., Inc.,*
  No. 2:04-CV-05025 (C.D. Cal. Nov. 1, 2004) ........................................................... 5

*Cromer Fin. Ltd. v. Berger,*
  205 F.R.D. 113 (S.D.N.Y. 2001) ..................................................................... 10, 14, 15

*Frietsch v. Refco, Inc.,*
  No. 92 C 6844, 1994 WL 10014 (N.D. Ill. Jan. 13, 1994) ..................................... 14

*Gluck v. CellStar Corp.,*
  976 F. Supp. 542 (N.D. Tex. 1997). ............................................................................. 6

*HBP Assocs. v. Marsh,*
  893 F. Supp. 271 (S.D.N.Y. 1995) ............................................................................... 9

*In re Bausch & Lomb Inc. Sec. Litig.,*
  2007 U.S. Dist. LEXIS 50979 (S.D.N.Y. July 13, 2007) ....................................... 12

*In re Cable & Wireless, PLC, Sec. Litig.,*
  321 F. Supp. 2d 749 (E.D. Va. 2004) ................................................................... 10, 15

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) .......................................................................................... 6

*In re Crayfish Co. Sec. Litig.,*
  No. 00 Civ. 6766, 2002 WL 1268013 (S.D.N.Y. June 6, 2002) ............................... 4

*In re Cytyc Corp.,*
  No. Civ. A. 02-12399, 2005 WL 3801468 (D. Mass. Mar. 2, 2005) ........................ 6

*In re Dell Inc., Sec. Litig.*,
   No. A-06-CA-726-SS (W.D. Tex. Apr. 9, 2007) ........................................................ 5

*In re General Motors Sec. & Deriv. Litig.*,
   429 F. Supp. 2d 1368 (J.P.M.L. 2006) ................................................................... 5

*In re Initial Pub. Offerings Litig.*,
   471 F.3d 24 (2d Cir. 2006) ................................................................................... 15

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96-1262, 1998 U.S. Dist. LEXIS 1199 (S.D.N.Y. Feb. 6, 1998) ...................... 10

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005) ........................................................................ 5, 10

*In re Northwestern Corp. Sec. Litig.*,
   299 F. Supp. 2d 997 (D.S.D. 2004) ....................................................................... 4

*In re NTL, Inc. Sec. Litig.*,
   No. 02-3013, 2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) ...................................... 11

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   219 F.R.D. 343 (D. Md. 2004) .............................................................................. 10

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
   380 F. Supp. 2d 509 (D.N.J. 2005) ....................................................................... 14

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
   209 F.R.D. 353 (S.D.N.Y. 2002) .................................................................... 11, 14

*In re Vivendi Universal S.A., Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ..................................................................... *passim*

*Jordan v. Global Natural Res.*,
   102 F.R.D. 45 (S.D. Ohio 1984) .................................................................... 14, 15

*Mahmud v. Kaufmann*,
   496 F. Supp. 2d 266 (S.D.N.Y. 2007) ..................................................................... 4

*Malasky v. IAC/Interactive Corp.*,
   No. 04 Civ. 7447, 2005 WL 549548 (S.D.N.Y. Mar. 7, 2005) ................................. 4

*Mass. Laborers' Annuity Fund v. Encysive Pharm., Inc.*,
   No. 06-3022, slip op. at 10 (S.D. Tex. Mar. 20, 2007) ............................................ 9

*Mirco Investors, LLC v. Inspire Pharm., Inc.*,
   No. 1:06CV00201 (M.D.N.C. Mar. 1, 2006)................................................................ 5

*Olsen v. New York Cmty. Bancorp., Inc.*,
   233 F.R.D. 101 (E.D.N.Y. 2005) ................................................................................. 5

*South Ferry LP #2 v. Killinger*,
   No. CV04-1599C (W.D. Wash. Nov. 30, 2004)........................................................... 5

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) ..................................................................... 5, 9

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 2000) .............................................................................. 11

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*,
   182 F.R.D. 97 (S.D.N.Y. 1998) .................................................................................. 4

*Welmon v. Chicago Bridge & Iron Co. N.V.*,
   No. 06-CV-01283 (S.D.N.Y. May 11, 2006).............................................................. 5

## Federal Statues & Rules

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...................................................................................... 3, 6

Fed. R. Civ. P. 23 ............................................................................................................... 7

## PRELIMINARY STATEMENT

Proposed lead plaintiffs INDEXCHANGE Investment AG ("INDEXCHANGE"), Deka Investment GmbH ("Deka"), Metzler Investment GmbH ("Metzler"), and Internationale Kapitalanlagegesellschaft mbH ("INKA") (collectively referred to as the "Institutional Investor Group"), respectfully submit this memorandum of law in support of their motion for reconsideration of the Court's Order dated October 5, 2007 (the "Order"). The Order appointed Avon Pension Fund administered by Bath & North East Somerset Council ("Avon") as lead plaintiff in this securities fraud class action against Glaxosmithkline PLC ("Glaxo") and certain of its officers.[1] The Institutional Investor Group respectfully requests that the Court reconsider the Order, vacate the appointment of Avon as lead plaintiff, and appoint the Institutional Investor Group as lead plaintiff.

