# EXHIBIT A

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------:
IN RE: DISCOVERY LABORATORIES  :    MASTER FILE NO.
SECURITIES LITIGATION          :    06-1820
                               :
-------------------------------
```

ORDER

AND NOW, this 24th day of July, 2006, upon consideration of the motions to appoint counsel and lead plaintiff of: Harold Unschuld, John Catalono, Ricardo Alvarado, and Gilles Nadon (docket entry # 13), Oppenheim Pramerica Asset Management S.A.R.L. ("OPAM") (docket entry # 14), the Corey Group (docket entry # 15), Claire Spooner (docket entry # 16), the Mizla Group (docket entry # 17), the Harrison Group (docket entry # 19), and the responses of the Mizla Group (docket entries 20 & 21), OPAM (docket entry # 22), the Corey Group (docket entry # 22), and Claire Spooner (docket entry # 22), and the Court finding that:

(a)  This is a class action on behalf of all purchasers of the common stock of Discovery Laboratories from December 28, 2005 to April 25, 2006 to recover for Discovery's allegedly false and misleading statements and press releases about the progress of regulatory approval for its self-described "lead product," Surfaxin;

(b)  On June 15, 2006, we consolidated the four separate class actions on our docket into C.A. No. 06-1820;

(c)  Before us are the motions of six plaintiffs' firms who are contending to be lead counsel in this litigation;

(d) We must "appoint as lead plaintiff the member or members of the purported plaintiff class that [we] determine[] to be most capable of adequately representing the interests of class members," 15 U.S.C. § 78u-4(a)(3)(B)(i);

(e) A rebuttable presumption arises that a movant is the most adequate plaintiff if that movant "(aa) has either filed the complaint or made a motion [to be appointed lead plaintiff]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I);

(f) Another member of the putative plaintiff class may rebut this presumption by submitting "proof . . . that the presumptively most adequate plaintiff . . . (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) -- that is, by showing that the presumptively most adequate plaintiff does _not_ satisfy the requirements of Rule 23, see also Fed. R. Civ. P. 23(a)(3), (4) (requiring that representative plaintiff demonstrate "typicality" and "adequacy");

(g) Recognizing that "the statute thus simultaneously appears to make 'typicality' and 'adequacy' both part of the threshold identification of the presumptive lead plaintiff _and_ the sole means of rebutting the lead plaintiff presumption," our Court of Appeals has clarified that "[t]he initial inquiry (i.e.,

the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy" and that "arguments by members of the purported plaintiff class as to why [the movant with the largest financial losses] does not [satisfy the typicality and adequacy requirements] should be considered only in the context of assessing whether the presumption has been rebutted," In re Cendant Corp. Litigation, 264 F.3d 201, 263-64 (3d Cir. 2001);

  (h) Turning to our prima facie inquiry, because all six groups moved for lead-plaintiff status we must concentrate on the second two steps;

  (i) Here, OPAM, an institutional investor, has the largest financial interest in the relief the class seeks;

  (j) Using the FIFO[1] method of accounting, OPAM's total estimated loss is $2,067,394.26, and using the LIFO method, that loss is $1,628,651.25;

  (k) Even the lesser, LIFO-driven loss is more than double the next of the six contending plaintiffs, the Mizla Group, which lost $667,827.92;

  (l) Turning to the last step of the prima facie inquiry, we must assess whether OPAM satisfies Fed. R. Civ. P. 23's typicality and adequacy requirements, Cendant, 264 F.3d at 263-68;

---

[1] LIFO, an accounting term, stands for "last in, first out," while FIFO stands for "first in, first out." Black's Law Dictionary 627, 924 (6th ed. 1990).

