> long-term blood sugar control in type 2 diabetes. These data are in addition to those recently presented from the DREAM study, which showed that Avandia can reduce the risk of progression to type 2 diabetes. Data from both these studies are expected to be filed with regulatory agencies during the first half of 2007.

The "Outlook" section of the 2006 Annual Report added: "Sales growth of existing products and launch of new products are key drivers of GSK's business performance. *The strong growth seen from key products such as. . . Avandia. . . is expected to continue in 2007.*" [Emphasis added.]

63. The statements referenced above in ¶ 62 were each materially false and misleading for the reasons set forth in ¶ 50 & 57 above.

64. On May 21, 2007, the truth relating to the risk of heart attack for Avandia users was revealed and caused Glaxo's ADSs and ordinary shares to substantially decline in value.

65. On that date, the FDA issued a safety alert, which pointedly recognized the increased risk of heart attack through the use of Avandia. The FDA's alert specifically addressed the potential risks identified by its own pooled analysis of completed controlled clinical trials, *which demonstrated a potentially significant increase in the risk of heart attack and heart-related deaths in patients taking Avandia.* According to the FDA's initial analysis of Glaxo's meta-analyses, the data expressed a significant concern with respect to the excess risk of heart attacks in Avandia-treated patients.

66. Another meta-analysis of rosiglitazone (Avandia) studies, conducted by Dr. Stephen Nissen, was likewise published on May 21, 2007, in the *NEJM*. *Dr. Nissen concluded that patients taking Avandia are at an increased risk for heart attacks.*

67. As a result of the FDA's alert and Dr. Nissen's findings, on May 21, 2007, the price of Glaxo ADSs dropped $4.53 per ADS, or 7.8%, on unusually high trading volume. In reaction to the same news, Glaxo's ordinary shares on the LSE dropped 74 pence. The Company's ADSs and ordinary shares continued to lose value as the impact of the negative publicity was digested by

investors, eventually falling from $57.71 per share and 1464 pence per share to $53.18 per share and 1390 pence per share, respectively on May 29, 2007.

### Additional Scienter Allegations

68.  As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly or recklessly substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Glaxo, their control over, and/or receipt and/or modification of Glaxo's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Glaxo, participated in the fraudulent scheme alleged herein.

69.  Defendants knew or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

70.  During the Class Period, while the Company's stock and ADSs were artificially inflated due to Defendants' false and misleading statements, the following the Individual Defendants sold more than 250,000 shares of their personally – held Glaxo ADSs for proceeds of approximately $27.5 million while in possession of undisclosed adverse information. The following chart sets forth the insider trading, which was unusual and suspicious; both in timing and in amount:

| Name | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| Garnier, Dr. Jean-Pierre | 10/30/2006 | 45,500 | $53.21 | $2,421,055 |
| | 2/8/2007 | 51,100 | $55.81 | $2,851,891 |
| | 2/13/2007 | 17,411 | $57.37 | $998,869 |
| | | 114,011 | | $6,271,815 |
| Greig, R[5] | 5/12/2006 | 600 | $57.15 | $34,290 |
| | 2/23/2007 | 45,000 | $56.82 | $2,556,900 |
| | | 45,600 | | $2,591,190 |
| Louv, W[6] | 2/27/2007 | 325 | $56.46 | $18,350 |
| | | 325 | | $18,350 |
| Phelan, Daniel[7] | 7/31/2006 | 23,517 | $55.28 | $1,300,000 |
| | 2/8/2007 | 149,623 | $55.81 | $8,350,459 |
| | 2/21/2007 | 19,721 | $57.78 | $1,139,479 |
| | | 192,861 | | $10,789,938 |
| Stout, David M. | 2/8/2007 | 3,475 | $55.87 | $194,148 |
| | | 3,475 | | $194,148 |
| Yamada, Tadataka[8] | 12/6/2005 | 74,866 | $50.50 | $3,780,733 |
| | 5/3/2006 | 21,380 | $56.77 | $1,213,742 |
| | | 96,246 | | $4,994,475 |
| Ziegler, John B.[9] | 10/28/2005 | 21,596 | $52.50 | $1,133,790 |

---

[5] Russell Greig was, at all relevant times, the Company's President, Pharmaceuticals International.