In the Order, the Court held that the Institutional Investor Group is presumptively the most adequate lead plaintiff under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") by virtue of asserting the largest loss among all lead plaintiff movants. Order at 2. The Court acknowledged that the Institutional Investor Group suffered a loss of over $28 million, a loss nearly $23 million greater than the losses of either of the competing movants. *Id*. Notwithstanding this fact, the Court then appointed Avon as lead plaintiff based on the Court's finding that the Institutional Investor Group was subject to "unique defenses." The Court ruled that because the Institutional Investor Group is comprised of German institutional investors "all those who purchased in Germany may have to be excluded from the class, because any judgment in this action (whether favoring plaintiffs or defendants) may be refused enforcement by a German court." Order at 3.

---

[1] Avon moved to be appointed lead plaintiff collectively with the North Yorkshire Pension Fund (collectively, the "U.K. Group"). The City of Tallahassee Pension Plan ("Tallahassee") also moved to be appointed lead plaintiff.

The Court should reconsider the Order since the unequivocal result of its decision is that no German individual or institution will ever, under any circumstances, be permitted to serve as a lead plaintiff, even where such individual or institution purchased stock in an American company on an American exchange.[2]  The Court's rationale, which is based solely on the national origin of the members of the Institutional Investor Group, is too speculative to negate the strong statutory presumption in favor of the Institutional Investor Group.  Moreover, the Court's purported concern is simply not relevant to a determination of lead plaintiff because the Institutional Investor Group has consented to this Court's jurisdiction and agreed to be bound by any judgment, and the possibility of German plaintiffs being denied recovery in Germany is the same regardless of who serves as lead plaintiff.  Any possible defense as to the preclusive effect of this Court's decision in a foreign jurisdiction is therefore not a defense "unique" to the Institutional Investor Group.

Finally, the Court relied on the inapposite case of *In re Vivendi Universal S.A., Sec. Litig.*, 242 F.R.D. 76 (S.D.N.Y. 2007).  The *Vivendi* decision dealt with class certification issues concerning absent class members.  The members of the Institutional Investor Group are not absent class members.  They are before the Court and, as their Declaration attests, will be bound by any judgment issued in this case.  *See* Jarvis Decl., Ex. A.[3]  Moreover, the Court should reconsider its reliance on *Vivendi*  because *Vivendi* improperly rejected the "near certainty" test that is well-established in this Circuit.

Accordingly, the PSLRA's presumption that the Institutional Investor Group is the most adequate plaintiff is not rebutted, and this Court should vacate its prior Order and appoint the

---

[2] While the stock purchases in this case are not limited to purchases in a U.S. company over a U.S. exchange, there is nothing in the Order that would allow a German entity to serve as lead plaintiff under any circumstances.

[3] The declaration of Geoffrey C. Jarvis was submitted with the Institutional investor group's motion to be appointed lead plaintiff on August 10, 2007.

2

Institutional Investor Group as lead plaintiff and approve its selection of Grant & Eisenhofer

P.A. and Motley Rice LLC as lead counsel for the Class.

## PROCEDURAL BACKGROUND

The process for selecting lead plaintiff began on June 11, 2007, when plaintiff Leon D.

Borochoff filed a complaint in this Court. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), on

August 10, 2007, the Institutional Investor Group, the U.K. Group, and Tallahassee filed separate

motions for appointment as lead plaintiff.

Recognizing that the Institutional Investor Group's losses dwarfed that of all other

movants, the U.K. Group and Tallahassee attacked the Institutional Investor Group's adequacy to

serve as lead plaintiff. Most significantly for purposes of this motion, the U.K. Group raised the

argument that the Institutional Investor Group members are not proper lead plaintiffs because

they are supposedly subject to a unique res judicata defense under Rule 23 pursuant to *Vivendi*.