(m)  Beginning with adequacy, we must consider whether OPAM "'has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [its] claims and those asserted on behalf of the class,'" Cendant, 264 F.3d at 265 (some alterations added) (quoting Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1988));

(n)  "One of the best ways for a court to ensure that [a movant] will fairly and adequately represent the interests of the class," our Court of Appeals has emphasized, "is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel," id. at 265;

(o)  Here, OPAM failed to submit a copy of the retainer agreement it made with counsel, so on July 19, 2006, we ordered it (and all other plaintiffs who had failed to submit such an agreement and still wanted us to consider them) to submit the agreement the next day;

(p)  On the afternoon of July 20, 2006, we had to twice call OPAM's local counsel, Berger & Montague, P.C., because we had not received the agreement;

(q)  Finally, at around 5:00 p.m. that day, we learned that OPAM had no retainer agreement with the firms representing it, Berger & Montague, P.C. and Motley Rice, LLC;

(r)  Instead, one of OPAM's attorneys, Deborah Sturman, Esq. of Motley Rice, LLC, submitted an affidavit declaring in one sentence that "The terms of OPAM's representation by those listed

4

in its certification have been agreed," and then in another sentence, "We expect to execute the written agreement by the end of next week, once both signatories of OPAM's certification (OPAM's proxies) have returned from their summer holidays," Dec. of Deborah Sturman, Esq. ¶ 6;

    (s)   Thus, we cannot evaluate the reasonableness of a retainer agreement that does not exist despite the pendency of OPAM's suit for over two months;

    (t)   Thus, we conclude that OPAM will not fairly and adequately represent the interests of the class;[2]

    (u)   Accordingly, we must consider the movant with the next largest financial interest;

    (v)   As we noted above, this is the Mizla Group, with losses of $667,827.92;

---

[2] Even if we concluded that OPAM made out a prima facie case, we would still deny its motion. Because it is a foreign investor, OPAM "is subject to unique defenses that render [it] incapable of adequately representing the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Specifically, defendants could move to dismiss OPAM's claims for lack of subject matter jurisdiction. To defeat such a motion, OPAM would have to provide evidence that satisfies the conduct or the effects test. See In re Royal Dutch/Shell Transport Sec. Litig., 380 F. Supp. 2d 509, 540 (D.N.J. 2005); Blechner v. Daimler-Benz AG, 410 F. Supp. 2d 366, 372 (D. Del. 2006). While OPAM might ultimately prevail, the point is that it would be subject to at least one unique defense that only it would have to meet. This could divert its attention from major substantive defenses. Moreover, because OPAM is a foreign entity, the res judicata effect of a judgment in its favor is uncertain. See In re Royal Ahold Sec. Litig., 219 F.R.D. 343, 352 (D. Md. 2003) (noting that "[f]oreign courts might not recognize or enforce such a decision from an American court, which would allow foreign plaintiffs in the class to file suit against the defendant again in those foreign courts.").

5

(w)  Beginning with typicality, we must consider whether "the circumstances of [Mizla] 'are markedly different or the legal theory upon which the claims of [Mizla] are based differ from that upon which the claims of other class members will perforce be based," id. at 265 (quoting Hassine v. Jeffes, 846 F.2d 169, 177 (3d Cir. 1988) (internal quotation marks, brackets, and citation omitted);

(x)  Here, typicality exists because the Mizla Group bought Discovery shares during the class period, allegedly bought those shares in reliance on defendants' false statements, and suffered damages as a result;

(y)  Moving to adequacy, the Mizla Group did execute a written retainer agreement with counsel, Chimicles & Tikellis, LLP, and this agreement obliges that firm to advance all costs (regardless of whether they succeed) and entrusts calculation of their fee to us in the event of success;

(z)  Moreover, at least one member of the Mizla Group, Joseph Mizla, is a sophisticated investor, and all members expressed their willingness to "serve as a representative party on behalf of a class in these actions, including providing testimony at deposition or trial, if necessary," see Dec. of James R. Malone, Jr., Ex. 1, 2, 3, 4, & 5;

(aa) Also, as the class member with the second largest alleged losses, the Mizla Group has every incentive to represent the class vigorously;

(bb) The Mizla Group has selected the law firm of Chimicles & Tikellis, LLP, as its lead counsel, and there is no

reason to believe that this firm cannot adequately and competently pursue the class's interests;

(cc) Moreover, there is no conflict between the claims that the Mizla Group asserts and those of the other class members because all seek recovery under identical theories;

(dd) The Mizla Group has thus made a <u>prima</u> <u>facie</u> showing that it will fairly and adequately protect the interests of the putative class, and it therefore is, presumptively, the most adequate plaintiff; and

(ee) No party has attempted to rebut the presumption in favor of Mizla Group,

It is hereby ORDERED that:

1.   The motions of Harold Unschuld, John Catalono, Ricardo Alvarado, and Gilles Nadon (docket entry # 13), the Corey Group (docket entry # 15), OPAM (docket entry # 14), Claire Spooner (docket entry # 16), and the Harrison Group (docket entry # 19) are DENIED;

2.   The Mizla Group's motion is GRANTED, and we APPOINT it to serve as lead plaintiff in these consolidated actions;

3.   Chimicles & Tikellis is APPOINTED lead counsel and shall:

    a. Brief, argue, and respond to motions;
    b. Conduct discovery;
    c. Speak at pretrial hearings;
    d. Negotiate with defense counsel;

    e. Request that the Court approve settlements and fee awards;

    f. When necessary, call meetings of plaintiffs' counsel;

    g. Assign work;

    h. Conduct trial and post-trial proceedings;

    i. Consult with and employ experts; and

    j. Within the scope of their role as fiduciaries, perform such other duties as they deem necessary;

  4. No motion, request for discovery, or other pretrial proceeding shall be initiated or filed except through Lead Counsel;

  5. Lead counsel must AUTHORIZE all billable work in furtherance of this case; and

  6. We shall fax orders only to Lead Counsel, who shall then TRANSMIT copies of these orders to other plaintiffs' counsel.

            BY THE COURT:


            /s/ Stewart Dalzell, J.