[6] William Louv has been GlaxoSmithKline's Senior Vice President, Information Technology and Chief Information Officer since January 2007. Prior to that appointment, Louv was Senior Vice President, Information Technology for the Company's US Pharmaceuticals business.

[7] Daniel Phelan was, at all relevant times, the Company's Senior Vice President, Human Resources.

[8] Tadataka "Tachi" Yamada was the Company's Chairman, Research and Development from December 2000 until June 2006. He is currently President, Global Health Program at the Bill & Melinda Gates Foundation.

[9] John B. Ziegler was GlaxoSmithKline's President, Consumer Healthcare until his planned retirement on January 31, 2006.

|  |  |  |  |
|---|---|---|---|
| 12/19/2005 | 29,417 | $52.25 | $1,537,038 |
|  | 51,013 |  | $2,670,828 |
| **Total:** | **503,531** |  | **$27,530,744** |

## Loss Causation/Economic Loss

71.  During the Class Period, Defendants failed to disclose material adverse information concerning Avandia and safety issues attendant to its use. When Defendants' prior misrepresentations and fraudulent conduct were later disclosed and became apparent to the market, the price of Glaxo ADSs and ordinary shares fell precipitously as the prior artificial inflation came out of Glaxo's ADS and ordinary share price. As a result of their purchases of Glaxo ADSs and/or ordinary shares during the Class Period, Plaintiffs and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

72.  Defendants' misrepresentations caused and maintained the artificial inflation in Glaxo's ADS and ordinary share price throughout the Class Period and until the truth was revealed to the market.

73.  Defendants' false and misleading statements had their intended effect and caused Glaxo's ADSs and ordinary shares to trade at artificially inflated levels, reaching as high as $59.98 per share and 1581 pence, respectively, during the Class Period.

74.  As a direct result of truth revealed to the market on May 21, 2007, Glaxo's ADS price dropped 7.8% that day on unusually high volume, falling from $57.71 per share to $53.18 per share. Glaxo's ordinary shares on the LSE dropped from 1464 pence to 1390 pence. The Company's ADSs and ordinary shares continued to lose value as the impact of the negative information was digested by investors, eventually falling to $52.06 per share and 1306 pence per share, respectively, on May

29, 2007. This decline removed the inflation from Glaxo's ADS and ordinary share price, causing real economic loss to investors who had purchased the ADSs and ordinary shares during the Class Period.

75.  In sum, as the truth about Defendants' fraud was revealed, the Company's ADS and ordinary share price plummeted, the artificial inflation came out of the ADSs and ordinary shares and Plaintiffs and other members of the Class were damaged, suffering substantial economic losses.

76.  The decline in Glaxo's ADS and ordinary share price at the end of the Class Period was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Glaxo's ADS and ordinary share price declines negate any inference that the loss suffered by Plaintiffs and other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiffs and other members of the Class was a direct result of Defendants' fraudulent scheme to artificially inflate Glaxo's ADS and ordinary share price and the subsequent significant decline in the value of Glaxo's ADSs and ordinary shares when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

77.  The price of Glaxo's ADSs and ordinary shares sharply declined immediately in response to the disclosure of the increased risk of heart attack associated with Avandia.

78.  Analysts likewise downgraded Glaxo upon learning of Avadia's association with increased risk of heart attack. Such downgrades were directly attributed to the anticipated loss of Avandia sales and the overall negative earnings impact that knowledge of Avandia's risk of heart attacks would have on Glaxo's growth or performance. For example, on June 8, 2007, Bear Stearns, cut their Avandia sales projections in response to the news that the drug presented an increased risk

of heart attacks. Then, on July 25, 2007, Bear Stearns downgraded Glaxo again for the same reasons.

### No Safe Harbor

79.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Glaxo who knew that those statements were false when made.

### COUNT I

**For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants**

80.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

81.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

82.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

    (a)     Employed devices, schemes, and artifices to defraud;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of Glaxo ADSs and ordinary shares during the Class Period.

83. Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Glaxo ADSs and ordinary shares. Plaintiffs and the Class would not have purchased Glaxo ADSs and ordinary shares at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

84. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their purchases of Glaxo ADSs and ordinary shares during the Class Period.

## COUNT II

### For Violation of Section 20(a) of the Exchange Act Against All Defendants

85. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

86. The Individual Defendants acted as controlling persons of Glaxo within the meaning of Section 20 of the Exchange Act. By virtue of their positions and their power to control public statements about Glaxo, the Individual Defendants had the power and ability to control the actions of Glaxo and its employees. Glaxo controlled the Individual Defendants and its other officers and employees. By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for judgment as follows:

A. Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding Plaintiffs and other members of the Class damages together with interest thereon;

C. Awarding Plaintiffs and other members of the Class costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

D. Awarding Plaintiffs and other members of the Class such equitable/injunctive or other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED: November 13, 2007

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARK S. REICH

/s/ Samuel H. Rudman
_____
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
PATRICK DANIELS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

I:\GlaxoSmithKline 07\Pleadings\Amended Complaint.doc

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

PLUMBERS & STEAMFITTERS LOCAL 773 PENSION FUND ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5. Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

GLAXOSMITHKLINE

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of November, 2007.

PLUMBERS & STEAMFITTERS LOCAL 773 PENSION FUND

By: _Laurence / Donnelly_

Its: _Fund Administrator_

- 2 -

GLAXOSMITHKLINE

SCHEDULE A

SECURITIES TRANSACTIONS

Acquisitions

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 03/06/2007 | 765 | $54.99 |

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

PLUMBERS' UNION LOCAL NO. 12 PENSION FUND ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|---|---|---|---|

*See* attached Schedule A.

5. Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

*Johnson v. Pozen Inc., et al.*, No. 1:07-cv-00599 (M.D.N.C.)

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

GLAXOSMITHKLINE

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of November, 2007.

PLUMBERS' UNION LOCAL NO. 12 PENSION FUND

By: Roy B. Bell

Its: Administrator

## SCHEDULE A

## SECURITIES TRANSACTIONS

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 02/23/2007 | 500 | £14.44 |
| 03/08/2007 | 200 | £14.35 |
| 03/15/2007 | 500 | £14.05 |
| 03/16/2007 | 600 | £14.04 |
| 03/23/2007 | 800 | £13.96 |

**Sales**

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 09/26/2006 | 1,700 | £14.31 |

*Opening position of 4,500 shares.

## CERTIFICATE OF SERVICE

I, David A. Rosenfeld, hereby certify that on November 13, 2007, I caused a true and correct copy of the attached:

Amended Complaint for Violation of the Federal Securities Laws

to be: (i) filed by hand with the Clerk of the Court; and (ii) served by first-class mail to all counsel on the attached service list.

*/s/ David A. Rosenfeld*
David A. Rosenfeld

GLAXOSMITHKLINE 07
Service List - 11/8/2007
Page 1 of 1
(07-0160)

**Counsel For Defendant(s)**

Jean-Pierre Garnier
Julian Heslop
GlaxoSmithKline plc
One Franklin Plaza
Philadelphia, PA 19101
215/751-4638
919/315-3344(Fax)

Kenneth J. King
Pepper Hamilton LLP
The New York Times Building
620 Eighth Avenue, 37th Floor
New York, NY 10018
212/808-2700
212/286-9806(Fax)

Gary Barlow Parks Rainville
Michael E. Baughman
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19102
215/981-4000
215/981-4750(Fax)

**Counsel For Plaintiff(s)**

Samuel H. Rudman
David A. Rosenfeld
Coughlin Stoia Geller Rudman &
  Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747
631/367-7100
631/367-1173(Fax)

Darren J. Robbins
Ramzi Abadou
Coughlin Stoia Geller Rudman &
  Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
619/231-1058
619/231-7423(Fax)

Frederic S. Fox
Hae Sung Nam
Donald R. Hall
Kaplan, Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY 10022
212/687-1980
212/687-7714(Fax)