U.K. Group Mem. Opp'n at 8. According to the U.K. Group, *Vivendi* supports the proposition

that the Institutional Investor Group, whose members are sophisticated German institutional

investors, will not be able to satisfy Rule 23's superiority requirement because a German court

would not give res judicata effect to a decision by this Court.[4] *Id.* In reliance on this argument,

the Court determined that the PSLRA presumption favoring the Institutional Investor Group was

rebutted. Order at 3-7. The Court then turned its attention to the U.K. Group, as the movant

with the next largest financial interest behind the Institutional Investor Group. The Court refused

to appoint the U.K. Group as such, and instead appointed only Avon as lead plaintiff. The Court

concluded that the other member of the U.K. Group, namely the North Yorkshire Pension Fund,

---

[4] Tallahassee merely cites *Vivendi* in a footnote and baldly states that the Institutional Investor Group "*may* be subject to additional unique defenses." Tallahassee Mem. Opp'n at 4, n.5 (emphasis added).

had sold more shares of Glaxo than it purchased during the class period and therefore "does not

adequately represent the proposed class of purchasers."  Order at 7.

## ARGUMENT

**I.    THE INSTITUTIONAL INVESTOR GROUP'S STATUS AS PRESUMPTIVE LEAD PLAINTIFF IS NOT REBUTTED JUST BECAUSE A FOREIGN COURT MIGHT POSSIBLY REFUSE TO ENFORCE A JUDGMENT AS TO ABSENT CLASS MEMBERS WHO ARE NOT EVEN BEFORE THIS COURT**

### A.    LEGAL STANDARD

A motion for reconsideration in this Court "is governed by Local Rule 6.3 and should be

granted only when the moving party demonstrates that the court overlooked controlling decisions

or factual matters that were put before it on the underlying motion . . . and which, had they been

considered, might have reasonably altered the result before the court."  *Mahmud v. Kaufmann*,

496 F. Supp. 2d 266, 270 (S.D.N.Y. 2007) (citations omitted).  Local Civil Rule 6.3, which

governs motions for reconsideration or reargument, "provides the Court with an opportunity to

correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the

applicable law or prevent manifest injustice." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping

Co., Ltd.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998) (citations omitted).  Moreover, courts have

granted motions for reconsideration to correct errors of law or fact in the context of competing

lead plaintiffs motions, like the motions at issue here.  *See, e.g., Malasky v. IAC/Interactive

Corp.*, No. 04 Civ. 7447, 2005 WL 549548, at *3 (S.D.N.Y. Mar. 7, 2005) (granting motion for

reconsideration of lead plaintiff order); *In re Northwestern Corp. Sec. Litig.*, 299 F. Supp. 2d 997

(D.S.D. 2004) (same); *In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766, 2002 WL 1268013, at *6

(S.D.N.Y. June 6, 2002) (same).  As set forth below, the Order is premised on errors of law and

fact and should be reconsidered and vacated.

4

**B.    THE COURT'S REASONING WOULD PRECLUDE GERMAN LEAD PLAINTIFFS, EVEN IF PURCHASING SHARES IN AN AMERICAN COMPANY ON AN AMERICAN EXCHANGE**

If the rationale provided in the Order is taken to its logical conclusion, the mere possibility that a German court *may* decide not to enforce a judgment by this Court is sufficient to prevent any German individual or institution from ever serving as lead plaintiff. This would be true even in situations where a German investor purchased shares in an American company over an American exchange. Contrary to this rationale, German plaintiffs are frequently appointed as lead plaintiff in American class action lawsuits. *See, e.g., In re Dell Inc., Sec. Litig.*, No. A-06-CA-726-SS (W.D. Tex. Apr. 9, 2007) (appointing German investor sole lead plaintiff); *Welmon v. Chicago Bridge & Iron Co. N.V.*, No. 06-CV-01283(JES) (S.D.N.Y. May 11, 2006) (appointing German investor co-lead plaintiff); *Mirco Investors, LLC v. Inspire Pharm., Inc.*, No. 1:06CV00201 (M.D.N.C. Mar. 1, 2006) (same); *South Ferry LP #2 v. Killinger*, No. CV04-1599C (W.D. Wash. Nov. 30, 2004) (same); *Conway Inv. Club v. Corinthian Colls., Inc.*, No. 2:04-CV-05025 (C.D. Cal. Nov. 1, 2004) (appointing German investor sole lead plaintiff); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) (appointing German investor co-lead plaintiff). The Order simply cannot be squared with this reality.

Indeed, members of the Institutional Investor Group themselves have experience as lead plaintiffs. *See, e.g., In re General Motors Sec. & Deriv. Litig.*, 429 F. Supp. 2d 1368, 1369 (J.P.M.L. 2006) (transferring actions from Southern District of New York to Eastern District of Michigan and noting that Deka served as co-lead plaintiff in the Southern District of New York); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151-152 (D. Del. 2005) (appointing investor group led by Metzler as lead plaintiff); *Olsen v. New York Cmty. Bancorp., Inc.*, 233 F.R.D. 101, 109 (E.D.N.Y. 2005) (appointing lead plaintiff group of Meltzer and an individual

investor); *In re Cytyc Corp.*, No. Civ. A. 02-12399, 2005 WL 3801468, at *1 (D. Mass. Mar. 2, 2005) (noting that Deka served as co-lead plaintiff).

### C.    SPECIFIC PROOF IS REQUIRED TO REBUT THE PRESUMPTION OF ADEQUACY, NOT MERE SPECULATION THAT A FOREIGN COURT MAY ACT

The drafters of the PSLRA crafted the statute's lead plaintiff provisions in order to appoint as lead plaintiff the movant with the largest financial interest in a class action under the federal securities law.  *See In re Cavanaugh*, 306 F.3d 726, 726 (9th Cir. 2002) (issuing writ of mandamus to district court for its failure to follow the "clear path" the PSLRA establishes for selecting a lead plaintiff and stating that the "'most capable' plaintiff - and hence the lead plaintiff - is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23").  By its plain language the PSLRA, requires "proof" to rebut a presumption of adequacy.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate []' job").  "Speculative assertions are insufficient" to demonstrate inadequacy as a lead plaintiff.  *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 547 (N.D. Tex. 1997).  In issuing a writ of mandamus to a district court for its refusal to follow the PSLRA's mandate for appointing a lead plaintiff, the Ninth Circuit stated, "[t]hat the [PSLRA's] presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient."  *Cavanaugh*, 306 F.3d at 729 n.2;  *see also id.* at 731-32 ("courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals").

Here, the Order acknowledges that the Institutional Investor Group "suffered a loss of over $28 million [and] has the largest financial interest in the relief sought by the class." Order at 2. The Order further acknowledges that the Institutional Investor Group "otherwise satisfies the requirements of Fed. R. Civ. P. 23 [and] [a]ccordingly, it is entitled to the presumption that it is the most adequate plaintiff." *Id*. Nevertheless, the Court improperly relied on unquestionably "speculative assertions" in concluding that the Institutional Investor Group should be denied lead plaintiff status. The Court concluded that "all those who purchased in Germany *may have to be excluded from the class*, because any judgment in this action (whether favoring plaintiffs or defendants) *may be refused enforcement* by a German court." Order at 3 (emphasis supplied). This is pure speculation that is insufficient to rebut the Institutional Investor Group's presumption of adequacy.

Indeed, the Court cites *no facts whatever* in support of its conclusion. To the contrary, the only fact in evidence on which the Court seems to rely is the Declaration of Professor Hess, submitted by the Institutional Investor Group, who opines that "it is likely that a United States securities class action settlement or judgment will have a negative preclusive effect in a German Court." The Court concludes that "[t]he Declaration of Professor Hess, who concedes that the binding effect of a U.S. class action judgment is disputed in German legal literature and undecided by a German court, *does not persuade me that the probabilities favor its acceptance*." Order at 7 n.3 (emphasis supplied). The Court may be unpersuaded by Professor Hess's Declaration, but there is absolutely no evidence on the other side of the scale to support the conclusion that a judgment here will not be recognized in a German court. The Court is essentially looking to an expert who has opined "X" and concluding that the opposite of "X" is probably true, based on no other facts. Even the passage from *Vivendi* that is quoted in the Order

implies that the parties in that case submitted competing "expert affidavits" which the court looked to "as a whole." Order at 5. Similarly, the Order cites *Bersch v. Drexel Firestone Inc.*, 519 F.2d 974, 996-997 (2d Cir. 1975), but in *Bersch* the court stated that "the record contains uncontraverted affidavits that England, the Federal Republic of Germany, Switzerland, Italy and France would not recognize a United States judgment in favor of the defendant as a bar to an action by their own citizens . . . ." *Id.* Conversely, the Court here had no such facts. This purely speculative assertion is insufficient to demonstrate inadequacy of a presumptive lead plaintiff.[5]

### D.    THE INSTITUTIONAL INVESTOR GROUP'S EFFORTS AS LEAD PLAINTIFF COULD NEVER BE UNDONE BY A GERMAN COURT BECAUSE THEY SUBMITTED TO THE JURISDICTION OF THIS COURT

The Court's justification for rejecting the statutory presumption in favor of the Institutional Investor Group is that "all those who purchased in Germany may have to be excluded from the class" if a German court refuses to give res judicata effect to a decision of this Court. Order at 3. The Court apparently is concerned that if the Institutional Investor Group is made lead plaintiff, a judgment on the merits of the action by this court may not grant the Institutional Investor Group "an enforceable damage judgment" and therefore the class action mechanism would not be "superior to other methods" of adjudication and would be a "waste." *Id.* This concern, however, is no concern at all because the Institutional Investor Group has consented to jurisdiction.

The Institutional Investor Group has consented to the jurisdiction of this Court and understands that it must abide by any decision rendered herein. *See* Institutional Investor Group

---

[5] In addition, there are no facts to support the Court's apparent presumption that the members of the Institutional Investor Group purchased their Glaxo shares in Germany. Order at 3 ("all those who purchased in Germany may have to be excluded from the class . . ."). To the contrary, the shares held by the Institutional Investor Group were purchased over the Paris or London exchanges and are listed in pounds in the documentation submitted to the Court. *See* Jarvis Decl., Exhibits. I, J and K.

Joint Decl. ¶ 16, Jarvis Decl., Ex. A (stating that all members of the Institutional Investor Group "understand that, as the Lead Plaintiff in this Action, each of us is subject to the jurisdiction and bound by all rulings of the Court, including rulings regarding any judgments"). A judgment on the merits, with the Institutional Investor Group serving as lead plaintiff, would never be a "waste" because lead plaintiff, the class, and the defendants would all be bound by the judgment. *See HBP Assocs. v. Marsh*, 893 F. Supp. 271, 276 (S.D.N.Y. 1995) ("The rule of res judicata provides that 'when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'") (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)). The issue of whether a German court, or any court in any other country, would recognize the judgment would be no different regardless of the lead plaintiff. If anything, it is perhaps arguable that having large German institutional investors involved in the litigation would make it *more likely* that a German court would respect this Court's judgment.

Nevertheless, the fact that a lead plaintiff must abide by the judgment of the court is precisely why courts have held that the issue of res judicata in a foreign court is not relevant to the lead plaintiff determination. *Takeda*, 67 F. Supp. 2d at 1139 ("[c]oncerns respecting the res judicata impact of any judgment in favor of defendants, which have been the focus of decisional discussion of the difficulties inherent in certifying transnational classes, are not an issue with respect to the selection of Lead Plaintiffs, since those persons will clearly be bound by the judgment of the court."); *Mass. Laborers' Annuity Fund v. Encysive Pharm., Inc.*, No. 06-3022, slip op. at 10 (S.D. Tex. Mar. 20, 2007) (rejecting the res judicata argument of a domestic

investment group vying for lead plaintiff status because the foreign investor "affirmed that it and its funds will be bound by any judgment or other order in this case").

### E.    THE POSSIBLE REACTION OF A GERMAN COURT IS NOT A DEFENSE THAT IS "UNIQUE" TO THE INSTITUTIONAL INVESTOR GROUP AND, IN ANY EVENT, WOULD NOT MEET THE CRITERIA FOR A "UNIQUE DEFENSE" IN THIS CIRCUIT

The Court held that the possible reaction of a German court, as discussed above, constituted a "unique defense" that required it to disregard the statutory presumption in favor of granting lead plaintiff status to the Institutional Investor Group.    Order at 3.    Under the circumstances present here, however, the Institutional Investor Group is not subject to a "unique" defense.  As noted above, the possibility that a foreign court might refuse to enforce this Court's judgment will never be an issue for the Institutional Investor Group because they have consented to the jurisdiction of this Court.   Moreover, the issue, to the extent it ever arises, would be common to any lead plaintiff, regardless of nationality.  *See In re Molson Coors*, 233 F.R.D. at 153  ("To the extent there is any res judicata question, it would apply to any and all members of the putative class."); *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 355 n.12 (D. Md. 2004) (indicating that lead plaintiff would still be expected to "vigorously represent" all members of the class, including foreign investors).  Any lead plaintiff will likely face the same res judicata defenses, where appropriate, and therefore the defense cannot be considered "unique" to the Institutional Investor Group.[6]

---

[6] For example, parties have challenged the inclusion of English foreign purchasers – like the U.K. Group – in American class actions on similar grounds that a foreign court may permit a class member to sue in the foreign jurisdiction without deference to the American judgment.  Thus, there is no reason to believe that the defense is "unique" to a German group like the Institutional Investment Group, but inapplicable to an English group, like the U.K. Group.   *See, e.g., Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 135 (S.D.N.Y. 2001) (court presented with arguments and affidavits regarding the enforceability of a securities class action judgment under English and Swiss law); *In re Lloyd's Am. Trust Fund Litig.*, No. 96-1262 1998 U.S. Dist. LEXIS 1199, at **42-43 (S.D.N.Y. Feb. 6, 1998) (court was presented with affidavits from defendants' foreign counsel which concluded that France, England, South Africa, Canada and Switzerland would not enforce the American judgment and would permit foreign class members to sue a second time in their home jurisdictions if unsuccessful in American litigation); *In re Cable & Wireless, PLC, Sec. Litig.*, 321 F. Supp. 2d 749, 765 (E.D. Va. 2004) ("Defendants attached a declaration of Lord Grabiner QC, an English barrister [who] opined that there is a substantial risk that an English court would refuse to

Moreover, the defense that a German court might not enforce a judgment by this Court does not meet the criteria for a "unique defense" in this Circuit.  Here in the Second Circuit, a "unique defense" will disqualify a class representative only when it threatens to dominate or subsume the claims of the other class members at trial, such that it will become the "focus of the litigation."  *Baffa v. Donaldson, Lufkin & Jennrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). "However, 'the rule barring certification of plaintiffs subject to unique defense is not rigidly applied in this Circuit'; it has generally been applied only where a full defense is available against an individual plaintiff's action."  *In re NTL, Inc. Sec. Litig.*, No. 02-3013, 2006 WL 330113, at *26 (S.D.N.Y. Feb. 14, 2006) (quoting *Koppel v. 4987 Corp.*, 191 F.R.D. 360, 365 (S.D.N.Y. 2000) and *In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997)). As explained above, there is no danger that such a defense will become the "focus of the litigation," and any such defense cannot be a "full defense" against the Institutional Investor Group, because the Institutional Investor Group has consented to the jurisdiction of this Court and no foreign court can undo whatever result is obtained.

**F.     *VIVENDI* IS A CLASS CERTIFICATION DECISION THAT IS NOT APPLICABLE TO A LEAD PLAINTIFF MOTION**

*Vivendi* involved a motion to certify a class of purchasers, both foreign and domestic, of stock and ADSs of Vivendi.  242 F.R.D. at 79.[7]  The defendants there did *not* argue, as the U.K. Group argues here, that the *lead plaintiffs* in the case (two French institutional investors) were

---

recognize a judgment entered in this action if a foreign class member were to later bring a similar proceeding in England.").

[7] As in all attempts to raise a unique defense to preclude certification, "the unique defense principle is intended to protect class members *in their absence*, not defendants." *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 359 (S.D.N.Y. 1992) (emphasis added) (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 200 (S.D.N.Y. 2000)).

inappropriate because *they* were subject to unique Rule 23 superiority defenses.[8]  In fact, no part of the court's decision addressed any issues or defenses concerning the appropriateness of lead plaintiffs under the PSLRA or Rule 23.  Rather, the decision in *Vivendi* was solely based upon consideration of the res judicata effect of an American judgment on *absent* foreign class members.[9]  Thus, the district court's decision in *Vivendi* is irrelevant to a lead plaintiff movant, like the Institutional Investor Group, which is *present* and unquestionably subject to the jurisdiction of this Court.  *Vivendi*'s holding simply has no application to foreign lead plaintiffs who are present and voluntarily bound by the Court's judgments.

The Order also quotes *Royal Ahold* for the proposition that "[a] strong possibility or near certainty that a foreign court will not recognize a judgment in favor of the defendant as a bar to the action of its own citizens may be the basis for eliminating foreign purchasers from the class." Order at 6.  The applicability of this quote here is strained because *Royal Ahold* relies on *Bersch* and, as noted above, the *Bersch* record contained uncontradicted affidavits that four foreign countries would unequivocally *not* recognize an American judgment in that case.  *Bersch*, 519 F.2d at 996. No such evidence appears in this case.  In addition, although such evidence appears not to have been present in *Royal Ahold*, the *Royal Ahold* court denied lead plaintiff status to the foreign investors largely on the ground of subject matter jurisdiction, which is not an issue here. *Royal Ahold*, 219 F.R.D. at 352 (because the bulk of the conduct at issue may have taken place in

---

[8] Indeed, Rule 23's superiority requirement is never relevant in this Circuit to a court's determination of the appropriate lead plaintiff.  *See In re Bausch & Lomb Inc. Sec. Litig.*, 06-CV-6294T, 2007 U.S. Dist. LEXIS 50979, at *16  (S.D.N.Y. July 13, 2007) ("Only two of [the Rule 23] factors – typicality and adequacy – are relevant to a motion for appointment as lead plaintiff . . . and a wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration of a motion for class certification.") (internal quotations and citations omitted).

[9] The *Vivendi* court held only that certain absent foreign class members (those from Germany and Austria) should be excluded from the certified class of purchasers from the U.S., France, England, and the Netherlands. 242 F.R.D. at 104-06.  Here, the members of the Institutional Investor Group are present and bound by any order or judgment of this Court.  *See* Institutional Investor Group Joint Decl. ¶ 16.

foreign countries, the foreign lead plaintiff movants faced "serious jurisdictional obstacles to having their claims heard in U.S. courts.  It is difficult to see how [movant], if appointed lead plaintiff, would be able to avoid devoting a large portion of its time and efforts to proving it is not subject to the unique defense of lack of subject matter jurisdiction" and movant may also have "less incentive to develop [allegations of misconduct in foreign countries] on behalf of the class.").

### G.    *VIVENDI* SHOULD NOT BE FOLLOWED BECAUSE IT IMPROPERLY REJECTED THE SECOND CIRCUIT'S "NEAR CERTAINTY" TEST

Even assuming *arguendo* that *Vivendi* is applicable to the circumstances of this case, which it is not, the Court should reconsider its reliance on *Vivendi* because it represents a minority view that improperly rejects the Second Circuit's controlling "near certainty" test articulated by Judge Friendly in *Bersch*, requiring that a U.S. court should decline to enter a judgment only where there is a "near certainty" that it will not be enforceable by a foreign court.

In *Bersch*, the Second Circuit held that "[w]hile an American court need not abstain from entering judgment simply because of a possibility that a foreign court may not recognize or enforce it, the case stands differently when this is a *near certainty* . . . ." *Bersch*, 519 F.2d at 996 (emphasis added); s*ee Vivendi*, 242 F.R.D. at 92-93.  The *Vivendi* court improperly ruled that it "[did] not find the 'near certainty' standard to be a particularly useful analytical tool" and criticized *Bersch*'s progeny as "haphazard."  *Id*. at 93-95.  In substitution, the *Vivendi* court articulated its own, novel, standard, as follows:  "Where plaintiffs are able to establish *a probability* that a foreign court will recognize the res judicata effect of a U.S. class action judgment, plaintiffs will have established this aspect of the superiority requirement."  *Id.* at 95 (emphasis added).  The court then further amended its new test as:  "Where plaintiffs are unable to show that foreign court recognition is *more likely than not*, this factor weighs against a finding

of superiority . . . ." *Id.* (emphasis added). The court applied its new standard and concluded, based upon the competing affidavits submitted, that a U.S. judgment would, more likely than not, be accorded recognition in France, England, and the Netherlands, but not in Germany and Austria. *Id.* at 102-109. With respect to putative class members hailing from other countries, the court's opinion was silent.

The new test that was articulated and applied in *Vivendi* ought to be rejected here because it is based upon an incorrect legal standard and reaches an anomalous result. The "near certainty" test has been universally accepted for more than thirty years by district courts in the Second Circuit and elsewhere. The mere possibility that a foreign court may not recognize or enforce an American judgment simply will not suffice because the presumption is explicitly placed in favor of class certification. *See In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 360 (S.D.N.Y. 2002) ("[t]he case law suggests that if there is *some* possibility that a class action judgment would be enforceable – or at least have some substantial effect – in the foreign jurisdiction at issue, then class certification is proper. . . . Based on the affidavits before us, we cannot conclude that a Turkish court would give *no* weight to a judgment of this court." (emphasis added); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 134-135 (S.D.N.Y. 2001) ("There is a distinction, however, between those circumstances in which there is a 'possibility' that a foreign court may not recognize a judgment, and those in which there is 'near certainty' that it will not be recognized.").[10] The Court should reject *Vivendi* for it dramatic departure from

---

[10] Courts in other jurisdictions routinely reach identical conclusions. *See, e.g., Frietsch v. Refco, Inc.*, No. 92 C 6844, 1994 WL 10014 at *11 (N.D. Ill. Jan. 13, 1994) (finding that neither "dueling affidavits" nor "the cases cited by defendants provides a basis for denying class certification"); *Jordan v. Global Natural Res.*, 102 F.R.D. 45, 52 (S.D. Ohio 1984) (holding that "[e]ven assuming the appropriateness of abstention, the standard for such abstention is 'near certainty'" and that defendant had not met that standard); *Casper v. Cunard Line, Ltd.*, 560 F. Supp. 240, 243 (E.D. Pa. 1983) ("'Near certainty' is the standard for abstention and defendant has failed to make such a showing."). This same "near certainty" test has been employed by courts across jurisdictions in the context of subject matter jurisdiction as well, further demonstrating the test's hegemony. *See, e.g., In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 547 (D.N.J. 2005) ("Defendants' res judicata arguments are unpersuasive.

14

the well-accepted "near certainty" test and improper substitution of its own "more likely than not" standard. [11]

---

The probability alleged by Defendants of foreign courts failing to enforce a judgment of this Court is not a near certainty."); *In re Cable & Wireless*, 321 F. Supp. 2d at 765-66 ("Defendants attached a declaration of Lord Grabiner QC, an English barrister [who] opined that there is a substantial risk that an English court would refuse to recognize a judgment entered in this action if a foreign class member were to later bring a similar proceeding in England. . . . Defendants . . . cite the 'mere possibility' that they may be exposed to multiple suits because a court in England may not recognize a judgment in this action. This argument . . . is unpersuasive. The *Cromer* court addressed this issue and drew a distinction from 'those circumstances in which there is a *possibility* that a foreign court may not recognize a judgment, and those in which there is a *near certainty* that [a U.S. judgment] will not be recognized.' The possibility of an English court failing to give res judicata to a judgment of this Court is not a near certainty.") (citation omitted).

[11] In addition to improperly restating the applicable standard, the *Vivendi* court further erred by placing the burden on the plaintiffs to establish the requisite res judicata probability. This is also incorrect. The *Vivendi* court cited to *In re Initial Pub. Offerings Litig.*, 471 F.3d 24, 33 (2d Cir. 2006) ("*IPO*"), for the uncontroversial assertion that plaintiffs have the burden to produce some evidence of compliance with Rule 23 and to show that its requirements are met, *Vivendi*, 242 F.R.D. at 95, but went further in using *IPO* to shift to plaintiffs the burden of establishing the requisite res judicata probability. *Id.* Under the traditional approach, however, courts place the burden on defendants and focus on the *defendants'* failure to show the requisite "near certainty." *See, e.g., Cromer*, 205 F.R.D. at 136 ("In sum, the plaintiffs have shown that the benefits of class certification are significant and that this device is superior . . . Because *Deloitte has not presented arguments sufficient to outweigh these demonstrated benefits*, the motion to certify a class of investors is granted.") (emphasis added); *Jordan*, 102 F.R.D. at 52 ("*Defendant has presented nothing in support of its contention that foreign courts will not recognize a judgment entered by this Court. Therefore, it is unnecessary to pursue this matter further.") (emphasis added); *Casper*, 560 F. Supp. at 243 ("'*Near certainty*' is the standard for abstention and *defendant* has failed to make such a showing.") (emphasis added). The district court's decision turned this burden on its head. *Vivendi*, 242 F.R.D. at 95 ("*Where plaintiffs are unable to show* that foreign court recognition is more likely than not, this factor weighs against a finding of superiority") (emphasis added).

## <u>CONCLUSION</u>

In light of the foregoing errors of fact and law, the Institutional Investor Group respectfully requests that the Court vacate its Order appointing Avon as lead plaintiff, appoint the Institutional Investor Group as lead plaintiff, and approve the Institutional Investor Group's selection of Grant & Eisenhofer P.A. and Motley Rice LLC to serve as Lead Counsel for the Class.

Dated: October 22, 2007

Respectfully submitted,

 _/s/ Geoffrey C. Jarvis_____
Jay W. Eisenhofer (JE-5503)
Geoffrey C. Jarvis (GJ-7040)
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor
New York, NY  10017
Tel:    (646) 722-8500
Fax:    (646) 722-8501

OF COUNSEL:

Alexander Reus
Diaz Reus Rolff & Targ LLP
GLOBAL EXPANSION GROUP
Bank of America Tower at International Pl.
100 SE Second Street, Suite 2610
Miami, FL 33131
Tel:    (786) 235-5000
Fax:    (786) 235-5005

MOTLEY RICE LLC
Joseph F. Rice
Ann K. Ritter
P. O. Box 1792 (29465)
28 Bridgeside Blvd.
Mount Pleasant, SC 29465
Tel:    (843) 216-9000
Fax:    (843) 216-9450

Deborah Sturman
Sturman LLC
112 Madison Avenue
7th Floor
New York, NY 10016
Tel:    (212) 784 6263
Fax:    (917) 546 2544

*Counsel for The Institutional Investor Group
and Proposed Lead Counsel for the Class*

16